**EXHIBIT   1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MICHAEL MCGREGOR, ZACHARY GIAMBALVO,
PAUL FELICE, MATTHEW OLIVIERI, EDWARD
NEWMAN, and DARK STORM INDUSTRIES, LLC,

                         Plaintiffs,                    23 Civ. 1130

        -against-
                                                        **COMPLAINT FOR
                                                        DECLARATORY AND
SUFFOLK COUNTY, New York,                               INJUNCTIVE RELIEF**
Police Commissioner RODNEY HARRISON,
in his Official Capacity, and Acting Superintendent
STEVEN NIGRELLI, in his Official Capacity,

                         Defendants.
-------------------------------------------------------------------x

        Plaintiffs, MICHAEL MCGREGOR, ZACHARY GIAMBALVO, PAUL FELICE,

MATTHEW OLIVIERI, EDWARD NEWMAN, DARK STORM INDUSTRIES, LLC, and all

similarly situated individuals, for their Complaint respectfully state:

## NATURE OF THE ACTION

        1.      This is an action for, *inter alia*, declaratory and injunctive relief, presumed

compensatory damages in at least a nominal amount for the plaintiffs' constitutional harms,

proximately resulting from Suffolk County's (i) enforcement of Senate Bill 9458, which requires

ordinary people to apply for and obtain a discretionary license to purchase, receive, sell, exchange,

and/or dispose of semiautomatic rifles, and register their weapons with the government, all under

penalty of criminal sanctions; and (ii) enforcement of policies that result in exorbitant *2-3 year

delays* in issuing a license to purchase, receive, sell, exchange, and dispose of semiautomatic rifles.

        2.      Plaintiffs' presumptively protected conduct – the purchase, receipt, sale, exchange,

and/or disposal of semiautomatic rifles - has ground to a halt.

3.     New York State's enactment of Senate Bill 9458 (the "Rifle Bill") requires ordinary people apply for and obtain a discretionary and subjective "may issue" license to purchase, take possession of, give, exchange, sell, and/or dispose of a semiautomatic rifle, and punishes non-compliance with arrest, felony charges, incarceration, and other criminal and civil penalties. [See, Senate Bill 9458 Annexed as Exhibit 1].

4.     The Rifle Bill prevents ordinary people from taking possession of, transferring, and purchasing semiautomatic rifles and prevents Federal Firearms Licensees (gun stores) from selling semiautomatic rifles to individuals who have passed a federal NICS[1] background check but do not hold a license to purchase or receive semiautomatic rifles.

5.     The Rifle Bill is unquestionably offensive to the text, tradition, and history of the Second Amendment and must be enjoined. Under the *Bruen* test, there is no historical tradition of requiring that the People seek and obtain permission from the government before exercising the pre-existing right to bear Arms – particularly long guns.

6.     Plaintiffs are entitled to a judicial declaration that the Rifle Bill violates the Second Amendment, applied to the states through the Fourteenth Amendment.

7.     Plaintiffs are also entitled to a preliminary and permanent injunction against Suffolk County, New York, and Suffolk County Police Commissioner Rodney Harrison, Acting Superintendent of the New York State Police Steven Nigrelli, and all successors, and their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with such defendants, who receive actual notice thereof from implementing and enforcing the Rifle Bill.

---

[1] National Instant Criminal Background Check System.

## JURISDICTION AND VENUE

8.    Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution. This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, 42 U.S.C. §§ 1983 and 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

9.    Plaintiffs, MICHAEL MCGREGOR, ZACHARY GIAMBALVO, PAUL FELICE, and MATTHEW OLIVIERI are all natural persons and residents of those portions of Suffolk County, New York subject to the jurisdiction of the Suffolk County Police Commissioner for purposes of licenses issued under Penal Law § 400.00, *et seq.*

10.    Plaintiffs MICHAEL MCGREGOR, ZACHARY GIAMBALVO, PAUL FELICE, and MATTHEW OLIVIERI are required to apply in their county of residence for any license issued under Penal Law § 400, *et seq.*

11.    Plaintiff DARK STORM INDUSTRIES, LLC ('DSI") is a limited liability corporation formed and existing under the laws of the State of New York.

12.    DSI lawfully engages in, *inter alia,* the manufacture and sale of semiautomatic rifles in the State of New York, and has a principal place of business in Suffolk County, New York.

13.    EDWARD NEWMAN is the lawful owner and operator of DSI.

14.    Defendant, SUFFOLK COUNTY, New York (hereinafter the "County"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

15.     Defendant, RODNEY HARRISON, (hereinafter "Commissioner Harrison" or "SCPD"), is the police commissioner of Suffolk County and is sued in his official capacity only.

16.     As Suffolk County police commissioner, Harrison is the statutory pistol "Licensing Officer" as defined by Penal Law § 265.00(10) having jurisdiction to, among other duties, issue licenses under Penal Law § 400.00 to Suffolk County residents, including Plaintiffs, and to make and enforce the policies and procedures of the SCPD Licensing Bureau.

17.     As the police commissioner, Harrison is duty-bound to enforce all provisions of the New York State Penal Law, as are his officers.

18.     Commissioner Harrison is properly named herein as the individual responsible for ensuring that the requested preliminary and permanent injunctive relief is carried out. *Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir. 1996).

19.     Defendant STEVEN NIGRELLI is the Acting Superintendent of the New York State Police (NYSP) whose principal place of business is in Albany, New York. Superintendent Nigrelli is sued in his official capacity only.

20.     As the Acting Superintendent of the New York State Police, Nigrelli is duty-bound to enforce all provisions of the New York State Penal Law, as are his troopers and investigators.

21.     Acting Superintendent Nigrelli is properly named herein as the individual responsible for ensuring that the requested preliminary and permanent injunctive relief is carried out. *Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir. 1996).

## LEGAL FRAMEWORK

### I. The Second Amendment

22.     The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." The Second Amendment is fully applicable to the states through the Fourteenth Amendment.  See, *McDonald v. Chicago*, 561 U.S. 742 (2010).

23.     The rights protected by the Second Amendment – the right to possess and carry weapons - are "pre-existing" and "individual rights". They are not "granted" by the government.

> "Putting all of these textual elements together, we find that they **guarantee the individual right to possess and carry weapons in case of confrontation**. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the **Second Amendment, like the First and Fourth Amendments, codified a pre-existing right**. The **very text** of the Second Amendment **implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed**." As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1876), "[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ....

*District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis added).

24.     Plaintiffs' right to possess and carry weapons for self-defense is presumptively guaranteed. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126, 2135 (2022) ("In keeping with *Heller*, we <u>hold</u> that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."); see also, *Caetano v. Massachusetts,* 577 U.S. __ (2016) (weapons in common use for self-defense are protected within the scope of the Second Amendment).

25.     Under the *Bruen* test:

> "When the regulated conduct falls within the plain text of the Second Amendment, the Constitution **presumptively protects** that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.
>
> Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, at 2126 (emphasis added).

26.     Semiautomatic rifles are weapons in common use for self-defense in this country and, as such, are protected within the scope of the Second Amendment, which protects those weapons "typically possessed by law-abiding citizens for lawful purposes." *D.C. v. Heller*, 544 U.S. 570, 625 (2008); *Caetano v. Massachusetts*, 577 U.S. 411, 412 (2016) (stun guns); *Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) (Thomas, J. on denial of cert) ("The overwhelming majority of citizens who own and use such rifles do so for lawful purposes, including self-defense and target shooting. Under our precedents, that is all that is needed for citizens to have a right under the Second Amendment to keep such weapons.") (cleaned up) citing, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767-768 (2010); *Heller*, at 628–629.

