UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MICHAEL MCGREGOR, ZACHARY GIAMBALVO,
PAUL FELICE, MATTHEW OLIVIERI, EDWARD
NEWMAN, and DARK STORM INDUSTRIES, LLC,

                           Plaintiffs,                    23 Civ. 1130 (GRB) (ARL)

      -against-

SUFFOLK COUNTY, New York,
Police Commissioner RODNEY HARRISON,
in his Official Capacity, and Acting Superintendent
STEVEN NIGRELLI, in his Official Capacity,

                           Defendants.
------------------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**info@bellantoni-law.com**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ......................................................................................... i

PRELIMINARY STATEMENT ................................................................................. 1

CONSTITUTIONAL AND LEGAL FRAMWORK ................................................. 1

I. The Second Amendment ......................................................................................... 1

II. NICS Check Requirement for Every Purchase in New York - Rifle, Shotgun, or Handgun ..... 4

III. The Rifle Bill - Senate Bill 9458 ........................................................................ 4

IV. Criminal Penalties Under the Rifle Bill - Penal Law §§ 265.65 and 265.66 ........................... 6

V. The Rifle Bill is Inconsistent with the Plain Text of the Second Amendment .......................... 7

VI. SUFFOLK COUNTY LICENSING BUREAU POLICIES AND PROCEDURES ................. 7

ARGUMENT ................................................................................................................ 8

I. PLAINTIFFS HAVE ARTICLE III STANDING .................................................. 9

    A. Plaintiffs McGregor, Giambalvo, Felice, and Olivieri are Suffering an 'Invasion of a Legally Protected Interest' ............................................................ 9

    B. Giambalvo and Olivieri are Suffering an 'Invasion of a Legally Protected Interest' ................. 10

    C. Edward Newman and DSI Are Suffering 'Invasion of a Legally Protected Interest' ................. 10

    D. Causal Connection and Redressability .......................................................... 12

II. PLAINTIFFS' SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS ............. 12

    A. The 'Plain Text' Covers Plaintiffs' Conduct and Is 'Presumptively Protected' ..... 13

    B. Defendants Alone Have the Burden of Proof .................................................. 13

    C. The Rifle Bill is a Contemporary Regulation, With No Historical Analogue ........ 14

    D. SCPD Lengthy Licensing Delays .................................................................. 14

III. PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE HARM ..................... 15

**TABLE OF CONTENTS**

**Page(s)**

IV. AN INJUNCTION IS IN THE PUBLIC INTEREST ............................................................ 18

V. BALANCING EQUITIES IS IMPROPER FOR SECOND AMENDMENT
  CHALLENGES ............................................................................................................ 19

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. State,*
   50 Tenn. 165 (1871) ............................................................................................. 11, 12

*Arizona Dream Act Coalition,*
   757 F.3d 1053 (9th Cir. 2014) ..................................................................................... 19

*Babbitt v. Farm Workers,*
   442 U.S. 289 (1979) ...................................................................................................... 17

*Bach v. Pataki,*
   289 F.Supp.2d 217 (2003) ............................................................................................. 5

*Bach v. Pataki,*
   408 F.3d 75 (2d Cir.2005) ............................................................................................ 10

*Baur v. Veneman,*
   352 F.3d 625 (2d Cir. 2003) ........................................................................................... 9

*Brenntag Int'l Chem., Inc. v. Bank of India,*
   175 F.3d 245 (2d Cir. 1999) ......................................................................................... 15

*Bronx Household of Faith v. Bd. of Educ.,*
   331 F.3d 342 (2d Cir. 2003) ......................................................................................... 16

*Brookman v. Dahaher,*
   234 A.D.2d 615 (3d Dept. 1996) .................................................................................... 6

*Burt v. Rumsfeld,*
   322 F. Supp. 2d 189 (D. Conn. 2004) ............................................................................ 9

*Caetano v. Massachusetts,*
   577 U.S. 411 (2016) .................................................................................................. 3, 13

*Caetano v. Massachusetts,*
   577 U.S. __ (2016) ......................................................................................................... 2

*Connecticut Citizens Def. League, Inc. v. Lamont,*
   465 F. Supp. 3d 56 (D. Conn. 2020).............................................................................. 16

*Connecticut Dep't of Envtl. Prot. v. O.S.H.A.,*
   356 F.3d 226 (2d Cir. 2004) ......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Connecticut State Police Union v. Rovella,*
  494 F. Supp. 3d 210 (D. Conn. 2020)........................................................................ 8

*Craig v. Boren,*
  429 U.S. 190 (1976) ................................................................................................. 11

*Crawford v. Washington,*
  541 U.S. 36, 124 S.Ct. 1354 (2004) ......................................................................... 14

*D.C. v. Heller,*
  544 U.S. 570 (2008) .................................................................................................. 3

*Dark Storm Indus. LLC v. Cuomo,*
  471 F. Supp. 3d 482 (N.D.N.Y. 2020)...................................................................... 11

*Davis v. Federal Election Comm'n,*
  554 U.S. 724 (2008) .................................................................................................. 9

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ....................................................................................... 2, 3, 5, 6

*Doninger v. Niehoff,*
  527 F.3d 41 (2d Cir.  2008) ...................................................................................... 16

*Drummond v. Twp.,*
  361 F. Supp. 3d 466 (W.D. Pa.) ............................................................................... 11

*Duncan v. Bonta,*
  265 F.Supp.3d 1106 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018) ...... 16

*Elrod v. Burns,*
  427 U.S. 347 (1976) .................................................................................................. 16

*Espinoza v. Montana Dept. of Revenue,*
  591 U.S. ——, 140 S.Ct. 2246 (2020) ....................................................................... 7