27.     Plaintiffs' conduct – purchasing, taking possession of, giving, exchanging, and selling semiautomatic rifles – is conduct that falls within the plain text of the Second Amendment, and is presumptively protected thereunder.

28.     Defendants alone have the burden of justifying the provisions of Senate Bill 9458 by demonstrating the regulations are consistent with this Nation's historical traditions of firearm regulation.

29.     Rifle Bill (Senate Bill 9458) inarguably conflicts with this Nation's historical traditions of firearm regulation. Requiring a license to purchase, take possession of give, sell,

and/or exchange a rifle is *wildly inconsistent* with this Nation's historical tradition of firearm regulation; long guns have been freely owned, made, purchased, possessed, exchanged, and carried since the mid-1600s.[2] Also repugnant to the Second Amendment is any requirement that the People seek permission from the government to purchase or sell a rifle, or require the public to register the purchase of one's rifle with the government.

30.     Had it been our Nation's history and tradition to require the People to seek and obtain permission from the government before exercising the preexisting right to possess and carry Arms, the very text of the Second Amendment prohibiting any level of *infringement* would have been in vain. Of course, there is no such historical tradition.

31.     Worse yet, subjective licensing schemes that imbue discretion in a government official – like New York's licensing scheme - violate the Second and Fourteenth Amendments.

> "If there be any fixed stars in our constitutional constellation, it is that no official high or petty, shall dictate whether we can exercise our fundamental constitutional rights."

Reply Brief for Petitioners, *New York State Rifle & Pistol Assn. v. Bruen*, 2021 WL 943564 citing, *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943).


***Every Purchase - Rifle, Shotgun, or Handgun – Requires a NICS Check in New York State***

32.     Under New York State law, every sale, purchase, and disposal of a handgun, rifle, or shotgun[3] must be conducted through a Federal Firearms Licensee (FFL) and may only proceed after the FFL conducts a background check through the National Instant Criminal Background Check System (NICS). NYS General Business Law § 898.

---

[2] https://www.guns.com/news/2017/07/01/guns-of-the-greatest-revolution-ever
[3] Except those conducted "between members of an immediate family", meaning "spouses, domestic partners, children and step-children." NYS GBL § 898.

33.     Under federal law, every FFL must conduct a NICS check before selling or transferring a handgun, rifle or shotgun to an individual.

34.     Under federal law, every individual seeking to purchase a handgun, rifle or shotgun from an FFL must undergo a NICS background check.

### The Rifle Bill - Senate Bill 9458

35.     Prior to September 4, 2022, ordinary New Yorkers were free to walk into a federally licensed gun store, complete the mandatory ATF 4473 form, subject themselves to a brief background check through the National Instant Criminal Background Check System (NICS) and purchase a semiautomatic rifle.

36.     No government permission was required.

37.     Ordinary New Yorkers with no prohibitors to the possession or purchase of firearms were free to engage in target shooting with family and friends at the gun range or on hunting trips, where it is common to try out, use, share, give, exchange, and take possession of, even if temporarily, each other's rifles - conduct that is part of this Nation's long-held traditions.

38.     The Rifle Bill imposes a discretionary licensing requirement and criminal penalties upon ordinary people, including felony arrest, incarceration, permanent loss of firearm rights, and other criminal and civil penalties for engaging in presumptively protected conduct. **[Exhibit 1].**

39.     The Rifle Bill corrals semiautomatic rifles into the same 'may issue' discretionary licensing scheme New York employs against handguns – Penal Law § 400.00 - which "vests broad discretion in licensing officers" [*Finley v. Nicandri*, 272 A.D.2d 831, 832 (3d Dept. 2000) (handguns)] to issue, suspend, and revoke the Right (the "Scheme").

40. The Scheme employs subjective criteria wherein a government employee decides who can and cannot exercise a presumptively protected right by deciding what constitutes the "character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others"[4], which such government employees have "broad discretion" to determine. Even then, the license "may issue" – or it may not.

41. Section 400.00 codifies what New York courts have been applying to <u>handguns</u> for decades under the false premise that keeping and bearing firearms is a privilege (not a Right), the Second Amendment applies to the collective militia, and is not applicable to the states.[5]

42. But until the Rifle Bill, New York never imposed a licensing requirement on long guns.

43. With the Rifle Bill, semiautomatic rifles – as with handguns – have been demoted from a right to a privilege. *Minervini v. Kelly*, 22 A.D.3d 238, 239 (1st Dept. 2005) (handguns). New York has taken no steps to change its position on handguns since *Bruen* and has only enlarged its web of unconstitutional regulations.

44. Section 400.00(1)(b) is a discretionary and subjective factor that authorizes denial of protected conduct based on an opinion of who has the 'right' "character", can be "trusted", what constitutes the "essential temperament", and whether the applicant has one.

45. Subsection (b) also conflicts with the very purpose of the Second Amendment – using a firearm for self-defense, which may necessarily require its use to *specifically* "endanger others."

---

[4] Penal Law § 400.00(1)(b).
[5] *Peterson v. Kavanagh*, 21 A.D.3d 617, 617–18 (3d Dept. 2005) ("Lastly, we reject petitioner's argument that the Second Amendment confers an individual right on him to keep and bear arms. Absent evidence that possession of the pistol bears some reasonable relationship to the preservation or efficiency of a well-regulated militia, no individual right to possess it is conferred (see *Bach v. Pataki*, 289 F.Supp.2d 217, 224–226 (2003)."

46.     The Scheme imbues licensing officers with "broad discretion" to suspend, revoke, and refuse to renew individuals found not to pass the 'moral character' test if, at any time, a licensee becomes "ineligible to obtain a license" under any of the provisions of § 400.00(1). See, Penal Law § 400.00(11), *Juzumas v. Nassau Cnty., New York*, 33 F.4th 681, 687 (2d Cir. 2022).

47.     But the "very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Bruen*, at 2129 quoting, *Heller*, 554 U.S. at 634. "We then concluded: "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." *Ibid.*

48.     The Rifle Bill subjects weapons in common use – semiautomatic rifles - to the same interest-balancing test *thrice rejected* by the Supreme Court[6] where the government's desire to 'protect the public' somehow always ends up outweighing the individual rights of the People protected by the Second Amendment. See, e.g., *Finley v. Nicandri*, 272 A.D.2d 831, 832, 708 N.Y.S.2d 190, 191 (2000) (citing the state's "substantial and legitimate interest and indeed, a grave responsibility, in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument."); *Waskiewicz v. New York City Police Dep't*, 211 A.D.2d 603, 604 (1st Dept. 1995) (license revoked based on arrest, no resulting conviction).

49.     Under the Scheme, a subjective belief that a licensee "exercise[d] [] poor judgment in the handling of a weapon is a sufficient ground for revocation" of a license. *Brookman v. Dahaher*, 234 A.D.2d 615 (3d Dept. 1996) (upholding revocation because licensee "exhibited

---

[6] See, *Heller*, at  *McDonald,* and *Bruen*

disregard for the proper use of a handgun" by wearing his .38 caliber pistol holstered on his person "in plain view of adults and children in his residential neighborhood" while performing yardwork "in clear violation of the hunting and target practice restrictions on his permit.").[7]

50.     A discretionary revocation can take place at will whenever a licensee "at any time becom[es] ineligible to obtain a license"[8], even under the subjective beliefs of a licensing officer. A licensee is not entitled to a formal hearing before revocation. *Pacicca v. Allesandro*, 19 A.D.3d 500, 501 (2d Dept. 2005).

51.     And a revocation of a license issued under section 400.00 requires the ***confiscation*** of "any and **all firearms, rifles, or shotguns owned or possessed**" by the licensee. See, § 400.00(11)(c).