*Ezell v. City of Chicago,*
  651 F.3d 684 (7th Cir. 2011) .............................................................................. 11, 16

*Finley v. Nicandri,*
  272 A.D.2d 831 (3d Dept. 2000) ............................................................................ 5, 6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Forty-Second St. Co. v. Koch*,
   613 F. Supp. 1416 (S.D.N.Y. 1985) ...................................................................... 11

*Friedman v. City of Highland Park, Ill.*,
   577 U.S. 1039 (2015) ............................................................................................ 3

*Gamble v. United States*,
   587 U.S. ——, 139 S.Ct. 1960, 204 L.Ed.2d 322 (2019)....................................... 7

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) ............................................................................................ 12

*Grace v. District of Columbia*,
   187 F. Supp. 3d 124 (DDC 2016)........................................................................ 16

*Hedges v. Obama*,
   724 F.3d 170 (2d Cir. 2013) ......................................................................... 18, 19

*Heller v. D.C.*,
   670 F.3d 1244 (D.C. Cir. 2011)............................................................................ 7

*Hobby Lobby Stores, Inc. v. Sebelius*,
   723 F.3d 1114 (10th Cir. 2013) .......................................................................... 19

*J.S.R. by & through J.S.G. v. Sessions*,
   330 F. Supp. 3d 731 (D. Conn. 2018)................................................................. 19

*Jolly v. Coughlin*,
   76 F.3d 468 (2d Cir. 1996) .................................................................................. 15

*Juzumas v. Nassau Cnty., New York*,
   33 F.4th 681 (2d Cir. 2022) .................................................................................. 5

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................... 9, 15, 17

*McDonald v. Chicago*,
   561 U.S. 742 (2010) .....................................................................................Passim

*Minervini v. Kelly*,
   22 A.D.3d 238 (1st Dept. 2005) ............................................................................ 5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Moore v. Madigan,*
  702 F.3d 933 (7th Cir. 2012) (reversing ................................................ 1

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE,*
  310 F. Supp. 3d 1133 (S.D. Cal. 2018) ................................................ 19

*Nevada Comm'n on Ethics v. Carrigan,*
  564 U.S. 117 (2011) ............................................................................ 14

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  142 S. Ct. 2111 (2022) .............................................................. 2, 4, 5, 6

*O'Malley v. City of Syracuse,*
  813 F. Supp. 133 (N.D.N.Y. 1993) ..................................................... 16

*Pacicca v. Allesandro,*
  19 A.D.3d 500 (2d Dept. 2005) ............................................................. 5

*Parker v. D.C.,*
  478 F.3d 370 (D.C. Cir. 2007) ............................................................. 16

*Paulsen v. County of Nassau,*
  925 F.2d 65 (2d Cir.1991) ................................................................... 16

*Peterson v. Kavanagh,*
  21 A.D.3d 617 (3d Dept. 2005) ............................................................. 5

*Picard v. Magliano,*
  42 F.4th 89 (2d Cir. 2022) ................................................................... 18

*Pierce v. Soc'y of Sisters,*
  268 U.S. 510 (1925) ............................................................................ 11

*Statharos v. New York City Taxi & Limousine Comm'n,*
  198 F.3d 317 (2d Cir. 1999) ................................................................ 15

*Steffel v. Thompson,*
  415 U.S. 452 (1974) ............................................................................ 17

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ............................................................................ 17

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Teixeira v. Cnty. of Alameda*,
    873 F.3d 670 (9th Cir. 2017) ............................................................................ 11

*Trump v. Deutsche Bank AG*,
    943 F.3d 627 (2d Cir. 2019) ............................................................................... 9

*U.S. S.E.C. v. Citigroup Global Mkts. Inc.*,
    673 F. 3d 158 (2d Cir. 2012) ........................................................................... 19

*United States v. Cruikshank*,
    92 U.S. 542 (1876) ............................................................................................. 2

*United States v. Decastro*,
    682 F.3d 160 (2d Cir. 2012) ...................................................................... 10, 16

*Valenzuela Arias v. Decker*,
    2020 WL 1847986 (S.D.N.Y. Apr. 10, 2020) .................................................. 15

*Virginia v. Moore*,
    553 U.S. 164 (2008) ......................................................................................... 14

*W. Virginia State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943) ........................................................................................... 4

*Waskiewicz v. New York City Police Dep't*,
    211 A.D.2d 603 (1st Dept. 1995) ....................................................................... 6

*Watson v. Stone*,
    148 Fla. 516, 4 So. 2d 700 (1941) .................................................................... 14

*We The Patriots USA, Inc. v. Hochul*,
    17 F.4th 266 (2d Cir.) ...................................................................................... 12

*Wisdom Import Sales Co. v. Labatt Brewing Co.*,
    339 F.3d 101 (2d Cir. 2003) ............................................................................ 15

*Wrenn v. D.C.*,
    864 F.3d 650 (D.C. Cir. 2017) ........................................................................... 1

**Rules**

Fed. R. Civ. P. 65 ............................................................................................... 1, 8

v

## PRELIMINARY STATEMENT

For the first time in the history of New York State, no individual may exercise the right to purchase, take possession of, or transfer a rifle in common use throughout this Nation until they seek and obtain permission from the government through a discretionary "may issue" license. And for individuals, like Plaintiffs, who reside within the jurisdiction of the Suffolk County Police Department (SCPD), their ability to exercise this fundamental right is outright banned because there is no process available to obtain such a license.

Even if SCPD created a process, no license could readily be obtained because licensing through SCPD, as with handguns, would take *2-3 years*.

Pursuant to Fed. R. Civ. P. 65, Plaintiffs seek an Order preliminary and permanently[1] enjoining Suffolk County Police Commissioner Rodney Harrison and Acting Superintendent of the New York State Police Steven Nigrelli, all successors, officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with them who receive actual notice thereof from enforcing Senate Bill 9458.