52.     New York's discretionary Scheme is just that: a Scheme to arbitrarily and subjectively dispossess individuals of their property and their Second Amendment right to possess, purchase, and carry two of the most popular and commonly owned weapons in America to prevent the ability of the People to be Armed for the purpose for which the Second Amendment was codified.

***Criminal Penalties Under the Rifle Bill - Penal Law §§ 265.65 and 265.66***

53.     The Rifle Bill imposes criminal penalties for constitutionally protected conduct should an individual refuse or fail to apply for and obtain a Rifle License.

54.     A person is guilty of criminal purchase of a semiautomatic rifle when he purchases or takes possession of a semiautomatic rifle and does not possess a license to purchase or take possession

---

[7] Prohibiting open carry would never have been regarded as a 'tradition' during the relevant historical time-period set forth in *Heller* and *Bruen*.
[8] Penal Law § 400.00(11)(a).

11

of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter. Criminal purchase of a semiautomatic rifle is a class A misdemeanor for the first offense and a class E felony for subsequent offenses. Penal Law § 265.65.

55. A person is guilty of criminal sale of a semiautomatic rifle when, knowing or having reason to know it is a semiautomatic rifle, he sells, exchanges, gives or disposes of a semiautomatic rifle to another person and such other person does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter. Criminal sale of a semiautomatic rifle is a class E felony. Penal Law § 265.66.

56. Rather than punish criminal acts, Penal Law § 265.65 and 265.66 punish innocent, constitutionally protected conduct engaged in by ordinary individuals, like Plaintiffs, in contravention to this Nation's historical traditions.

57. The Rifle Bill also subjects semiautomatic rifles to an unconstitutional registration requirement, which requires every semiautomatic rifle to be registered on such license, requires the purchaser to seek permission by way of a "purchase document" before taking possession of the rifle from SCPD every time the owner seeks to add or subtract from their rifle collection, for which there is no historical analogue. Penal Law § 400.00(9).

***The Rifle Bill is Inconsistent with the Plain Text of the Second Amendment***

58. The Rifle Bill is a contemporary control measure inconsistent with the plain text of the Second Amendment.

59. And because "[where] later history contradicts what the text says, the text controls"[9] the Rifle Bill must be declared unconstitutional and stricken.

---

[9] *Bruen*, at 2137.

> "But when it comes to interpreting the Constitution, not all history is created equal.
>
> "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634–635, 128 S.Ct. 2783. The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates or postdates either time may not illuminate the scope of the right."

*Bruen*, at 2136.

60.     Under the *Bruen* test, if the regulated conduct falls under the plain text of the Second Amendment, which this does, the government has the burden of justifying its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *Bruen*, at 2126.

61.     Because there is no historical tradition of government-imposed discretionary licensing and registration requirements, or the imposition of criminal penalties on ordinary people for purchasing, taking possession of, selling, transferring, giving, and/or exchanging rifles, the Rifle Bill is inconsistent with the Nation's historical traditions and must be stricken.

**SUFFOLK COUNTY LICENSING BUREAU POLICIES AND PROCEDURES**

62.     In the meantime, those individuals who have a present plan and intention to purchase a semiautomatic rifle cannot because SCPD will not issue a Rifle License.

63.     New York State's Licensing Scheme identifies 3 distinct licenses: (1) gunsmith/dealer in firearms; (2) license to purchase or take possession of a semiautomatic rifle; and (3) pistol/revolver. Penal Law § 400.00(2).

64.     No purchase of a semiautomatic rifle can occur without having first applied for and obtained a license specific to the purchase or possession of semiautomatic rifles. Penal Law § 400.00(2).

65.  SCPD has no process for an individual to apply for a Rifle License.

66.  SCPD has no process for SCPD to issue a Rifle License.

67.  SCPD will not accept applications for a Rifle License for people, like Plaintiff McGregor, who hold a handgun license.

68.  According to SCPD's Rifle Policy, a handgun license complies with the Rifle Bill.

69.  A handgun license does not comply with the Rifle Bill. See, Penal Law § 400.00(2).

70.  Possession of a valid New York State handgun license is not a defense to arrest and prosecution for an offense under Penal Law §§ 265.65 and 265.66.

71.  Under the Rifle Bill, federally licensed firearms dealers (gun shops) like Edward Newman and Dark Storm Industries cannot lawfully sell or transfer semiautomatic rifles to anyone who does not hold a Rifle License issued pursuant to Penal Law § 400.00(2), even those individuals who have passed a NICS background check.

72.  SCPD will not issue Rifle Licenses and will only issue handgun licenses; under SCPD policy, any individual seeking to lawfully purchase, receive, or transfer a semiautomatic rifle must apply for a *handgun license*.

73.  The SCPD Licensing Bureau process for obtaining a handgun license takes between *2-3 years*.

74.  Meaning that, even if a handgun license satisfied the requirements under the Rifle Bill, which it does not, an unlicensed individual – like Plaintiff Matthew Olivieri – is prohibited from possessing, receiving, purchasing, selling, giving, or taking possession of semiautomatic rifles until he applies for and obtains a handgun license, which the SCPD takes *2-3 years* to issue.

75.     Under the Rifle Bill, Plaintiffs and all other similarly situated people in Suffolk County are *de facto* banned from purchasing, selling, taking possession of, selling, giving, exchanging, and disposing of semiautomatic rifles.[10]

76.     This Nation has no historical tradition requiring a license or imposing criminal sanctions against ordinary individuals who exercise the presumptively protected right to possess, purchase, give, exchange, receive, sell, and/or carry long guns.

77.     Nor is requiring the People to 'register' their firearms or seek permission from the government before lawfully adding to or removing from one's firearms collection part of any historical traditions in America.

78.     As a direct result of Defendants' enforcement of the Rifle Bill, Plaintiffs are divested of the right to engage in conduct presumptively protected by the Second and Fourteenth Amendments.

79.     As a direct result of and SCPD's Rifle Policy, Plaintiffs are divested of the right to engage in conduct presumptively protected by the Second and Fourteenth Amendments.

***Plaintiffs***

80.     Each of the individually named Plaintiffs is eligible to possess, purchase, receive, and transfer firearms under state and federal law.

81.     No Plaintiff has ever unlawfully used or threatened the use of a firearm.

82.     Plaintiffs will not and should not have to seek permission by way of a discretionary license to purchase, take possession of, sell, give, exchange, and/or dispose of semiautomatic rifles.

83.     Plaintiffs will not and should not have to register their semiautomatic rifles with the government.

---

[10] Again, possession of a handgun license is not a defense to arrest and prosecution for an offense under Penal Law §§ 265.65 and 265.66; a separate Rifle License is required. See, Penal Law § 400.00(2).

15

84.     DSI should not be prevented from selling, transferring, purchasing, or giving semiautomatic to its customers and prospective customers who, through a NICS check, are confirmed legally eligible to receive, purchase, and possess firearms.

85.     Plaintiffs' regulated conduct falls within the plain text of the Second Amendment and is presumptively protected.

86.     Defendants alone have the burden of proving the challenged regulations are consistent with this Nation's historical traditions of firearm regulation.

87.     The challenged regulations are inconsistent with this Nation's historical traditions of firearm regulation.

### Michael McGregor

88.     Michael McGregor is a resident of Suffolk County and a practicing physician. Dr. McGregor has no prohibitors to the possession of firearms.

89.     Dr. McGregor recently attempted to purchase a Ruger 10/22 semiautomatic rifle at RT Smoke 'N Gun ("RT Smoke"), a federally licensed firearm dealer in Mount Vernon (Westchester County), New York.