## CONSTITUTIONAL AND LEGAL FRAMWORK

### I. The Second Amendment

The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." The Second Amendment is fully applicable to the states through the Fourteenth Amendment.  See, *McDonald v. Chicago*, 561 U.S. 742 (2010).

---

[1] See, *Wrenn v. D.C.*, 864 F.3d 650, 667 (D.C. Cir. 2017) (granting permanent injunction on appeal of the lower court's denial of a preliminary injunction because the regulation ("good cause" requirement) was categorically barred by the Second Amendment such that remanding to the district court would "be wasting judicial resources.") citing, *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) (reversing denials of preliminary injunctions and remanding with instructions to enter declarations of unconstitutionality and permanent injunctions).

The rights protected by the Second Amendment – the right to possess and carry weapons

- are "pre-existing" and "individual rights". They are not "granted" by the government.

> "Putting all of these textual elements together, we find that they **guarantee the individual right to possess and carry weapons in case of confrontation**. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the **Second Amendment, like the First and Fourth Amendments, codified a pre-existing right**. The **very text** of the Second Amendment **implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed**." As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1876), "[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ....

*District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis added).

Plaintiffs' right to possess and carry weapons for self-defense is presumptively guaranteed.

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126, 2135 (2022) ("In keeping

with *Heller*, we <u>hold</u> that when the Second Amendment's plain text covers an individual's conduct,

the Constitution presumptively protects that conduct."); see also, *Caetano v. Massachusetts,* 577

U.S. __ (2016) (weapons in common use for self-defense are protected within the scope of the

Second Amendment).

Under the *Bruen* test:

> "When the regulated conduct falls within the plain text of the Second Amendment, the Constitution ***presumptively protects*** that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.
>
> Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, at 2126 (emphasis added).

Semiautomatic rifles are weapons in common use for self-defense in this country and, as

such, are protected within the scope of the Second Amendment, which protects all weapons

typically possessed for lawful purposes. *D.C. v. Heller*, 544 U.S. 570, 625 (2008) (handguns); *Caetano v. Massachusetts*, 577 U.S. 411, 412 (2016) (stun guns); *Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) (Thomas, J. on denial of cert) ("The overwhelming majority of citizens who own and use such rifles do so for lawful purposes, including self-defense and target shooting. Under our precedents, that is all that is needed for citizens to have a right under the Second Amendment to keep such weapons.") (cleaned up) citing, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767-768 (2010); *Heller*, at 628–629.

Plaintiffs' conduct – purchasing, taking possession of, giving, exchanging, and selling semiautomatic rifles – falls within the plain text of the Second Amendment, and is presumptively protected.

Defendants alone have the burden of justifying the constitutionality of Senate Bill 9458 by demonstrating the regulations are consistent with this Nation's historical traditions of firearm regulation.

But Defendants will find no such tradition. It is repugnant to the Second Amendment to require the People to seek permission from the government, by way of a discretionary license, to simply engage in the conduct regulated by the Rifle Bill.  Requiring a license to purchase, take possession of give, sell, and/or exchange a weapon in common use, and requiring individuals to obtain a purchase ticket before being able to take possession of a lawfully purchased rifle[2] are *wildly inconsistent* with this Nation's historical tradition of firearm regulation.

Long guns have been freely owned, made, purchased, possessed, exchanged, and carried since the mid-1600s.[3] Had it been our Nation's history and tradition to require the People to seek

---

[2] The Rifle Bill also subjects all rifle owners to – upon demand – being stopped and required to display their license to law enforcement under Penal Law § 400.00(8) simply because they are engaging in conduct protected by the Second and Fourteenth Amendments.
[3] https://www.guns.com/news/2017/07/01/guns-of-the-greatest-revolution-ever

and obtain permission from the government to exercise a preexisting right, the Amendment's mandate prohibiting any level of infringement would have been in vain.

Of course, there was no such tradition. Long guns were not licensed in the Founding Era – nor were they licensed in New York until 5 months ago. It was "[o]nly after the ratification of the Second Amendment in 1791" that firearm regulations began to "proliferate" and, even then, the attack was on the public-carriage of handguns. *Bruen*, at 2145. Regulations that imbue unfettered discretion in a government official – like the Rifle Bill – were the very motivation behind the Second Amendment.

> "If there be any fixed stars in our constitutional constellation, it is that no official high or petty, shall dictate whether we can exercise our fundamental constitutional rights."

Reply Brief for Petitioners, *New York State Rifle & Pistol Assn. v. Bruen*, 2021 WL 943564 citing, *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943).

## II.  NICS Check Requirement for Every Purchase in New York - Rifle, Shotgun, or Handgun

Under New York State law, every sale, purchase, and disposal of a handgun, rifle, or shotgun[4] must be conducted through a Federal Firearms Licensee (FFL) and may only proceed after the FFL conducts a background check through the National Instant Criminal Background Check System (NICS) and receives a "Proceed" response. NYS General Business Law § 898.[5, 6]

## III. The Rifle Bill - Senate Bill 9458

The Rifle Bill imposes a discretionary licensing requirement on ordinary people, with corresponding criminal penalties, including felony arrest, incarceration, permanent loss of firearm

---

[4] Except those conducted "between members of an immediate family", meaning "spouses, domestic partners, children and step-children." NYS GBL § 898.

[5] https://www.fbi.gov/how-we-can-help-you/need-an-fbi-service-or-more-information/nics/about-nics

[6] NICS contains information on individuals who are disqualified or otherwise ineligible to legally receive or possess firearms for reasons including prohibiting convictions and involuntary commitments to a mental institution, drawing from federal and state databases. https://www.fbi.gov/how-we-can-help-you/need-an-fbi-service-or-more-information/nics/about-nics

rights, and other criminal and civil penalties for engaging in presumptively protected conduct. [See, Exhibit 1 to the Declaration of Amy L. Bellantoni].