90.     Dr. McGregor was unable to purchase the Ruger or any other semiautomatic rifle from RT Smoke because he did not hold a license to purchase or take possession of semiautomatic rifles.

91.     Consistent with the Penal Law, RT Smoke will not sell a semiautomatic rifle to an individual who merely holds a handgun license.

92.     Dr. McGregor contracted Karp's Hardware/Long Island Ammo in East Northport, New York (Suffolk County) to inquire about purchasing a semiautomatic rifle.

93.     LI Ammo advised Dr. McGregor that it will not sell a semiautomatic rifle to anyone unless the purchaser has a license to purchase and take possession of semiautomatic rifles, or if their existing  handgun license specifically indicates a semiautomatic rifle endorsement. A handgun license is not sufficient.

94.     Dr. McGregor contacted the SCPD Licensing Bureau about the process for obtaining a semiautomatic Rifle License, and informed that FFLs will not sell him a semiautomatic rifle without a specific license for same. Dr. McGregor also informed Licensing Bureau that NYSP guidance indicates that the semiautomatic rifle endorsement should be available by amending one's NYS handgun license.

95.     The SCPD Licensing Bureau informed that they recognize the sportsman pistol license as sufficient to purchase a semiautomatic rifle.

96.     The Licensing Bureau also informed that SCPD will require every semiautomatic rifles purchased to be registered on/added to the handgun license.

97.     The Licensing Bureau acknowledged that licensing officers "upstate" are not registering semiautomatic rifles on the license; Dr. McGregor informed that "even Westchester is not doing that", to which SCPD replied, "but we are. If you buy a semiautomatic rifle, you bring…in the receipt just like you would any handgun and we'll put it on your license."

98.     Dr. McGregor contacted Camp-Site Sport Shop in Huntington Station, New York (Suffolk County) to inquire about purchasing a semiautomatic rifle. Dr. McGregor informed Camp-Site that the SCPD Licensing Bureau said his handgun license was sufficient to purchase a semiautomatic rifle even though it does not say anything about a semiautomatic rifle endorsement. Camp-Site informed Dr. McGregor that he could not purchase a semiautomatic rifle with a handgun license.

99.     NYSP guidance indicates that the semiautomatic Rifle License can be issued by virtue of amending an existing handgun license to reflect the endorsement.

100.     The SCPD Licensing Bureau informed Dr. McGregor that they will not issue Rifle Licenses or amend handgun licenses to reflect semiautomatic rifle authorization because SCPD considers the handgun license "good enough to purchase rifles" despite the plain language of the Penal Law.

101.     Dr. McGregor will not, does not want to, and should not have to, apply for a license to purchase and/or take possession of semiautomatic rifles or register semiautomatic rifles under a license or otherwise.

102.     Dr. McGregor also will not, does not want to, and should not have to, apply for a license to sell, give, exchange, and/or dispose of his own property, to wit, the semiautomatic rifles he currently owns.

103.     Having to apply to SCPD for a semiautomatic Rifle License as required by the Rifle Bill, even if just an endorsement of Dr. McGregor's handgun license, will take at least 2 years to be assigned to an investigator, interviewed, photographed, and investigated and 6 months thereafter for a Rifle License to issue.

***Zachary Giambalvo***

104.     Zachary Giambalvo ("Mr. Giambalvo"), is a resident of Suffolk County with no prohibitors to the possession of firearms.

105.     For years, Mr. Giambalvo and his father, Donald Giambalvo have enjoyed going to the gun range and practicing target shooting together. Mr. Giambalvo and his father have carried, taken possession of, received, given and shot one another's semiautomatic rifles at Dark Storm Industries, LLC (DSI) gun range in Suffolk County, New York.

18

106.    Donald Giambalvo is eligible to possess and purchase firearms and has never unlawfully used or threatened the use of a firearm.

107.    DSI has a regular police presence; off-duty police officers regularly visit DSI to also, *inter alia*, engage in target practice.

108.    Since the passage of the Rifle Bill, Mr. Giambalvo is no longer able to go target shooting with his father at DSI out of fear of being arrested and incarcerated under Penal Law sections 265.56 and 265.66.

109.    Every other weekend, Mr. Giambalvo goes target shooting with his semiautomatic rifle at Calverton Range with friends who are all eligible to possess and purchase firearms under state and federal law.

110.    In the past, Mr. Giambalvo has carried, taken possession of, and/or received his friends' semiautomatic rifles to inspect and shoot at targets. Likewise, Mr. Giambalvo has given his friends his semiautomatic rifle for them to inspect and use for target shooting.

111.    Neither Mr. Giambalvo nor his friends have licenses to purchase or take possession of semiautomatic rifles.

112.    Mr. Giambalvo intends to continue to go to target shooting with his friends at Calverton and will continue to carry, take possession of, and/or shoot his friends' semiautomatic rifles and he will also give his friends his semiautomatic rifle to use for target shooting, knowing that neither he nor his friends have Rifle Licenses. Mr. Giambalvo has plans to go engage in such protected conduct next weekend and twice a month thereafter.

113.    Suffolk County officers and other law enforcement officers go target shooting at Calverton during the times that Mr. Giambalvo is there shooting with friends.

114.     Mr. Giambalvo faces a credible and imminent risk of arrest, incarceration through the enforcement of Penal Law sections 265.65 and 265.66 by SCPD and NYSP, and other criminal and civil penalties for engaging in such constitutionally protected conduct.

115.     Mr. Giambalvo's risk of enforcement is particularly imminent because he has publicly announced his intention to violate the law in this pleading.

116.     Mr. Giambalvo also has the present intention to purchase a World War II era semi-automatic rifle from an FFL outside of New York and completing the transfer in New York through DSI, but is completely barred from doing so because of the Rifle Bill.

117.     Mr. Giambalvo cannot obtain a rifle license from SCPD because there is no process to obtain one.

118.     Even if SCPD had such a process, Mr. Giambalvo objects to any requirement that he apply for and obtain such a license to be able to lawfully exercise his Second Amendment rights.

119.     SCPD's policy is that no separate Rifle License is required to purchase, take possession of, give, exchange, or otherwise dispose of a semiautomatic rifle, and SCPD offers no process to obtain a Rifle License.

120.     SCPD's policy regarding a Rifle License directly conflicts with the plain language of Penal Law sections 400.00(2), 265.65, and 265.66.

121.     Mr. Giambalvo should not have to choose between exercising a right protected by the Second Amendment or violating the state's criminal laws.

*Paul Felice*

122.  Paul Felice ("Mr. Felice"), is a resident of Suffolk County with no prohibitors to the possession of firearms.

123.  Mr. Felice lawfully owns long guns, including semi-automatic rifles, at least one of which he purchased from Dark Storm Industries.

124.  Mr. Felice enjoys target shooting, whether alone or with friends, at various gun ranges including Dark Storm Industries and Calverton and goes target shooting at least 1-2 times per month. When Mr. Felice goes target shooting with his friends, it is not uncommon for them to target shot with one another's semi-automatic rifles.

125.  Because neither Mr. Felice nor his friends hold Rifle Licenses – and cannot because SCPD does not issue Rifle Licenses -  they are barred by Penal Law 265.65 and 265.66 from engaging in protected conduct.

126.  Mr. Felice has present plans to purchase a semi-automatic rifle, a Black Rain Ordnance, which would be transferred to him by Dark Storm Industries after a NICS background check.

127.  Mr. Felice does not have a Rifle License and will not apply for such a discretionary license.

128.  The Rifle Bill constitutes an absolute bar to Mr. Felice's exercise of conduct protected by the plain text of the Second Amendment – keeping arms – because Penal Law § 265.65 prohibits Mr. Felice from purchasing semi-automatic rifles.