The Bill subjugates semiautomatic rifles to the same 'may issue' discretionary licensing scheme New York has unconstitutionally enforced on handguns since 1911, "vest[ing] broad discretion in licensing officers" [*Finley v. Nicandri*, 272 A.D.2d 831, 832 (3d Dept. 2000) (handguns)] to issue, suspend, revoke, and refuse to renew the ability to exercise the Right (the "Scheme")[7] if, at any time, a licensee becomes "ineligible to obtain a license" for any reason. See, *Juzumas v. Nassau Cnty., New York*, 33 F.4th 681, 687 (2d Cir. 2022); Penal Law § 400.00(11). A licensee is not entitled to a formal hearing before revocation. *Pacicca v. Allesandro*, 19 A.D.3d 500, 501 (2d Dept. 2005).  Subjective criteria are utilized to decide who can and cannot exercise presumptively protected rights by deciding what constitutes the "character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others."[8] Even then, the license "may issue" – or it may not.  Semiautomatic rifles – like handguns – have been demoted from a right to a privilege. *Minervini v. Kelly*, 22 A.D.3d 238, 239 (1st Dept. 2005) (handguns).

But the Supreme Court made clear that the "very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Bruen*, at 2129 quoting, *Heller*, 554 U.S. at 634. "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." *Ibid.*

---

[7] The idea expressed in *Peterson v. Kavanagh*, 21 A.D.3d 617, 617–18 (3d Dept. 2005) "reject[ing] petitioner's argument that the Second Amendment confers an individual right on him to keep and bear arms. Absent evidence that possession of the pistol bears some reasonable relationship to the preservation or efficiency of a well-regulated militia, no individual right to possess it is conferred" (citing *Bach v. Pataki*, 289 F.Supp.2d 217, 224–226 (2003) was put to rest by the Supreme Court in *Heller*, at 570.
[8] Penal Law § 400.00(1)(b).

The Rifle Bill traps an entire class of commonly used rifles in a scheme built on interest-balancing - *thrice rejected* by the Supreme Court[9] - where the government's desire to 'protect the public' always ends up outweighing Second Amendment rights. See, e.g., *Finley v. Nicandri*, 272 A.D.2d 831, 832, 708 N.Y.S.2d 190, 191 (2000) (citing state's substantial, legitimate interest and grave responsibility, to ensure the safety of the general public from individuals who, by their conduct, have shown themselves to be "lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument."); *Waskiewicz v. New York City Police Dep't*, 211 A.D.2d 603, 604 (1st Dept. 1995) (license revoked based on arrest, no resulting conviction).

Under the Scheme, a subjective belief that a licensee "exercise[d] [] poor judgment in the handling of a weapon is a sufficient ground for revocation" of a license. *Brookman v. Dahaher*, 234 A.D.2d 615 (3d Dept. 1996) (upholding revocation because licensee "exhibited disregard for the proper use of a handgun" by wearing his .38 caliber pistol holstered on his person "in plain view of adults and children in his residential neighborhood" while performing yardwork "in clear violation of the hunting and target practice restrictions on his permit.").[10]

## IV.  Criminal Penalties Under the Rifle Bill - Penal Law §§ 265.65 and 265.66

The Rifle Bill imposes criminal penalties for constitutionally protected conduct for taking possession of, giving, or receiving a semiautomatic rifle without a license.

A person is guilty of criminal purchase of a semiautomatic rifle when he purchases or takes possession of a semiautomatic rifle and does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter. Criminal

---

[9] See, *Heller*, at 634–35; *McDonald*, at 785–86; and *Bruen*, at 2131.
[10] Prohibiting open carry would never have been regarded as a 'tradition' during the relevant historical time-period set forth in *Heller* and *Bruen*.

purchase of a semiautomatic rifle is a class A misdemeanor for the first offense and a class E felony for subsequent offenses. **Penal Law § 265.65.**

A person is guilty of criminal sale of a semiautomatic rifle when, knowing or having reason to know it is a semiautomatic rifle, he sells, exchanges, gives or disposes of a semiautomatic rifle to another person and such other person does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter. Criminal sale of a semiautomatic rifle is a class E felony. **Penal Law § 265.66.**

The Rifle Bill also requires every licensee to seek and obtain permission before being able to purchase, sell or transfer a semiautomatic rifle, requires every semiautomatic rifle to be registered on the license, requires the purchaser to obtain permission before being able to add or delete the rifle from the license. **Penal Law § 400.00(9).**[11]

## V.  The Rifle Bill is Inconsistent with the Plain Text of the Second Amendment

Because "not all history is created equal", "to the extent later history contradicts what the text says, the text controls…post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen*, at 2137 (cleaned up).[12] "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, at 634–635. Historical evidence that long predates or postdates 1791 may not illuminate the scope of the right.[13]

The Rifle Bill is a contemporary control measure inconsistent with the plain text of the Second Amendment and this Nation's historical traditions, warranting an injunction.

---

[11] "***If granted***, a record of the amendment describing the weapons involved shall be filed by the licensing officer in the executive department, division of state police, Albany." Like children, licensees must seek and obtain permission.
[12] Quoting, *Gamble v. United States*, 587 U.S. ——, ——, 139 S.Ct. 1960, 1987, 204 L.Ed.2d 322 (2019) (THOMAS, J., concurring); see also Letter from J. Madison to N. Trist (Dec. 1831), in 9 Writings of James Madison 477 (G. Hunt ed. 1910); *Heller v. D.C.*, 670 F.3d 1244, 1274, n. 6 (D.C. Cir. 2011) (Kavanaugh, J., dissenting); *Espinoza v. Montana Dept. of Revenue*, 591 U.S. ——, ——, 140 S.Ct. 2246, 2258–2259 (2020).
[13] *Bruen*, at 2136.