*Matthew Olivieri*

129.    Matthew Olivieri ("Mr. Olivieri"), is a resident of Suffolk County with no prohibitors to the possession of firearms.

130.    Mr. Olivieri is a Marine Corps. veteran who was assigned to the Infantry and has extensive experience with semiautomatic rifles.

131.    Until the passage of the Rifle Bill, Mr. Olivieri enjoyed going to the gun range with his father to engage in target shooting. Because he does not own a semiautomatic rifle, Mr. Olivieri would share his father's.

132.    The Rifle Bill now makes Mr. Olivieri's conduct -and his father's conduct - illegal. For Mr. Olivieri to take possession of his father's semiautomatic rifle, even for target shooting at the gun range, is now a crime. It is also a crime for his father to give (hand over) his semiautomatic rifle to Mr. Olivieri to use for target shooting at the gun range.

133.    If Mr. Olivieri uses his father's semiautomatic rifle at the gun range for target shooting, both he and his father will be subject to arrest, incarceration, and other criminal and civil penalties.

134.    Mr. Olivieri has a present intention to purchase a New York-compliant AR-15 semiautomatic rifle from Dark Storm but cannot because he does not have a Rifle License.

135.    Mr. Olivieri does not hold a New York State handgun license.

136.    Mr. Olivieri cannot obtain a rifle license from SCPD because there is no process to obtain one and has no present intention to apply for a handgun license, which in any event would take 2-3 years under SCPD policies.

137.     Even if SCPD had such a process to apply for and obtain a Rifle License, Mr. Olivieri objects to any requirement that he apply for and obtain such a license to be able to lawfully exercise his Second Amendment rights.

138.     Mr. Olivieri also objects to any requirement that he register his firearms on any government license.

139.     Mr. Olivieri should not have to choose between exercising a right protected by the Second Amendment or violating the state's criminal laws.

*Ed Newman and Dark Storm Industries*

140.     Edward Newman ("Mr. Newman") is the owner of Dark Storm Industries (DSI) located in Suffolk County, New York.

141.     Since 2013, DSI has held a federal firearms license as a manufacturer.

142.     DSI's business model encompasses the sale of firearms, ammunition, and related self-defense and sport target shooting products. DSI sells handguns (including revolvers and semi-automatic pistols), rifles (including semi-automatic rifles), and shotguns. DSI is the largest manufacturer of semiautomatic rifles in the State of New York.

143.     Since the passage of the Rifle Bill, DSI can no longer sell or transfer semiautomatic rifles to its customers and potential customers who have not applied for and obtained a Rifle License.

144.     Such class of individuals includes one or more of the plaintiffs in this action and other ordinary citizens who are not part of this action but also seek access to DSI's market function, to wit, the purchase of semiautomatic rifles and on whose behalf DSI advocates for their constitutional right to purchase, sell, and receive semiautomatic rifles.

145.    As a direct result of SCPD's enforcement of the Rifle Bill, Mr. Newman and DSI are prohibited from engaging in its normal and customary business; and its customers and potential customers are unable to purchase, transfer, and receive semi-automatic firearms semiautomatic rifles because of the threat of criminal penalties under Penal Law §§ 265.65 and 265.66 to Mr. Newman, DSI, customers, and potential customers, including arrest, incarceration, and fines.

146.    As a direct result of SCPD's licensing policies and procedures, and the enforcement of the Rifle Bill, Mr. Newman and DSI are prohibited from engaging in their normal and customary business; and their customers and potential customers are unable to purchase, transfer, and receive semi-automatic firearms semi-automatic rifles under threat of criminal penalties under Penal Law §§ 265.65 and 265.66 subjecting Mr. Newman, DSI, their customers, and potential customers to arrest, felony conviction, incarceration, and fines, as well as actual economic loss.

***NYSP Active Enforcement of Firearm Regulations***

147.    Each Plaintiff faces a credible and imminent risk of arrest, incarceration, and other criminal penalties by SCPD and the New York State Police for engaging in presumptively protected conduct.

148.    Superintendent Nigrelli publicly thanked Governor Hochul as "someone [he] looks up to" for her "leadership on this topic…laser-like focus on ***eradicating guns***, illegal guns, and gun crimes...we appreciate that at the State Police." [11] (36:10). (emphasis added).

_____

[11] https://www.youtube.com/watch?v=gC1L2rrztQs

24

149.     Superintendent Nigrelli vowed that the NYSP will enforce the State's gun laws against everyone who violates them:

> "Governor, it's an easy message. I don't have to spell it out more than this. We'll have zero tolerance. If you violate this law, you will be arrested. Simple as that. Because the New York State Troopers are ***standing ready to do our job to ensure .. all laws are enforced***." *Id.* (emphasis added).

150.     Penal Law §§ 265.65 and 265.66 will be enforced by the NYSP against anyone who purchases, receives, transfers, and/or possesses a semi-automatic rifle without applying for and obtaining a Rifle License, including Plaintiffs and similarly situated individuals.

151.     Likewise, SCPD is enforcing Penal Law §§ 265.65 and 265.66 against anyone who purchases, receives, transfers, and/or possesses a semi-automatic rifle without applying for and obtaining a Rifle License, including Plaintiffs and similarly situated individuals.

152.     As a direct result of Defendants' conduct, Plaintiffs have been caused to suffer, *inter alia,* the presumed violation of their constitutional rights as protected by the Second and Fourteenth Amendments, presumed damages resulting from the violation of their constitutional rights in at least a nominal amount, economic damages, and they have otherwise been rendered sick and sore.

153.     As a direct result of Superintendent Nigrelli's enforcement of the Rifle Bill, Mr. Newman and DSI are prohibited from engaging in their normal and customary business; and their customers and potential customers are unable to purchase, transfer, and receive semi-automatic firearms semi-automatic rifles under threat of criminal penalties under Penal Law §§ 265.65 and 265.66 subjecting Mr. Newman, DSI, their customers, and potential customers to arrest, felony conviction, incarceration, and fines.

154.    Plaintiffs seek a judicial declaration that Senate Bill 9458 violates the Second and Fourteenth Amendments.

155.    Plaintiffs seek a judicial declaration that the SCPD policies and procedures described herein violate the Second and Fourteenth Amendments.

156.    Plaintiffs further seek an Order preliminarily and permanently enjoining Commissioner Harrison and Superintendent Nigrelli, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with such defendants,  who receive actual notice thereof from enforcing Senate Bill 9458.

## COUNT I
### U.S. CONST., AMEND. II and XIV, 42 U.S.C. § 1983

157.    Repeat and reallege paragraphs "1" through and including "156."

158.    Under the theory that defendants are liable to plaintiffs for violations of their preexisting and guaranteed individual rights as protected by the Second Amendment, and made applicable to the States through the Fourteenth Amendment, to the U.S. Constitution. 42 U.S.C. § 1983.

## COUNT II
### *MONELL* LIABILITY
### (Suffolk County)

159.    Repeats and realleges paragraphs "1" through and including "158."

160.    Under the theory that, by creating, maintaining, enforcing, following, and/or applying Suffolk County's unconstitutional policy described herein, the County of Suffolk is liable to the plaintiff under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) for the violations of Plaintiffs' constitutional rights as plead herein, 42 U.S.C. §1983.