## VI.  SUFFOLK COUNTY LICENSING BUREAU POLICIES AND PROCEDURES

No purchase of a semiautomatic rifle can occur without having first applied for and obtained a license specific to purchasing and taking possession of semiautomatic rifles. Penal Law § 400.00(2).[14]

SCPD has no process for an individual to apply for a Rifle License or for one to be issued.

Plaintiffs and all other similarly situated people in Suffolk County are banned from engaging in conduct presumptively protected by the Second Amendment[15] - purchasing, giving, selling, and taking possession of semiautomatic rifles.[16]

Suffolk County residents with a present plan and intention to purchase a semiautomatic rifle cannot because SCPD will not issue a Rifle License. FFLs who have customers and potential customers attempting to purchase and take possession of semiautomatic rifles, like Edward Newman and Dark Storm Industries LLC, cannot sell or transfer semiautomatic rifles to legally eligible, but unlicensed, individuals.

## ARGUMENT

A court may issue a preliminary injunction only on notice to the adverse party. FRCP 65(a)(1). To obtain a preliminary injunction, a movant must show irreparable harm and meet either of two standards: (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in the movant's favor." *Connecticut State Police Union v. Rovella*, 494 F. Supp. 3d 210,

---

[14] A handgun license does not comply with the Rifle Bill. Penal Law § 400.00(2) identifies 3 distinct licenses: (1) gunsmith/dealer in firearms; (2) license to purchase or take possession of a semiautomatic rifle; and (3) pistol/revolver. Penal Law § 400.00(2). Possession of a valid New York State handgun license is not a defense to arrest and prosecution for an offense under Penal Law §§ 265.65 and 265.66. Just as a handgun license does not authorize an individual to become a "gunsmith/dealer in firearms", it also does not authorize one to "purchase or take possession of a semiautomatic rifle."

[15] *Bruen*, at 2126.

[16] Again, possession of a handgun license is not a defense to arrest and prosecution for an offense under Penal Law §§ 265.65 and 265.66; a separate Rifle License is required. See, Penal Law § 400.00(2).

218 (D. Conn. 2020) quoting, *Trump v. Deutsche Bank AG*, 943 F.3d 627, 635 (2d Cir. 2019), rev'd on other grounds, 140 S.Ct. 2019 (2020). Only one plaintiff need have standing to seek each form of relief requested in the complaint. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008).

## I. PLAINTIFFS HAVE ARTICLE III STANDING

The standing inquiry focuses on whether the plaintiff is the proper party to bring suit.[17] To establish Article III standing, a plaintiff first "must have suffered and injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.*

### A. Plaintiffs McGregor, Giambalvo, Felice, and Olivieri are Suffering an 'Invasion of a Legally Protected Interest'

Plaintiffs McGregor, Giambalvo, Felice, and Olivieri are all eligible to possess and purchase firearms[18] under federal and state law. [McGregor ¶¶ 1-4; Giambalvo ¶¶ 1-3; Felice ¶¶ 1-3; Olivieri ¶¶ 1-3]. Each has the intention and imminent plan to purchase one or more semiautomatic rifles. [McGregor ¶6; Giambalvo ¶ 14; Felice ¶ 7; Olivieri ¶ 8].

Gun stores will not sell a semiautomatic rifle to individuals who do not hold a Rifle License. Dr. McGregor attempted to purchase a Ruger 10/22 semiautomatic rifle from a federally licensed firearm dealer in Westchester County but could without a Rifle License. [McGregor ¶¶ 6-

---

[17] *Burt v. Rumsfeld*, 322 F. Supp. 2d 189, 196 (D. Conn. 2004) citing, *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).
[18] The term "firearm" as used herein encompasses handguns, rifles, and shotguns.

7]. A handgun license will not suffice. [McGregor ¶¶ 6-7]. LI Ammo and Camp-Site in Suffolk County require a purchaser specifically have a "Rifle License." [*Id.* ¶¶ 9-10; 15, and recordings].

Dr. McGregor contacted the SCPD Licensing Bureau to obtain a Rifle License but was informed that SCPD will not issue Rifle Licenses. [McGregor ¶¶ 11-12, 16, and recordings]. Plaintiffs cannot obtain a Rifle License because SCPD has no such process. [McGregor ¶ 16, and recordings; Olivieri ¶ 10; Giambalvo ¶ 16; Felice ¶6].

Plaintiffs have made a "substantial showing" that any attempt to comply with the Rifle Bill would be futile. *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) see also, *Bach v. Pataki*, 408 F.3d 75, 82–83 (2d Cir.2005) (holding that plaintiff's challenge to New York's gun licensing laws was justiciable despite his failure to apply for a license because he was statutorily ineligible; submitting an application would have been a "futile gesture").

**B.  Giambalvo and Olivieri are Suffering an 'Invasion of a Legally Protected Interest'**

Giambalvo and Olivieri face imminent and actual harm for engaging in conduct that is criminalized by a regulation that cannot pass the *Bruen* test. Mr. Olivieri, a Marine Corps veteran, enjoys a pastime of going to the gun range with his father. [Olivieri ¶¶ 4-7]. Because Mr. Olivieri does not own a semiautomatic rifle, he shares his father's. [Olivieri ¶¶ 4-7]. Similarly, for years Mr. Giambalvo has enjoyed going target shooting with his father, where the two would share one another's semiautomatic rifles. [Giambalvo ¶¶ 4-7]. But the Rifle Bill makes their conduct a crime. [Olivieri ¶¶ 6-7; Giambalvo ¶¶4-7].