WHERFORE, a Judgment and Order is respectfully requested:

- Declaring that Senate Bill 9458 violates the Second and Fourteenth Amendments to the U.S. Constitution;

- Declaring that the policies, processes, and procedures related to the licensing of semiautomatic rifles enforced and implemented by SCPD violate the Second and Fourteenth Amendments to the U.S. Constitution;

- Granting temporary and permanent injunctive relief against Commissioner Harrison and Superintendent Nigrelli, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with such defendants, who receive actual notice thereof from enforcing any provision of Senate Bill 9458;

- Awarding in favor of Plaintiffs presumed nominal damages against Defendants for the violation of their of their Second and Fourteenth Amendment rights;

- Awarding in favor of Plaintiffs and against Suffolk County, New York compensatory damages for the violation of their Second and Fourteenth Amendment rights;

- Awarding in favor of Ed Newman and Dark Storm Industries, LLC economic damages against Suffolk County, New York;

- Awarding costs, disbursements, and reasonable statutory attorney's fees pursuant to 42 USC 1988; and

- Granting such other, further, and different relief as to this Court seems just, equitable, and proper.

Dated: February 10, 2023
Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs*

By: _Amy L. Bellantoni_

Amy L. Bellantoni (AB3061)
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
(888) 763-9761 (f)

**EXHIBIT   1**

# STATE OF NEW YORK

9458

# IN SENATE

May 30, 2022

───────────

Introduced by Sen. THOMAS -- read twice and ordered printed, and when
printed to be committed to the Committee on Codes

AN ACT to amend the penal law, in relation to the purchase or taking
possession of a semiautomatic rifle

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

1    Section 1. Subdivisions 2, 3, 6, 7, 8, 9 and 14 of section 400.00 of
2  the penal law, subdivisions 2 and 8 as amended by chapter 189 of the
3  laws of 2000, paragraph (a) of subdivision 3 and subdivision 9 as
4  amended by chapter 1 of the laws of 2013, paragraph (b) of subdivision 3
5  as added by chapter 778 of the laws of 1985, subdivision 6 as amended by
6  chapter 104 of the laws of 2019, and subdivision 14 as amended by chap-
7  ter 195 of the laws of 2005, are amended to read as follows:
8    2. Types of licenses. A license for gunsmith or dealer in firearms
9  shall be issued to engage in such business. *A license for a semiauto-*
10 *matic rifle, other than an assault weapon or disguised gun, shall be*
11 *issued to purchase or take possession of such a firearm when such trans-*
12 *fer of ownership occurs on or after the effective date of the chapter of*
13 *the laws of two thousand twenty-two that amended this subdivision.* A
14 license for a pistol or revolver, other than an assault weapon or a
15 disguised gun, shall be issued to (a) have and possess in his dwelling
16 by a householder; (b) have and possess in his place of business by a
17 merchant or storekeeper; (c) have and carry concealed while so employed
18 by a messenger employed by a banking institution or express company; (d)
19 have and carry concealed by a justice of the supreme court in the first
20 or second judicial departments, or by a judge of the New York city civil
21 court or the New York city criminal court; (e) have and carry concealed
22 while so employed by a regular employee of an institution of the state,
23 or of any county, city, town or village, under control of a commissioner
24 of correction of the city or any warden, superintendent or head keeper
25 of any state prison, penitentiary, workhouse, county jail or other
26 institution for the detention of persons convicted or accused of crime
27 or held as witnesses in criminal cases, provided that application is
28 made therefor by such commissioner, warden, superintendent or head keep-

EXPLANATION--Matter in *italics* (underscored) is new; matter in brackets
[-] is old law to be omitted.

LBD16020-02-2

S. 9458                                    2

1 er; (f) have and carry concealed, without regard to employment or place
2 of possession, by any person when proper cause exists for the issuance
3 thereof; and (g) have, possess, collect and carry antique pistols which
4 are defined as follows: (i) any single shot, muzzle loading pistol with
5 a matchlock, flintlock, percussion cap, or similar type of ignition
6 system manufactured in or before 1898, which is not designed for using
7 rimfire or conventional centerfire fixed ammunition; and (ii) any repli-
8 ca of any pistol described in clause (i) hereof if such replica--
9    (1) is not designed or redesigned for using rimfire or conventional
10 centerfire fixed ammunition, or
11   (2) uses rimfire or conventional centerfire fixed ammunition which is
12 no longer manufactured in the United States and which is not readily
13 available in the ordinary channels of commercial trade.
14   3. Applications. (a) Applications shall be made and renewed, in the
15 case of a license to carry or possess a pistol or revolver **or to**
16 **purchase or take possession of a semiautomatic rifle**, to the licensing
17 officer in the city or county, as the case may be, where the applicant
18 resides, is principally employed or has his or her principal place of
19 business as merchant or storekeeper; and, in the case of a license as
20 gunsmith or dealer in firearms, to the licensing officer where such
21 place of business is located. Blank applications shall, except in the
22 city of New York, be approved as to form by the superintendent of state
23 police. An application shall state the full name, date of birth, resi-
24 dence, present occupation of each person or individual signing the same,
25 whether or not he or she is a citizen of the United States, whether or
26 not he or she complies with each requirement for eligibility specified
27 in subdivision one of this section and such other facts as may be
28 required to show the good character, competency and integrity of each
29 person or individual signing the application. An application shall be
30 signed and verified by the applicant. Each individual signing an appli-
31 cation shall submit one photograph of himself or herself and a duplicate
32 for each required copy of the application. Such photographs shall have
33 been taken within thirty days prior to filing the application. In case
34 of a license as gunsmith or dealer in firearms, the photographs submit-
35 ted shall be two inches square, and the application shall also state the
36 previous occupation of each individual signing the same and the location
37 of the place of such business, or of the bureau, agency, subagency,
38 office or branch office for which the license is sought, specifying the
39 name of the city, town or village, indicating the street and number and
40 otherwise giving such apt description as to point out reasonably the
41 location thereof. In such case, if the applicant is a firm, partnership
42 or corporation, its name, date and place of formation, and principal
43 place of business shall be stated. For such firm or partnership, the
44 application shall be signed and verified by each individual composing or
45 intending to compose the same, and for such corporation, by each officer
46 thereof.
47   (b) Application for an exemption under paragraph seven-b of subdivi-
48 sion a of section 265.20 of this chapter. Each applicant desiring to
49 obtain the exemption set forth in paragraph seven-b of subdivision a of
50 section 265.20 of this chapter shall make such request in writing of the
51 licensing officer with whom his application for a license is filed, at
52 the time of filing such application. Such request shall include a signed
53 and verified statement by the person authorized to instruct and super-
54 vise the applicant, that has met with the applicant and that he has
55 determined that, in his judgment, said applicant does not appear to be
56 or poses a threat to be, a danger to himself or to others. He shall