**C.  Edward Newman and DSI Are Suffering 'Invasion of a Legally Protected Interest'**

Edward Newman and Dark Storm Industries LLC (DSI) also have standing - directly and derivatively. As a seller and the largest manufacturer of semiautomatic rifles in New York State[19],

---

[19] Newman Declaration at ¶¶3-5.

Mr. Newman and DSI have derivative standing to assert the subsidiary right to acquire arms on behalf of their actual and potential customers. See, *Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 493 (N.D.N.Y. 2020) (finding Dark Storm Industries LLC, "as the ... operator of a gun store, ... has derivative standing to assert the subsidiary right to acquire arms on behalf of [its actual and] potential customers.") quoting, *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677–78 (9th Cir. 2017) ("As with purchasing ammunition and maintaining proficiency in firearms use, the core Second Amendment right to keep and bear arms for self-defense "wouldn't mean much" without the ability to acquire arms); citing, *Drummond v. Twp.*, 361 F. Supp. 3d 466, 480 (W.D. Pa.) ("Plaintiff[s] ..., as would-be operators of a commercial shooting range, have standing to sue on behalf of their potential customers."), aff'd in part, vacated in part on other grounds, remanded sub nom. *Drummond v. Twp. of Robinson*, 784 F. App'x 82 (3d Cir. 2019); cf. *Forty-Second St. Co. v. Koch*, 613 F. Supp. 1416, 1422 (S.D.N.Y. 1985) (rejecting defendants' argument that movie theater companies did not have standing to assert the rights of their customers); see also, *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (Action Target, as a supplier of firing-range facilities, is harmed by the firing-range ban and is also permitted to act as an advocate of the rights of third parties who seek access to its services); *Craig v. Boren*, 429 U.S. 190, 195 (1976) (allowing beer vendor to challenge alcohol regulation based on its patrons' equal-protection rights); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 536 (1925) (allowing private schools to assert parents' rights to direct the education of their children and citing "other cases where injunctions have issued to protect business enterprises against interference with the freedom of patrons or customers"); *Andrews v. State*, 50 Tenn. 165, 178 (1871) ("[t]he right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair.").

Upon passage of the Rifle Bill and for months thereafter, DSI was immediately prohibited from selling and/or transferring any semiautomatic rifles to members of the general public who did not hold a semiautomatic rifle license issued under Penal Law § 400.00(2) due to the threat of criminal penalties as enforced by SCPD and New York State Police. [See, Declaration of Edward Newman]. Likewise, DSI customers and potential customers were immediately unable to purchase, take possession of, and receive semiautomatic rifles without a Rifle License issued pursuant to § 400.00(2) due to the threat of criminal penalties as enforced by SCPD and New York State Police. [*Id.*]. Only recently has DSI been able to resume, to a limited extent, its sale of semiautomatic rifles, but DSI remains prohibited from selling and transferring semiautomatic rifles to its unlicensed customers and potential customers [Newman ¶10], including Suffolk County residents because SCPD will not issue Rifle Licenses. Conversely, Suffolk County residents cannot purchase or receive semiautomatic rifles from DSI (or any other FFL). [Newman ¶ 11].

### D. Causal Connection and Redressability

There is sufficient causal connection between the invasion of Plaintiffs' legally protected interests and the named Defendants, whether by lack of - or substantially delayed - access to a Rifle License, or the enforcement of the criminal penalties by Defendants for taking possession of, giving, exchanging, or selling one's lawfully owned semiautomatic rifle to an unlicensed person. Enjoining Defendants' enforcement of the Rifle Bill will redress Plaintiffs' harms.

## II. PLAINTIFFS' SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

The burdens at the preliminary injunction stage track the burdens at trial. *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir.), opinion clarified, 17 F.4th 368 (2d Cir. 2021), and cert. denied sub nom. *Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022) quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006).

The *Bruen* Court reiterated the text, history, and tradition standard of reviewing Second Amendment challenges, consistent with *Heller, McDonald,* and *Caetano.* Flatly rejecting the 'interest balancing' 'intermediate scrutiny' test created by the Second Circuit (and others), *Bruen* laid out a clear path to determining Second Amendment challenges. "When the Second Amendment's plain text covers an individual's conduct, the Constitution ***presumptively protects*** that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, at 2126 (emphasis added) (citation omitted).

### A.    The 'Plain Text' Covers Plaintiffs' Conduct and Is 'Presumptively Protected'

The plain text of the Second Amendment protects the 'guaranteed'[20] individual right to keep and possess all weapons in common use.[21] Plaintiffs' conduct is 'presumptively protected.'[22]

### B.    Defendants Alone Have the Burden of Proof

Because the plain text of the Second Amendment presumptively protects Plaintiffs' conduct, Defendants must now prove that the challenged regulations are "consistent with the Nation's historical traditions." *Bruen*, at 2126. ***Only then*** may this Court conclude that Plaintiffs' conduct falls outside the Second Amendment's 'unqualified command.' *Bruen*, at 2126-2127.[23] Defendants cannot meet their burden.

---

[20] *Heller*, at 592 ("Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation.").
[21] *Caetano v. Massachusetts*, 577 U.S. 411 (2016) (per curiam) (stun guns).
[22] *Bruen*, at 2126.
[23] Judges do not bear the burden of becoming legal history researchers. As with anything else that the government must prove, the government must present persuasive legal history to the court. "Courts are thus entitled to decide a case based on the historical record compiled by the parties." *Bruen*, at 2130 n.5. "[C]ourts should not 'uphold every modern law that remotely resembles a historical analogue,' because doing so 'risk[s] endorsing outliers that our ancestors would never have accepted.'" *Bruen*, at 2133.