1  include  a copy of his certificate as an instructor in small arms, if he
2  is required to be certified, and state his address and telephone number.
3  He shall specify the exact  location  by  name,  address  and  telephone
4  number  where  such  instruction will take place. Such licensing officer
5  shall, no later than ten business days after such  filing,  request  the
6  duly  constituted police authorities of the locality where such applica-
7  tion is made to investigate and ascertain any previous  criminal  record
8  of  the  applicant  pursuant  to subdivision four of this section.  Upon
9  completion of this investigation, the police authority shall report  the
10 results  to the licensing officer without unnecessary delay. The licens-
11 ing officer shall no later than ten business days after the  receipt  of
12 such  investigation,  determine  if  the  applicant  has been previously
13 denied a license, been convicted of a felony, or  been  convicted  of  a
14 serious  offense,  and  either  approve  or disapprove the applicant for
15 exemption purposes based upon such determinations. If the  applicant  is
16 approved  for  the  exemption,  the  licensing officer shall notify the
17 appropriate duly constituted police authorities and the applicant.  Such
18 exemption  shall terminate if the application for the license is denied,
19 or at any earlier time  based  upon  any  information  obtained  by  the
20 licensing  officer  or  the  appropriate  police authorities which would
21 cause the license to be denied. The  applicant  and  appropriate  police
22 authorities shall be notified of any such terminations.
23    6.  License:  validity.  Any  license  issued pursuant to this section
24 shall be valid notwithstanding the provisions of any local law or  ordi-
25 nance.   No  license shall be transferable to any other person or prem-
26 ises. A license to carry or possess a pistol or revolver, **or to purchase**
27 **or take possession of a semiautomatic rifle,** not otherwise limited as to
28 place or time of possession, shall be effective  throughout  the  state,
29 except  that  the  same  shall  not be valid within the city of New York
30 unless a special permit  granting  validity  is  issued  by  the  police
31 commissioner  of  that  city.  Such license to carry or possess shall be
32 valid within the city of New York in the absence of a permit  issued  by
33 the  police  commissioner  of  that city, provided that (a) the firearms
34 covered by such license have been purchased from a licensed dealer with-
35 in the city of New York and are being  transported  out  of  said  city
36 forthwith  and  immediately from said dealer by the licensee in a locked
37 container during a continuous and uninterrupted trip; or  provided  that
38 (b)  the  firearms  covered by such license are being transported by the
39 licensee in a locked container and the trip through the city of New York
40 is continuous and uninterrupted; or provided that  (c)  the  firearms
41 covered  by  such  license  are  carried  by armored car security guards
42 transporting money or other valuables, in, to, or  from  motor  vehicles
43 commonly  known  as armored cars, during the course of their employment;
44 or provided that (d) the licensee is a retired police officer as  police
45 officer  is  defined pursuant to subdivision thirty-four of section 1.20
46 of the criminal procedure law or a retired federal law enforcement offi-
47 cer, as defined in section 2.15 of the criminal procedure law,  who  has
48 been  issued  a license by an authorized licensing officer as defined in
49 subdivision ten of section 265.00 of this chapter; provided,  further,
50 however,  that if such license was not issued in the city of New York it
51 must be marked "Retired Police Officer" or "Retired Federal Law Enforce-
52 ment Officer", as the case may be, and, in the case of a retired officer
53 the license shall be deemed to permit  only  police  or  federal  law
54 enforcement  regulations weapons; or provided that (e) the licensee is a
55 peace officer described in subdivision four of section 2.10 of the crim-
56 inal procedure law and the license, if issued by other than the city  of

S. 9458                                      4

 1  New York, is marked "New York State Tax Department Peace Officer" and in
 2  such  case  the exemption shall apply only to the firearm issued to such
 3  licensee by  the  department  of  taxation  and  finance.  A  license  as
 4  gunsmith  or  dealer  in firearms shall not be valid outside the city or
 5  county, as the case may be, where issued. Notwithstanding any inconsist-
 6  ent provision of state or local law or rule or regulation, the  premises
 7  limitation  set  forth  in  any  license to have and possess a pistol or
 8  revolver in the licensee's dwelling or place  of  business  pursuant  to
 9  paragraph  (a)  or  (b)  of  subdivision  two of this section shall not
10  prevent the transport of such pistol or revolver directly to or from (i)
11  another dwelling or place of business of the licensee where the licensee
12  is authorized to have and possess  such  pistol  or  revolver,  (ii)  an
13  indoor or outdoor shooting range that is authorized by law to operate as
14  such,  (iii)  a  shooting  competition at which the licensee may possess
15  such pistol or revolver consistent with the provisions of subdivision  a
16  of  section 265.20 of this chapter or consistent with the law applicable
17  at the place of such competition, or (iv) any other location  where  the
18  licensee  is  lawfully  authorized  to  have  and possess such pistol or
19  revolver; provided however, that during such  transport  to  or  from  a
20  location  specified  in  clauses (i) through (iv) of this paragraph, the
21  pistol or revolver shall be unloaded and carried in a locked  container,
22  and  the  ammunition  therefor  shall  be  carried  separately; provided
23  further, however, that a license to have and possess a pistol or  revol-
24  ver  in  the  licensee's dwelling or place of business pursuant to para-
25  graph (a) or (b) of subdivision two of this section that is issued by  a
26  licensing  officer other than the police commissioner of the city of New
27  York shall not authorize transport of a pistol or revolver into the city
28  of New York in the absence of written authorization  to  do  so  by  the
29  police  commissioner of that city. The term "locked container" shall not
30  include the glove compartment or console of a vehicle.
31    7. License: form. Any license issued pursuant to this  section  shall,
32  except  in  the  city of New York, be approved as to form by the super-
33  intendent of state police. A license to carry or  possess  a  pistol  or
34  revolver  **or  to  purchase  or  take possession of a semiautomatic rifle**
35  shall have attached the licensee's photograph, and a coupon which  shall
36  be  removed  and  retained  by  any person disposing of a firearm to the
37  licensee. [~~Such~~] **A** license **to carry or  possess  a  pistol  or  revolver**
38  shall specify the weapon covered by calibre, make, model, manufacturer's
39  name  and  serial number, or if none, by any other distinguishing number
40  or identification mark, and shall indicate whether issued  to  carry  on
41  the person or possess on the premises, and if on the premises shall also
42  specify  the  place  where  the licensee shall possess the same. If such
43  license is issued to an alien, or to a  person  not  a  citizen  of  and
44  usually  a  resident  in the state, the licensing officer shall state in
45  the license the particular reason for the issuance and the names of  the
46  persons  certifying  to the good character of the applicant. Any license
47  as gunsmith or dealer in firearms shall mention and describe the  prem-
48  ises for which it is issued and shall be valid only for such premises.
49    8. License:  exhibition  and  display. Every licensee while carrying a
50  pistol or revolver shall have on his or her person a  license  to  carry
51  the  same.  Every  person  licensed to  possess a pistol or revolver on
52  particular premises shall have the license for the same  on  such  prem-
53  ises.  **Every person licensed to purchase or take possession of a semiau-**
54  **tomatic  rifle  shall have the license for the same on his or her person**
55  **while purchasing or taking possession of such weapon.** Upon  demand,  the
56  license  shall  be exhibited for inspection to any peace officer, who is