### C.       The Rifle Bill is a Contemporary Regulation, With No Historical Analogue

To the extent later history contradicts what the text says, the text controls. *Bruen*, at 2137.

The Rifle Bill is a contemporary control measure with no historical analogue – nationally or instate. No licensing or registration requirements for long guns existed in the Founding Era. In fact, the closest historic analogue to present bans on semiautomatic rifles is an 1893 Florida statute requiring owners of Winchesters and other repeating rifles to apply for a license from the board of county commissioners.[24] Far from a National 'tradition,' Florida's 1893 outlier regulation also falls outside of the Founding Era. The scope of the protections provided by the Second Amendment is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791. *Bruen*, at 2137–38 citing, *Crawford v. Washington*, 541 U.S. 36, 42–50, 124 S.Ct. 1354 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008) (Fourth Amendment); *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment).

### D.  SCPD Lengthy Licensing Delays

Should SCPD create a path to obtaining a Rifle License, SCPD's practice and procedure employs a licensing process that takes ***2-3 years*** [McGregor ¶ 19; Bellantoni Dec. at Ex. 2] – barring Plaintiffs from exercising protected conduct for an unconstitutionally lengthy period of time. While *Bruen* nodded its approval to 'shall-issue' licensing jurisdictions[25] the Court denounced may-issue,  discretionary licensing schemes, like New York's. *Bruen*, at n. 9.

---

[24] *The Legal History of Bans on Firearms and Bowie Knives Before 1900*, Kopel, Dave, The Volokh Conspiracy, November 20, 2022, p. 6.  "In sum, the 19th century history of firearms bans is not helpful for modern litigants seeking to justify prohibitions on semiautomatic rifles. The only pre-1900 statutory precedent for such a law is Florida in 1893, and it is a dubious precedent. Before that, there were three prior sales prohibitions that covered many or most handguns. One of these was held to violate the Second Amendment, and the other two are plainly unconstitutional under *Heller*."  *Id.* at p. 8. The original Act of 1893 was passed "for the purpose of disarming the negro laborers…[it] was never intended to be applied to the white population and in practice has never been so applied." *Watson v. Stone*, 148 Fla. 516, 524, 4 So. 2d 700, 703 (1941) (Buford, J., concurring specially).
[25] *Bruen*, at 2138, n. 9, 2162 (citations and internal quotation marks omitted) (approving the "narrow, objective, and definite standards guiding licensing officials" in shall-issue states over may-issue regimes that "require[e] the appraisal of facts, the exercise of judgment, and the formation of an opinion."

The *Bruen* Court invited constitutional challenges to licensing regimes "where, for example, ***lengthy wait times in processing license applications*** or exorbitant fees deny ordinary citizens their right to public carry." (emphasis added). *Bruen*, at 2138.[26]

## III. PLAINTIFFS WILL CONTINUE TO SUFFER IRREPARABLE HARM

The Second Amendment is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U.S. at 780.

Irreparable harm is certain and imminent harm for which a monetary award does not adequately compensate [*Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003)] and exists where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied [*Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)].

As detailed above, Plaintiffs continue to suffer a concrete and actual invasion of their legally protected interests as protected by the Second Amendment. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). And in the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm. *Valenzuela Arias v. Decker*, No. 20 CIV. 2802 (AT), 2020 WL 1847986, at *5 (S.D.N.Y. Apr. 10, 2020) citing, *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (no separate showing of irreparable harm is necessary); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("[I]t is the alleged violation of a constitutional right that triggers a finding of irreparable harm.").

---

[26] The continuation of 'may-issue' handgun licensing schemes, like New York's was conditional: "so long as those States employ objective licensing requirements like those used by the 43 shall-issue States." *Bruen*, 2162. New York remains a subjective and discretionary, 'may-issue' State.

"The right to keep and bear arms protects tangible and intangible interests which cannot be compensated by damages…The right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence — and psychic comfort — that comes with knowing one could protect oneself if necessary…Loss of that peace of mind…and the enjoyment of Second Amendment rights constitutes irreparable injury." *Duncan v. Bonta*, 265 F.Supp.3d 1106, 1135 citing, *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (DDC 2016); see also *Ezell v City of Chicago*, 651 F3d 684, 699 (7th Cir 2011) ("Infringements of this right cannot be compensated by damages.")

Like the First Amendment, the loss of Second Amendment 'freedoms, for even minimal periods of time, constitutes irreparable injury.' C.f., *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) citing, *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003); *Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir.1991) (temporary abridgment of the First Amendment right to free expression constitutes an irreparable injury); see also, *O'Malley v. City of Syracuse*, 813 F. Supp. 133, 140 (N.D.N.Y. 1993).

The individual Plaintiffs are suffering an injury-in-fact, as set forth in detail in Section I, supra. If the *denial* of a government-issued permit constitutes a quintessential injury-in-fact for purposes of standing[27], no avenue to obtain a license must also. Similarly, the complete deprivation of the right to purchase, sell, and possess an entire class of weapons in common use is a concrete and actual harm suffered by Plaintiffs.

---

[27] *Connecticut Citizens Def. League, Inc. v. Lamont*, 465 F. Supp. 3d 56, 66 (D. Conn. 2020), vacated on other grounds, 6 F.4th 439 (2d Cir. 2021) (finding no merit to the State's argument that a 'temporary delay' occasioned by the suspension of fingerprinting does not result in injury. "If the Governor and the Commissioner were to issue a gag order barring plaintiffs from exercising their First Amendment free speech rights for the balance of the COVID-19 crisis, plaintiffs would surely suffer injury despite the 'temporary' nature of the crisis. The same holds true for plaintiffs' exercise of their Second Amendment rights.") citing, *Parker v. D.C.*, 478 F.3d 370, 376 (D.C. Cir. 2007) (denial of registration certificate to own handgun), aff'd sub nom. *D.C. v. Heller*, 554 U.S. 570 (2008); *United States v. Decastro*, 682 F.3d 160, 167 (2d Cir. 2012) (consulting principles from other areas of constitutional law, including the First Amendment").