S. 9458                                   5

1  acting pursuant to his or her special duties, or police officer. A
2  license as gunsmith or dealer in firearms shall be prominently displayed
3  on the licensed premises. A gunsmith or dealer of firearms may conduct
4  business temporarily at a location other than the location specified on
5  the license if such temporary location is the location for a gun show or
6  event sponsored by any national, state, or local organization, or any
7  affiliate of any such organization devoted to the collection, compet-
8  itive use or other sporting use of firearms. Any sale or transfer at a
9  gun show must also comply with the provisions of article thirty-nine-DD
10 of the general business law. Records of receipt and disposition of
11 firearms transactions conducted at such temporary location shall include
12 the location of the sale or other disposition and shall be entered in
13 the permanent records of the gunsmith or dealer of firearms and retained
14 on the location specified on the license. Nothing in this section shall
15 authorize any licensee to conduct business from any motorized or towed
16 vehicle. A separate fee shall not be required of a licensee with respect
17 to business conducted under this subdivision. Any inspection or exam-
18 ination of inventory or records under this section at such temporary
19 location shall be limited to inventory consisting of, or records related
20 to, firearms held or disposed at such temporary locations. Failure of
21 any licensee to so exhibit or display his or her license, as the case
22 may be, shall be presumptive evidence that he or she is not duly
23 licensed.
24    9. License: amendment. Elsewhere than in the city of New York, a
25 person licensed to carry or possess a pistol or revolver **or to purchase**
26 **or take possession of a semiautomatic rifle** may apply at any time to his
27 or her licensing officer for amendment of his or her license to include
28 one or more such weapons or to cancel weapons held under license. If
29 granted, a record of the amendment describing the weapons involved shall
30 be filed by the licensing officer in the executive department, division
31 of state police, Albany. The superintendent of state police may author-
32 ize that such amendment be completed and transmitted to the state police
33 in electronic form. Notification of any change of residence shall be
34 made in writing by any licensee within ten days after such change
35 occurs, and a record of such change shall be inscribed by such licensee
36 on the reverse side of his or her license. Elsewhere than in the city of
37 New York, and in the counties of Nassau and Suffolk, such notification
38 shall be made to the executive department, division of state police,
39 Albany, and in the city of New York to the police commissioner of that
40 city, and in the county of Nassau to the police commissioner of that
41 county, and in the county of Suffolk to the licensing officer of that
42 county, who shall, within ten days after such notification shall be
43 received by him or her, give notice in writing of such change to the
44 executive department, division of state police, at Albany.
45    14. Fees. In the city of New York and the county of Nassau, the annual
46 license fee shall be twenty-five dollars for gunsmiths and fifty dollars
47 for dealers in firearms. In such city, the city council and in the coun-
48 ty of Nassau the Board of Supervisors shall fix the fee to be charged
49 for a license to carry or possess a pistol or revolver **or to purchase or**
50 **take possession of a semiautomatic rifle** and provide for the disposition
51 of such fees. Elsewhere in the state, the licensing officer shall
52 collect and pay into the county treasury the following fees: for each
53 license to carry or possess a pistol or revolver **or to purchase or take**
54 **possession of a semiautomatic rifle**, not less than three dollars nor
55 more than ten dollars as may be determined by the legislative body of
56 the county; for each amendment thereto, three dollars, and five dollars

Case 2:23-cv-02160-GRB-ARL Document 1-16 Filed 02/10/22 Page 36 of 37 PageID #: 89

 1  in the county of Suffolk; and for each license issued to a  gunsmith  or
 2  dealer  in  firearms, ten dollars. The fee for a duplicate license shall
 3  be five dollars. The fee for processing a license transfer between coun-
 4  ties  shall  be five dollars. The fee for processing a license or renewal
 5  thereof for a qualified retired police officer as defined under subdivi-
 6  sion thirty-four of section 1.20 of the criminal  procedure  law,  or  a
 7  qualified  retired  sheriff, undersheriff, or deputy sheriff of the city
 8  of New York as defined under subdivision two  of  section  2.10  of  the
 9  criminal  procedure  law, or a qualified retired bridge and tunnel offi-
10  cer, sergeant or lieutenant of the triborough bridge and tunnel authori-
11  ty as defined under subdivision twenty of section 2.10 of the  criminal
12  procedure  law,  or  a  qualified retired uniformed court officer in the
13  unified court system, or a qualified retired court clerk in the  unified
14  court system in the first and second judicial departments, as defined in
15  paragraphs  a  and  b  of  subdivision twenty-one of section 2.10 of the
16  criminal procedure law or a retired correction  officer  as  defined  in
17  subdivision  twenty-five  of  section 2.10 of the criminal procedure law
18  shall be waived in all counties throughout the state.
19    § 2. Subdivisions 1 and 3 of section 400.01 of the penal law, subdivi-
20  sion 1 as amended by chapter 511 of the laws of 2014 and  subdivision  3
21  as  added  by  chapter  210  of the laws of 1999, are amended to read as
22  follows:
23    1. A license to carry or possess a firearm  **or  to  purchase  or  take**
24  **possession  of  a  semiautomatic rifle** for a retired sworn member of the
25  division of state police shall be granted in the same  manner  and  upon
26  the same terms and conditions as licenses issued under section 400.00 of
27  this  article  provided, however, that applications for such license may
28  be made to, and the licensing officer  may  be,  the  superintendent  of
29  state police.
30    3. The provisions of this section shall only apply to license applica-
31  tions made or renewals which must be made on or after the effective date
32  of  this  section. A license to carry or possess a pistol or revolver **or**
33  **to purchase or take possession of a semiautomatic rifle** issued  pursuant
34  to  the provisions of section 400.00 of this article to a person covered
35  by the provisions of this section shall  be  valid  until  such  license
36  would  have expired pursuant to the provisions of section 400.00 of this
37  article; provided that, on or after the effective date of  this  section,
38  an  application  or renewal of such license shall be made pursuant to the
39  provisions of this section.
40    § 3. Subdivision 9 of section 265.00 of the penal law, as  amended  by
41  chapter 189 of the laws of 2000, is amended to read as follows:
42    9.  "Dealer  in  firearms" means any person, firm, partnership, corpo-
43  ration or company who engages in the business  of  purchasing,  selling,
44  keeping  for  sale, loaning, leasing, or in any manner disposing of, any
45  assault weapon, large capacity ammunition feeding device,  pistol  [**or**]**,**
46  revolver**, or semiautomatic rifle**.
47    § 4.  Subdivision 7 of section 265.10 of the penal law, as amended by
48  chapter 189 of the laws of 2000, is amended to read as follows:
49    7. Any person, other than a wholesale dealer, or gunsmith or dealer in
50  firearms duly licensed pursuant  to  section  400.00  **of this chapter**,
51  lawfully in possession of a firearm **or semiautomatic rifle**, who disposes
52  of  the  same without first notifying in writing the licensing officer in
53  the city of New York and counties of Nassau and Suffolk and elsewhere in
54  the state the executive department, division of state police, Albany, is
55  guilty of a class A misdemeanor.

```
 1      § 5. The penal law is amended by adding a new section 265.65  to  read
 2  as follows:
 3  § 265.65 Criminal purchase of a semiautomatic rifle.
 4    A  person is guilty of criminal purchase of a semiautomatic rifle when
 5  he or she purchases or takes possession of  a  semiautomatic  rifle  and
 6  does not possess a license to purchase or take possession of a semiauto-
 7  matic  rifle  as  provided  in subdivision two of section 400.00 of this
 8  chapter.
 9    Criminal purchase of a semiautomatic rifle is a class A misdemeanor for
10  the first offense and a class E felony for subsequent offenses.
11      § 6. The penal law is amended by adding a new section 265.66  to  read
12  as follows:
13  § 265.66 Criminal sale of a semiautomatic rifle.
14    A  person  is  guilty  of  criminal sale of a semiautomatic rifle when,
15  knowing or having reason to know it is a semiautomatic rifle, he or  she
16  sells,  exchanges, gives or disposes of a semiautomatic rifle to another
17  person and such other person does not possess a license to  purchase  or
18  take  possession of a semiautomatic rifle as provided in subdivision two
19  of section 400.00 of this chapter.
20    Criminal sale of a semiautomatic rifle is a class E felony.
21      § 7. Subdivision 10 of section 400.00 of the penal law is  amended  by
22  adding a new paragraph (c) to read as follows:
23    (c)  A license to purchase or take possession of a semiautomatic rifle
24  as defined in subdivision two of this section shall  be  recertified  to
25  the applicable licensing officer every five years following the issuance
26  of  such  license.  Failure to renew such a license shall be a violation
27  punishable by a fine not to exceed two hundred fifty dollars,  and  such
28  failure  to  renew  shall  be  considered  by the licensing officer when
29  reviewing future license applications by the license holder pursuant  to
30  this chapter.
31      § 8.  This  act shall take effect on the ninetieth day after it shall
32  have become a law and shall apply only  to  purchases  or  transfers  of
33  ownership made on or after such effective date.
```