Mr. Giambalvo also faces imminent threat of enforcement by SCPD and NYSP for violating the criminal provisions of the Rifle Bill. By this action, Mr. Giambalvo publicly announced his intention to continue going to the Calverton gun range in Suffolk County with his friends – none of whom have Rifle Licenses, but who are all eligible under state and federal law to possess firearms – and continue to carry, take possession of, and/or shoot his friends' semiautomatic rifles, and give his friends his semiautomatic rifle to use for target shooting, knowing that neither he nor they have Rifle Licenses – historically protected conduct yet arbitrarily banned just months ago. By announcing his intention to continue engaging in such protected conduct every other weekend at Calverton, Mr. Giambalvo faces an imminent and credible risk of arrest and incarceration.

An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "substantial risk" that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). This injury must be fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable decision. *Lujan,* at 560–61.

***An actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging a law***. *Id.* citing, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (emphasis added). A plaintiff satisfies the injury-in-fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony*, 573 U.S. at 158–59 quoting, *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979).

The Second Circuit's "low threshold" showing of a credible threat of enforcement is a "forgiving" standard, and "courts are generally willing to presume that the government will

enforce the law as long as the relevant statute is recent and not moribund." *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022).

In numerous preenforcement cases where the Supreme Court has found standing on a showing that a statute indisputably proscribed the conduct at issue, it did not place the burden on the plaintiff to show an intent by the government to enforce the law against it. Rather, it presumed such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed. *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013).

In *Vermont Right to Life and Pacific Capital Bank*, the Second Circuit suggested "that a plaintiff has standing when it may legitimately fear that it will face enforcement under its reasonable interpretation of the statute and (2) the Supreme Court's recognition that a preenforcement challenge is justiciable when enforcement is a realistic danger when there is a "credible threat of prosecution," or when a plaintiff has an "actual and well-founded fear" of such enforcement….neither this Court nor the Supreme Court has required much to establish this final step in challenges to ordinary criminal or civil punitive statutes. Rather, ***we have presumed that the government will enforce the law***." *Hedges*, at 199–200.

Defendant Nigrelli has announced his intention to enforce any and all firearm laws. Shortly after the passage of the Rifle Bill, NYSP Superintendent Nigrelli has publicly thanked Governor Hochul for her "leadership on this topic…laser-like focus on ***eradicating guns***, illegal guns, and gun crimes...we appreciate that at the State Police"[28] and promised from the podium:

> "Governor, it's an easy message. I don't have to spell it out more than this. We'll have zero tolerance. ***If you violate this law, you will be arrested***. Simple as that. Because the ***New York State Troopers are standing ready to*** do our job to ***ensure ... all laws are enforced***." *Id.* (emphasis added).

---

[28] https://www.youtube.com/watch?v=gC1L2rrztQs at (36:10) (emphasis added).

## IV. AN INJUNCTION IS IN THE PUBLIC INTEREST

A preliminary injunction is "in the public interest" if the preliminary injunction would not "cause harm to the public interest." *U.S. S.E.C. v. Citigroup Global Mkts. Inc.*, 673 F. 3d 158, 163 n.1 (2d Cir. 2012).

As with irreparable injury, when a plaintiff establishes a likelihood that a policy violates the U.S. Constitution, they have also established that both the public interest and the balance of the equities favor a preliminary injunction. *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 743 (D. Conn. 2018) citing, *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1146 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), and enforcement granted in part, denied in part sub nom. *Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) quoting, *Arizona Dream Act Coalition,* 757 F.3d 1053, 1069 (9th Cir. 2014) (balance of equities favors preventing the violation of a party's constitutional rights).

The term "the People" in the Constitution "unambiguously refers to all members of the political community, not an unspecified subset. *Heller*, at 580.  Plaintiffs are "the People" for whom the Bill of Rights, including the Second Amendment, was codified. The public interest favors  the  adherence to and exercise of  all constitutionally protected rights, including the Second and Fourteenth Amendments because "it is always in the public interest to prevent the violation of a person's constitutional rights." *Duncan*, at 1136 (granting preliminary injunction of California's magazine ban statute) citing, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd sub nom., Burwell v. Hobby Lobby Stores, Inc.,* —— U.S. ——, 134 S.Ct. 2751 (2014).

## V.    BALANCING EQUITIES IS IMPROPER FOR SECOND AMENDMENT CHALLENGES

While balancing the equities is a prong of the injunctive relief consideration, it is no longer viable in the context of a Second Amendment challenge. A balancing test requires the Court to

place Plaintiffs' constitutional rights on one side of the equation and the hardship faced by the government if the injunctive relief is granted. But 'interest balancing" in the Second Amendment context has been *thrice* flatly rejected by the Supreme Court in *Heller*, *McDonald* and *Bruen*.

> "The Second Amendment does not permit - let alone require - judges to assess the costs and benefits of firearms restrictions." *Bruen*, at 2129 (quoting, *McDonald*, at 790-791); *Heller*, at 634 ("[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government— the power to decide on a case-by-case basis whether the right is really worth insisting upon.").

To be sure, the government will face *no hardship* by simply returning to the status quo that existed just months ago.

## CONCLUSION

Plaintiffs' motion should be granted in its entirety.

Dated: February 17, 2023
Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs*

By:     *Amy L. Bellantoni*
Amy L. Bellantoni (AB3061)
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com

20