UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
MICHAEL MCGREGOR, ZACHARY GIAMBALVO,
PAUL FELICE, MATTHEW OLIVIERI, EDWARD
NEWMAN, and DARK STORM INDUSTRIES, LLC,

                        Plaintiffs,

                    -against-

SUFFOLK COUNTY, New York, Police Commissioner
RODNEY HARRISON, in his Official Capacity, and
Acting Superintendent STEVEN NIGRELLI,
in his Official Capacity,

                        Defendants.
--------------------------------------------------------------------X

**Case No.: 2:23-CV-01130**

(Brown, J.)(Lindsay, M.J.)


# **DEFENDANT SUPERINTENDENT NIGRELLI'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

                        LETITIA JAMES
                        Attorney General of the
                            State of New York
                        300 Motor Parkway, Suite 230
                        Hauppauge, New York   11788
                        (631) 231-2424


PATRICIA M. HINGERTON
ROBERT E. MORELLI
    OF COUNSEL

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 2

    A.  The Rifle Law ........................................................................................................ 2

    B.  The Instant Application ........................................................................................ 4

STANDARD OF REVIEW ................................................................................................ 8

ARGUMENT

POINT I:  PLAINTIFFS GIAMBALVO, OLIVIERI, FELICE, AND MCGREGOR
            LACK STANDING TO CHALLENGE THE RIFLE LAW ............................. 9

    A.  Plaintiffs Giambalvo, Felice, and Olivieri Lack "Injury-in Fact .................... 9

    B.  Plaintiffs Have Not Demonstrated a Credible Threat of Arrest by the
        State Police ....................................................................................................... 13

    C. Plaintiffs' Alleged Injuries are Neither Fairly Traceable to the Rifle Law
        Nor the Superintendent, and are Not Redressable by the Superintendent ...... 14

POINT II:  THE SECOND AMENDMENT DOES NOT APPLY TO THE
           COMMERCIAL ACTIVITY OF PLAINTIFFS DARK STORM
           AND NEWMAN ........................................................................................... 15

POINT III:  THE RIFLE LAW IS CONSTITUTIONAL AND, THEREFORE,
           PLAINTIFFS HAVE NO CLEAR LIKELIHOOD OF SUCCESS
           ON THE MERITS OF THEIR SECOND AMENDMENT CHALLENGE .... 18

    A.  *Bruen* Holds That Shall-Issue Licensing Laws Like The Rifle Law
        Are Constitutional ............................................................................................ 18

    B.  The Rifle Law is Supported by American Legal History and Tradition ...... 20

POINT IV:  PLAINTIFFS HAVE NOT MADE A STRONG SHOWING OF
           IMMINENT AND IRREPARABLE HARM FROM THE RIFLE LAW ... 24

POINT V:  THE EQUITIES AND THE PUBLIC INTEREST FAVOR ALLOWING
         ENFORCEMENT OF THE RIFLE LAW ....................................................25

CONCLUSION  .................................................................................................26

## **TABLE OF AUTHORITIES**

**Cases**

*Able v. United States*, 44 F.3d 128 (2d Cir. 1995)..........................................................8

*Adam v. Barr*, 792 F. App'x 20 (2d Cir. 2019)..........................................................…..........13

*Bach v. Pataki*, 408 F.3d 75 (2d Cir. 2005), *overruled on other grounds*
    *by*, *McDonald v. Chicago*, 561 U.S. 742 (2010).  ...........................................…..........11

*Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016)
    *abrogated in part on other grounds by Bruen*, 142 S. Ct. 2111................…..…..…..……....16

*Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985)...............................................24

*Clapper v. Amnesty Intl. USA*, 568 U.S. 398, 416 (2013)..............................................17

*Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482 (N.D.N.Y. 2020).........................…...17

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010)...............................................…......18

*District of Columbia v. Heller*, 554 U.S. 570 (2008).......................................15, 16, 17

*Does v. Suffolk Cnty.*, 2022 U.S. App. Lexis 19094 (2d Cir. July 12, 2022)..........…..…......13

*Frey v. Bruen*, 2022 U.S. Dist. Lexis 31053
    (S.D.N.Y. Feb. 22, 2022)....................................................................12, 13

*Frey v. Nigrelli*, 2023 U.S. Dist. Lexis 42067 (S.D.N.Y. Mar. 13, 2023).................…....19, 20, 21

*Gazzola v. Hochul*, No. 22 Civ. 1134, 2022 U.S. Dist. Lexis 220168
    (N.D.N.Y. Dec. 7, 2022)............................................................................…....12, 15, 16

*Giambalvo v. Suffolk County*, 2023 U.S. Dist. Lexis
    27304 (E.D.N.Y. Feb. 14, 2023)...................2, 3, 4, 8, 9, 10, 11, 13, 14, 16, 18, 19, 20

*Hoffman v. Kraft Heinz Foods Co.*, 2023 U.S. Dist. Lexis 20929(S.D.N.Y. Feb. 7, 2023)......3, 4

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977).....................................…......11

*Jackson-Bey v. Hanslmaier*, 115 F.3d 1091 (2d Cir. 1997)...........................................…......11

*JBR, Inc. v. Keurig Green Mt., Inc.*, 618 F. App'x 31 (2d Cir. 2015).................................24

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)...............................................9, 13

*Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020)
    *abrogated in part on other grounds by Bruen*, 142 S. Ct. 2111 .....................10, 11, 14

*Maryland v. King*, 567 U.S. 1301 (2012)...............................................................25

*McDonald v. City of Chicago, 561 U.S. 742, 786 (2010)*............................................16

*New York State Rifle & Pistol Association v. Bruen,* 142 S. Ct. 2111
    (2022).............................................................................2, 10, 15, 16, 18, 19, 20, 21

*Nken v. Holder,* 556 U.S. 418 (2009)......................................................................8

*Or. Firearms Fed., Inc. v. Brown,* No. 22-cv-1815, 2022 U.S. Dist. Lexis 219391
    (D. Or. Dec. 6, 2022)....................................................................................19

*People ex. rel. Schneiderman v. Actavis PLLC,* 787 F.3d 638 (2d Cir. 2015)....................8

*Rodriguez ex rel. Rodriguez v. DeBuono,* 175 F.3d 227 (2d Cir. 1999)...........................25

*Spokeo, Inc. v. Robins,* 578 U.S. 330 (2016)........................................................9, 13

*Teixeira v. County of Alameda,* 873 F.3d 670 (9th Cir. 2017)..................................17, 18

*Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017)....................................9

*United States v. Decastro,* 682 F. 3d 160 (2d Cir. 2012),
    *cert. denied,* 568 U.S. 1092 (2013)...........................................................9, 10, 17

*United States v. Saleem,* 2023 U.S. Dist. Lexis 34566 (W.D.N.C. Mar. 2, 2023)...............20

*United States v. Salerno,* 481 U.S. 739 (1987)........................................................18

*United States v. Tilotta,* No. 19-cr-4768, 2022 U.S. Dist. Lexis 156715
    (S.D. Cal. Aug. 30, 2022)................................................................................16

*We The Patriots USA, Inc. v. Hochul,* 17 F.4th 266, 281 (2d Cir. 2022)............................8

*Williams v. King,* 56 F. Supp. 3d 308 (S.D.N.Y. 2014)..............................................11

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008)...........................................................8, 25

**Constitutional Amendments, Statutes, and Rules**

2022 N.Y. Laws ch. 371 § 2..............................................................................2, 3

2022 N.Y. Laws ch. 212 § 8..................................................................................3

42 U.S.C. § 1983...............................................................................................1

Conn. Gen. Stat. § 29.37p...................................................................................19

Fed. R. Evid. 201...............................................................................................4

Haw. Rev. Stat. § 134-1......................................................................................19

Haw. Rev. Stat. § 134-2......................................................................................19

Ill. Comp. Stat. ch. 430......................................................................................19

Mass. Gen. Laws. Ann. § 131E…………………………………………………………….……19

N.J. Stat. Ann. § 2C:58-3……………………………………………………………….……...19

N.Y. Penal Law § 265.00…………………………………………………………….…..3, 14

N.Y. Penal Law § 265.65………………………………………………………………….…...3

N.Y. Penal Law § 265.66……………………………………………………………………...3

N.Y. Penal Law § 400.00………………………………………………………..…...1, 3, 12

N.Y. Penal Law § 400.01…………………………………………………………….…...…14

U.S. Const. Amend. II………………………………………………………………………15

Wash. Rev. Code § 9.41.090…………………………………………………….…..……19

**Other Authorities**

N.Y. Div. of Crim. Just. Servs., *Frequently Asked Questions Regarding Recent Changes to New York State Firearms Laws* (Aug. 27, 2022)……………………………………..3, 4

N.Y. State Police, *Frequently Asked Questions for Firearm Dealers Regarding Recent Changes to New York Firearm Laws* (Dec. 6, 2022)………………………..………….……3

Defendant Steven Nigrelli, sued in his official capacity as Acting Superintendent of the New York State Police (the "Superintendent"), respectfully submits this memorandum of law, together with the Declaration of Assistant Attorney General Patricia M. Hingerton ("HD"), with exhibits, and the Declaration of Robert J. Spitzer, Ph.D. ("Spitzer Decl."), with exhibits, in opposition to that portion of the motion for a preliminary injunction filed by Plaintiffs Michael McGregor, Zachary Giambalvo, Paul Felice, Matthew Olivieri, Edward Newman, and Dark Storm Industries, LLC ("Dark Storm," and collectively, "Plaintiffs") that seeks to enjoin the Superintendent from enforcing New York's semiautomatic rifle licensing law.

## **PRELIMINARY STATEMENT**

Plaintiffs—four individuals, a company that sells firearms, and that company's owner— filed their Complaint on February 10, 2023 claiming violations of their Second and Fourteenth Amendment rights under 42 U.S.C. § 1983 arising from the statutory requirement under Penal Law § 400.00 that a person obtain a license to purchase or otherwise take possession of a semiautomatic rifle incident to a transfer of ownership (the "Rifle Law"), as well as Suffolk County's procedures related to the implementation of this law and licensing of such rifles.[1]   Although the Rifle Law was enacted in June 2022 and became effective in September 2022, Plaintiffs waited *months* to file this action, and then waited even longer to bring the instant application, belatedly proclaiming their entitlement to not only a temporary restraining order and preliminary injunction, but the extraordinary relief of a permanent injunction as well. *See* Memorandum of Law in Support of Plaintiffs' Application for a Preliminary Injunction ("Pl. MOL"), p. 6.

As was the case in *Giambalvo v. Suffolk County*, 2023 U.S. Dist. Lexis 27304 (E.D.N.Y. Feb. 14, 2023)—a case brought by two of the same Plaintiffs, represented by the same attorney—

---

[1] The Superintendent has no knowledge of, or control over, Suffolk County's procedures, and takes no position as to whether or not those procedures comply with state and/or federal law.

1

this Court should yet again find that none of the Plaintiffs can satisfy "the demanding requisites for preliminary relief," *id.* at \*2. First, Plaintiffs have no likelihood of success on the merits of their claims: The individual Plaintiffs lack standing to challenge the Rifle Law, and Dark Storm and its owner have no plausible claim because the Second Amendment does not apply to business organizations, or to individuals engaged in the commercial sale of firearms. Yet, even if the Court is inclined to reach the merits of the facial constitutional challenge, Plaintiffs still have no likelihood of success on their claim because the statutory provisions at issue fully comport with the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen,* 142 S. Ct. 2111 (2022), which was rendered following enactment of the Rifle Law, and the Rifle Law is supported by American legal history and tradition. Second, Plaintiffs fail to make a strong showing of imminent and irreparable harm—particularly given their unexplained delay in challenging a purportedly unconstitutional statute that was enacted months before they filed suit and sought relief—let alone any harm attributable to the statutory provisions they challenge. Third, the equities clearly weigh against interim injunctive relief and heavily in favor of New York's duty to keep weapons out of the hands of those who may use them to harm others. Plaintiffs' application, therefore, should be denied in its entirety.

## **BACKGROUND**

### A. **The Rifle Law**

The licensing requirement for semiautomatic rifles was enacted into law on June 6, 2022 (eff. Sept. 4, 2022) and was part of a comprehensive ten-bill legislative package that was aimed at closing critical gun law loopholes exposed in the tragic shootings in Buffalo and Uvalde. *See* 2022 NY Law ch. 371 § 2 (codified at, inter alia, Penal Law § 400.00(2)); https://www.governor.ny.gov/news/governor-hochul-signs-landmark-legislative-package-

2

strengthen-gun-laws-and-protect-new-yorkers. As relevant here, the law requires that "a license for a semiautomatic rifle...shall be issued to purchase or take possession of such a firearm when such transfer of ownership occurs on or after" September 4, 2022, Penal Law § 400.00(2),[2] and imposes criminal and other penalties on those who violate the statute, Penal Law §§ 265.65, 265.66. Amendments to licenses are addressed in Penal Law § 400.00(9), which provides that current licensees can add semiautomatic rifles to their licenses or delete them therefrom by applying to their local licensing official.[3] *See also* 2022 N.Y. Laws ch.212 § 8 ("This act . . . shall apply only to purchases or transfers of ownership made on or after [the] effective date" of the statute). If the application is granted, the licensing official is required to file a record of the amendment with the State Police. Penal Law § 400.00(9).

The State Police and the State Division of Criminal Justice Services have issued guidance to individuals on complying with this law, *see* N.Y. Div. of Crim. Just. Servs., *Frequently Asked Questions Regarding Recent Changes to New York State Firearms Laws* (Aug. 27, 2022) (HD, Exh. 1),[4] and as this information is not subject to reasonable dispute and found on official government websites whose accuracy cannot reasonably be questioned, the Court may take judicial notice of it. *See Hoffman v. Kraft Heinz Foods Co.*, 2023 U.S. Dist. Lexis 20929, at *6 n.1 (S.D.N.Y. Feb. 7, 2023); Fed. R. Evid. 201(b). That guidance provides, in pertinent part, that any person that lawfully possesses a semiautomatic rifle prior to September 4, 2022 is not required to

---

[2] The eligibility requirements for obtaining such a license are detailed in Penal Law § 400.00(1), which was drafted "to align with the Supreme Court's recent decision in []*Bruen*," Press Release, July 1, 2022, available at https://on.ny.gov/3BM6Hz7. Plaintiffs McGregor and Giambalvo are challenging these requirements as they relate to concealed carry handguns in *Giambalvo v. Suffolk County*, Docket No.: 2:22-cv-0478. On February 14, 2023, this Court denied plaintiffs' application for a preliminary injunction, stating that they "failed to meet the exacting standard for issuance of a preliminary injunction." 2023 U.S. Dist. Lexis 27304, at *23.

[3] The licensing official in Suffolk County is "the sheriff of that county except in the towns of Babylon, Brookhaven, Huntington, Islip and Smithtown, the commissioner of police of that county[.]" Penal Law § 265.00(10).

[4] *See also* N.Y. State Police, *Frequently Asked Questions for Firearm Dealers Regarding Recent Changes to New York Firearm Laws* (Dec. 6, 2022) (HD, Exh. 2).

3

obtain a semiautomatic rifle license in order to retain possession of it. *Id.* at Q20. Instead, such a license is only required "to purchase or take ownership of a semi-automatic rifle on or after September 4, 2022." *Id.* at Q19; *see also* https://gunsafety.ny.gov/frequently-asked-questions-new-concealed-carry-law ("A Semi-Automatic Rifle License is required to purchase or take ownership of a semiautomatic rifle on or after September 4, 2022. . . . The Semi-Automatic Rifle License is only required for persons acquiring a semiautomatic rifle on or after September 4, 2022."). The guidance further provides that existing firearm license holders can add a semiautomatic rifle to their firearm license through their local licensing officer. *Id.*

### B. **The Instant Application**

On February 17, 2023—36 weeks after the Rifle Law was enacted and 23 weeks after it went into effect—Plaintiffs moved by Order to Show Cause seeking a temporary restraining order and a preliminary injunction enjoining Defendants from enforcing the law. The Superintendent opposed Plaintiffs' request for relief and asked this Court for the opportunity to brief the issues raised in Plaintiffs' motion. ECF No. 8. By Order dated February 21, 2023, this Court granted the Superintendent's application, refusing to endorse any request for immediate temporary relief and stating that a 45-day briefing schedule was appropriate given that Plaintiffs waited months before filing this motion, as well as observing that the *Giambalvo* decision "may affect the pending application." Scheduling Order dated February 21, 2023. The briefing schedule was later extended again, and the Superintendent was granted an extension of pages for this memorandum. *See* Order dated March 29, 2023.

The supporting declarations submitted by Plaintiffs allege, in relevant part, as follows:

Plaintiff McGregor, who has a handgun license, avers that he intends to purchase and, at an unspecified time, actually attempted to purchase a Ruger 10/22 semiautomatic rifle from two

4

nonparty dealers, who advised him that he could not do so because he does not have a semiautomatic rifle license and/or a semiautomatic rifle endorsement on his handgun license. *See* McGregor Decl., ¶¶ 5-10. McGregor contacted the Suffolk County Police Department ("SCPD") Licensing Bureau to inquire about the process for obtaining a semiautomatic rifle license, informing them that dealers would not sell him a semiautomatic rifle without a rifle license, and that State Police guidance indicated that the semiautomatic endorsement should be available by amending a handgun license. *Id.* at ¶ 11. SCPD, however, allegedly advised McGregor that it would not issue a rifle license or amend his handgun license because it considered a handgun license to be sufficient to purchase a semiautomatic rifle. After receiving this information, McGregor was allegedly advised—again, on an unspecified date—by another nonparty dealer that he could not purchase a rifle with a handgun license. *Id.* at ¶¶ 12, 15-16. McGregor further claims that even if he could apply for a rifle license—which, purportedly, he cannot do, as SCPD is not issuing such licenses, *id.* at ¶ 16—he would have to wait "at least 2-3 years" because of SCPD's processing delays. *Id.* at 19.

Plaintiff Giambalvo, who has owned a semiautomatic rifle since before the enactment of the Rifle Law, but does not presently have a semiautomatic rifle license, avers that pre-Rifle Law, he and his father regularly went target shooting during which they would "take[] possession of" one another's rifles to use recreationally at the Dark Storm gun range. Since enactment of the Rifle Law, Giambalvo claims that he can no longer go target shooting with his father "out of fear of being arrested and incarcerated" because Suffolk County and other unidentified "law enforcement officers" shoot there. *See* Giambalvo Decl., ¶¶ 4-7, 10, 12. Giambalvo also went target shooting with friends pre-Rifle Law, where they would "take possession of" one another's rifles to engage in recreational target shooting; and he intends to continue doing this twice a month

5

post-Rifle Law, even though he claims it is now illegal to do so. *Id.* at ¶¶ 11-13. Significantly, however, Giambalvo does not state or otherwise claim that he, his father, or his friends are actually transferring legal ownership of their rifles when they temporarily take possession of the rifle(s) to use at the gun range. Giambalvo further avers that he intends, at an unspecified time, to purchase an unspecified World War II-era semiautomatic rifle from an unspecified dealer outside of New York, but cannot because SCPD does not have a license process in place, and even if it did, he objects to having to obtain a license. *Id.* at ¶¶ 14-17.

Plaintiff Felice, who has also owned a semiautomatic rifle since before the enactment of the Rifle Law, avers that pre-Rifle Law he enjoyed going target shooting with friends, who also took turns shooting with one another's rifles. *See* Felice Decl., ¶¶ 4-6. But because none of them currently hold a semiautomatic rifle license, Felice claims that he is now barred from engaging in this conduct. *Id.* at ¶ 6. Like Giambalvo, however, Felice does not state or otherwise claim that he and/or his friends are actually transferring legal ownership of their rifles when they are using them at the gun range. Felice also avers that he intends, at an unspecified date, to purchase an unspecified Black Rain Ordnance semiautomatic rifle, but that he does not intend to apply for a license. *Id.* at ¶¶ 7-8. Despite his complaints, Felice makes no contentions at all concerning or referring to any threat of arrest or criminal prosecution, regardless of whether such actions would be taken by SCPD or the New York State Police.

Plaintiff Olivieri, who is not licensed and does not own a semiautomatic rifle, avers that pre-Rifle Law, he would go target shooting with his father and they would share his father's rifle. He claims that both he and his father could be arrested and subjected to other penalties if they continue such conduct post-Rifle Law. *See* Olivieri Decl., ¶¶ 5-7. Yet, like both Giambalvo and Felice, Oliveri does not state or otherwise claim that he is actually taking legal ownership of his

6

father's rifle when he uses it at the gun range; instead, Oliveri's statement seem to make clear that a legal transfer of ownership of his father's rifle is *not* happening. *Id.* ¶ 6 (alleging that it "is a crime for my father to give (hand over) his semiautomatic rifle to me to use"). Olivieri further avers that he intends, at an unspecified time, to purchase an unspecified AR-15 platform semiautomatic rifle, but that he cannot since SCPD has no licensing process, and even if they did, he feels he should not have to obtain a license. *Id.* at ¶¶ 8-10. And notwithstanding that he does not have a license to begin with, Olivieri also objects to having to register his firearms on a license. *Id.* at ¶ 11.   Despite his complaints, Felice makes no factual contentions at all concerning or referring to any threat of arrest or criminal prosecution, regardless of whether such actions would be taken by SCPD or the New York State Police, beyond a general and conclusory statement to this effect in ¶ 7.

Plaintiff Newman is the owner and operator of Plaintiff Dark Storm, a limited liability company that is licensed to manufacture and sell semiautomatic rifles. *See* Newman Decl., ¶¶ 3-4. Following the enactment and effective date of the Rifle Law, Dark Storm claims that it stopped selling semiautomatic rifles to the general public. It recently resumed such sales, although it can no longer sell or transfer semiautomatic rifles to its customers and potential customers who have not obtained a rifle license. *Id.* at ¶¶ 6-10. According to Newman, Dark Storm is prohibited from selling and transferring semiautomatic rifles to Suffolk County customers and potential customers because of the Rifle Law, SCPD's licensing policy, and enforcement of the Rifle Law by SCPD and the State Police. *Id.* at ¶¶ 11-17. Newman's declaration refers in general to "the Rifle Bill and the enforcement thereof by SCPD and the NYSP," *Id.* at ¶ 17; *see also id.* at ¶ 7 ("the Rifle Bill as enforced by . . . the New York State Police"), but does not actually identify any specific policy or action taken by the State Police that has affected him or his business.

## STANDARD OF REVIEW

"It is axiomatic that a preliminary injunction represents an extraordinary exercise of the court's authority and thus requires an exacting showing." *Giambalvo*, 2023 U.S. Dist. Lexis 27304, at * 9. Indeed, a preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). The burden is on Plaintiffs to establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id.* at 20; *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 279-80 (2d Cir. 2021). The final two factors—the balance of the equities and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).[5]

Where, as here, plaintiffs ask the Court to enjoin the enforcement of a duly enacted statute, plaintiffs must make "a heightened showing . . . consistent with the principle that 'governmental policies implemented through legislation . . . are entitled to a higher degree of deference and should not be enjoined lightly.'" *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995). Plaintiffs must show a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm. *People ex. rel. Schneiderman v. Actavis PLLC*, 787 F.3d 638, 650 (2d Cir. 2015). As discussed below, Plaintiffs have not made the requisite showing.

---

[5] Plaintiffs claim that balancing the equities "is no longer viable in the context of a Second Amendment challenge," Pl. MOL, p.19, but this Court made clear in *Giambalvo* that the applicable standard for an award of a preliminary injunction continues to require movants to show that the balance of the equities weighs in their favor. 2023 U.S. Dist. Lexis 27304, at *10.

8

## ARGUMENT

## POINT I:  PLAINTIFFS GIAMBALVO, OLIVIERI, FELICE, AND MCGREGOR LACK STANDING TO CHALLENGE THE RIFLE LAW

Unless a plaintiff has Article III standing, a court lacks subject matter jurisdiction to hear his claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To establish Article III standing, a plaintiff bears the burden of establishing three "irreducible constitutional minimum" elements. *Id.* at 560.  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).

### A.  Plaintiffs Giambalvo, Felice, and Olivieri Lack "Injury-in Fact"

Giambalvo, Felice, and Olivieri lack standing for numerous reasons related to their failure to allege injury-in-fact.[6]  **First**, none of these Plaintiffs has "complied with the requisites of [the State's licensing] system," which is required to establish standing. *Giambalvo*, 2023 U.S. Dist. Lexis 27304 at *13 (citing *United States v. Decastro*, 682 F. 3d 160, 164 (2d Cir. 2012), *cert. denied*, 568 U.S. 1092 (2013)).  Plaintiffs claim that SCPD does not have a process in place to obtain a semiautomatic rifle license separate and apart from a license for handguns, but even if the

---

[6]  The Superintendent does not concede that McGregor has suffered any injury in fact, particularly any injury attributable to the Superintendent, as opposed to purported injury caused by Suffolk County or third-party gun stores. Nevertheless, any injury in fact seems dubious at best because various gun stores, including Camp-Site Sport Shop and Karp's Hardware/Long Island Ammo, have publicly acknowledged that they are aware of and selling semiautomatic rifles in compliance with the SCPD's announced policy and procedure.  *See* https://www.longislandgunclub.com/forum/licensing/suffolk/867805-semi-auto-rifle-license; https://www.campsitesportshop.com/firearm-licenses.  In this regard, it is notable that McGregor's declaration does not provide details about *when* he attempted to purchase the semiautomatic rifle from these stores.

process is the same, Giambalvo,[7] Felice, and Olivieri have not alleged that they have applied for such a license. In fact, they object to having to apply in the first place. *See* Giambalvo Decl., ¶ 17 ("I object to having to apply for and obtain" a semiautomatic rifle license); Felice Decl., ¶ 8 ("I do not have, nor do I intend to apply for," a semiautomatic rifle license); Olivieri Decl., ¶ 10 ("I should not have to seek and obtain" a semiautomatic rifle license).

As concerns any challenge to the portion of the Rifle Law that allegedly requires registration of semiautomatic rifles on a license, the State Police have taken the position that the Rifle Law does not require this kind of registration to begin with. *See* HD, Exh. 2, p.3. In any event, Olivieri is the only Plaintiff who complains about this, yet given that Olivieri has not even applied for a license, he clearly has no standing to challenge the law. Olivieri Decl., ¶ 11.

Since these Plaintiffs have not applied for a license—much less been denied one—they have not yet suffered the injury-in-fact required for standing, which is fatal to their claim. *See Libertarian Party of Erie Cnty. v. Cuomo,* 970 F.3d 106, 122 (2d Cir. 2020), *abrogated in part on other grounds by Bruen,* 142 S. Ct. 2111 (only plaintiffs who had their applications denied alleged an injury-in-fact);[8] *Decastro,* 682 F. 3d at 164 (holding that plaintiff who failed to apply for a New York gun license lacked standing to challenge the state's licensing laws); *Giambalvo,* 2023 U.S. Dist. Lexis 27304, at *14 ("[P]laintiffs have undermined any showing of a likelihood of success on the merits as, due to their refusal to comply with the requisites of the licensing process, they

---

[7] The Superintendent is aware from the *Giambalvo* case, that Plaintiff Giambalvo has applied for a handgun carry permit, but as this Court already held, that was not sufficient to establish standing. *See Giambalvo,* 2023 U.S. Dist. Lexis 27304, at *11-15.

[8] The *Bruen* decision abrogated the Second Circuit's decision in *Libertarian Party,* 970 F.3d 106, only to the extent *Libertarian Party* (1) upheld New York's "proper cause" requirement under the Second Amendment; and (2) applied "means-ends" scrutiny to plaintiffs' Second Amendment challenge. *Bruen,* 142 S. Ct. at 2127 & n.4. The Second Circuit's decision otherwise remains controlling precedent, including its rulings relating to the circumstances in which an applicant for a firearms license may, or may not, have standing to sue.

cannot qualify for a permit, and the State can, consistent with the mandates of *Bruen* and *Heller*, deny their applications.").

Although an individual may also have standing if he is able to make a "substantial showing" that completing his application and obtaining a decision would be futile, *Libertarian Party*, 970 F.3d at 116, Plaintiffs here have not done so. A plaintiff may show futility where it is clear that his application would be denied based on immutable characteristics or, at the very least, characteristics that are not easily altered. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977) (minority persons deterred by "Whites Only" employment policy would suffer injury); *Bach v. Pataki*, 408 F.3d 75, 82-83 (2d Cir. 2005) (plaintiff's application for a concealed carry license was futile where he was not a New York resident and thus statutorily ineligible), *overruled on other grounds by, McDonald v. Chicago*, 561 U.S. 742 (2010). In contrast, a plaintiff fails to demonstrate futility where he opts not to complete an application despite being able to do so. This is because "a plaintiff must submit to the challenged policy" and "[m]ere objection or antipathy to the law" does not constitute futility, which is all Giambalvo, Felice, and Olivieri have alleged here. *Libertarian Party*, 970 F.3d at 121, 116; *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1097-98 (2d Cir. 1997) (plaintiff did not show futility in challenge to prison's religious worship policy where he did not complete a registration form but could have done so); *Giambalvo*, 2023 U.S. Dist. Lexis 27304, at *14.[9]

**Second**, Giambalvo, Felice, and Olivieri have not shown injury-in-fact related to their purported inability to purchase a semiautomatic rifle. While each of them has stated that he intends to purchase a semiautomatic rifle, none has described any "concrete plans" to do so. Nor have

---

[9] Nor can Plaintiffs create their own futility by unilaterally refusing to comply with legal requirements they dislike. *See Williams v. King*, 56 F. Supp. 3d 308, 326 (S.D.N.Y. 2014) (no standing where plaintiff "declined to comply with the policy . . . and there is no evidence in the record to suggest that compliance would have been futile.").

11

these Plaintiffs indicated when they intend to do so, or from whom they intend to purchase said rifle. *See* Giambalvo Decl., ¶ 14; Felice Decl., ¶ 7; Olivieri Decl., ¶ 8. Such "'some day' intentions—without any description of concrete plans, or indeed even any specification *when* the some day will be—do not support a finding of the actual or imminent injury' that is required." *Frey v. Bruen*, 2022 U.S. Dist. Lexis 31053, at *12-13 (S.D.N.Y. Feb. 22, 2022) (plaintiffs challenging firearms law lack standing even when they alleged that they "intend to" carry firearms unlawfully, where they did not allege "concrete plans" to do so); *Gazzola v. Hochul*, 2022 U.S. Dist. Lexis 220168, at *12 (N.D.N.Y. Dec. 7, 2022) (refusing to find standing where plaintiff professed a desire to buy semiautomatic rifle but allegedly could not do so due to county's purported failure to offer a license).

**Third**, to the extent Giambalvo Felice, and Oliveri allege injury-in-fact flowing from their alleged inability to continue to "take possession" of semiautomatic rifles owned by their family members or friends while target shooting at a gun range, *see* Giambalvo Decl., ¶¶ 6-13; Felice Decl., ¶¶ 5-6; Olivieri Decl., ¶¶ 5-7, such claims completely misapprehend the Rifle Law. As made clear by the plain language of the statute, as well as by the other information set out on official New York State websites, the license requirement applies to those who purchase or "take possession" of a semiautomatic rifle incident to a "transfer of ownership" of that weapon. *See* Penal Law § 400.00(2). The State Police's guidance regarding the new laws likewise emphasizes that the license is used only "to purchase or take ownership of a semi-automatic rifle." HD, Exh. 2, p.5. The statute, therefore, simply does not prohibit one from temporarily using a semiautomatic rifle that remains legally owned by another person, and no Plaintiff has alleged that their use or possession of another person's rifle at the gun range constitutes a change in legal ownership of that weapon. These Plaintiffs' injuries, therefore, do not actually exist; and are instead entirely

12

hypothetical and illusory, which does not suffice for purposes of Article III standing. *See, e.g.,* *Spokeo,* 136 S. Ct. at 1548 ("[I]njury must be de facto; that is, it must actually exist."); *Lujan,* 504 U.S. at 560 (injury must also be "actual or imminent, not conjectural or hypothetical").

### B.  Plaintiffs Have Not Demonstrated a Credible Threat of Arrest by the State Police

Where, as here, a plaintiff is trying to challenge a statute that has never been enforced against him, he needs to allege facts establishing that "there exists a credible threat of prosecution thereunder.'" *Frey,* 2022 U.S. Dist. Lexis 31053, at \*12 (quoting *Adam v. Barr,* 792 F. App'x 20, 21-22 (2d Cir. 2019) (summary order)). To establish standing for a pre-enforcement challenge, an "allegation of future injury will be sufficient only if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Does v. Suffolk Cnty,* 2022 U.S. App. Lexis 19094, at \*6 (2d Cir. July 12, 2022). The imminence requirement is not "evident where plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." *Id.* (internal quotations omitted).

Here, Giambalvo is the sole Plaintiff who alleges that he faces an "imminent risk of arrest and incarceration" by SCPD and State Police, allegedly because he has announced his intention to continue to briefly "take possession" of semiautomatic rifles legally owned by his friends while target shooting. *See* Giambalvo Decl., ¶¶ 11-13.[10] But, as explained *supra,* this conduct is simply not prohibited by the Rifle Law. Moreover, Giambalvo has not alleged that he has been arrested in the past for engaging in such conduct, or that anyone—much less a member of the State Police— has threatened him with arrest or prosecution for such conduct. In the absence of such allegations, Giambalvo has failed to articulate a sufficiently tangible threat of arrest. *See Giambalvo,* 2023

---

[10] As mentioned *supra,* McGregor and Felice do not allege a threat of arrest or prosecution, and Olivieri does so only in the most cursory and conclusory terms.

13

U.S. Dist. Lexis 27304, at *20-22 (holding that plaintiffs "lack standing, as they have failed to articulate a sufficiently tangible threat of arrest").

## C. **Plaintiffs' Alleged Injuries are Neither Fairly Traceable to the Rifle Law Nor the Superintendent, and are Not Redressable by the Superintendent**

Assuming *arguendo* that Plaintiffs have shown injury-in-fact, they still lack standing to enjoin enforcement of the Rifle Law because any alleged injury is neither traceable to the provisions of that statute or to the Superintendent, nor redressable by the Superintendent. Plaintiffs Giambalvo, Felice, and Olivieri's alleged inability to purchase a semiautomatic rifle flows from SCPD's purported lack of a licensing process for these firearms, as well as from their own refusal to even attempt to apply for such a license. *See* Giambalvo Decl., ¶ 15-17; Felice Decl., ¶¶ 6, 8; Olivieri Decl., ¶ 10. Likewise, any injury to Plaintiff McGregor, who holds a handgun license, flows either from SCPD's alleged refusal to issue him a distinct semiautomatic rifle license or from nonparty gun stores' refusal to accept his handgun license as sufficient to purchase a semiautomatic rifle in accordance with the process announced by SCPD. *See* McGregeor Decl., ¶¶ 8-12, 15-16. Since these purported injuries were not caused by any provision of the Rifle Law or by the Superintendent, Plaintiffs lack standing.

Similarly, the Superintendent cannot redress these purported harms either, as he is not the licensing official for Suffolk County, *supra* n.3; meaning that he cannot cure SCPD's purported lack of a licensing process or delays in processing applications, as he has no responsibility for creating or implementing such process.[11] Nor can the Superintendent cure any purported injury suffered as a result of a nonparty gun store's decision not to adhere to SCPD's announced policies

---

[11] Under New York law, the Superintendent is a licensing officer only for retired members of the Division of State Police. *See* Penal Law §§ 265.00(10), 400.01(1); *cf. Libertarian Party*, 970 F.3d at 122 (licensing challenge only appropriate against defendants with a "role in the licensing process or in the consideration of the [plaintiffs'] applications").

in selling a semiautomatic rifle to someone like McGregor, as the Superintendent has no control over a store's decision as to who—or on what terms—they will sell firearms. Plaintiffs' injuries, therefore, are not redressable by the Superintendent either, and this forms yet another independent bar to Article III standing in this case.[12] *See, e.g., Gazzola*, 2022 U.S. Dist. Lexis 220168, \*13 (plaintiff challenging semiautomatic rifle licensing law "failed to establish how the [] county's failure to issue semiautomatic rifle licenses is 'fairly traceable to the challenged action'" of Superintendent Nigrelli).

## POINT II: THE SECOND AMENDMENT DOES NOT APPLY TO THE COMMERCIAL ACTIVITY OF PLAINTIFFS DARK STORM AND NEWMAN

Plaintiff Dark Storm has no likelihood of success on the merits of its claims because the Second Amendment is an individual right to keep and bear arms, not a commercial or corporate right to sell them.[13] This is evident not only by the express terms of the Second Amendment, but also by Supreme Court caselaw. *See* U.S. Const. Amend. II ("[a] well regulated Militia, being necessary to the security of a free State, the right of *the people* to keep and bear Arms, shall not be infringed." (emphasis added)); *Bruen*, 142 S. Ct. at 2122 (Second Amendment right belongs to "ordinary, law abiding *citizens*" (emphasis added)); *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (Second Amendment right is an "*individual* right to possess and carry weapons *in case of confrontation*." (emphasis added)); *see also id.* at 579 ("Nowhere else in the constitution does a 'right' attributed to 'the people' refer to anything other than an individual right."); *id.* at 617 ("It was plainly the understanding in the post-Civil War Congress that the Second Amendment

---

[12] These arguments also foreclose Oliveri's standing to challenge any registration requirement for semiautomatic rifles, as any such requirement is not mandatory or required under the licensing law itself, as compared to something purportedly imposed by the SCPD. This "injury" too, therefore, is similarly not traceable to or redressable by the Superintendent.

[13] Although Plaintiff Newman would have an individual right to purchase, sell and/or transfer personal firearms, there are no factual allegations in the Complaint or in the papers supporting this motion demonstrating that he has asserted an infringement of any such right.

protected an *individual right to use arms for self-defense*." (emphasis added)); *see also Giambalvo*, 2023 U.S. Dist. Lexis 27304, at *12 (recognizing that the rights protected by the Second Amendment "are expressly limited" to "'ordinary, law-abiding, adult citizens'" (quoting *Bruen*, 142 S. Ct. at 2122)). And in Dark Storm's case, a business organization manifestly falls outside of the definition of "the people." *See Gazzola*, 2022 U.S. Dist. Lexis 220168, at *35 ("Plaintiffs fail to present any support for their contention that the individual right secured by the Second Amendment applies to corporations or any other business organizations. It does not.").

Federal courts both before and after *Bruen* have rejected the proposition that the Second Amendment creates a right to sell arms. *See Heller*, 554 U.S. at 626-27 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on . . . laws imposing conditions and qualifications on the commercial sale of arms."); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (same); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (same); *see also Binderup v. Attorney General*, 836 F.3d 336, 343 (3d Cir. 2016) ("laws imposing conditions and qualifications on the commercial sale of arms . . . . comport with the Second Amendment because they affect individuals or conduct unprotected by the right to keep and bear arms."), *abrogated in part on other grounds by Bruen*, 142 S. Ct. 2111; *United States v. Tilotta*, 2022 U.S. Dist. Lexis 156715, at *15 (S.D. Cal. Aug. 30, 2022) ("the natural reading of 'keep and bear arms' does not include the ability to sell or transfer firearms unrestricted. Thus, the plain text of the Second Amendment does not cover [individual firearms dealer]'s proposed course of conduct").

Nor have Dark Storm and/or Newman shown a clear likelihood of success on a claim that the Rifle Law violates the Second Amendment rights of their customers/potential customers by preventing them from purchasing semiautomatic rifles. As a threshold matter, the only alleged

16

customers identified are some of the other Plaintiffs, *see* Newman Decl., ¶ 9; yet those individuals have raised their own claims herein, making any derivative claim as to them purely duplicative. As to other unspecified customers, firearm retailers remain open for business in New York State; and those persons who wish to purchase arms remain free to do so, subject to reasonable "conditions and qualifications." *Heller,* 554 U.S. at 627. Going further, Dark Storm and Newman's injuries are entirely self-inflicted in any event, as their decision to cease selling semi-automatic rifles was not mandated by the Superintendent, and they freely admit that they have resumed such sales. Newman Decl., ¶¶ 8, 10; *see, e.g., Clapper v. Amnesty Intl. USA*, 568 U.S. 398, 416 (2013) (holding that litigants "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm").

Most fundamentally, Dark Storm and Newman have not shown a clear likelihood of succeeding on their claims because they have not shown that the Rifle Law meaningfully impairs individual citizens' ability to obtain firearms. A "law that regulates the availability of firearms is not a substantial burden on the right to keep and bear arms if adequate alternatives remain for law-abiding citizens to acquire a firearm for self-defense." *Decastro,* 682 F.3d at 168; *see Teixeira v. County of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017) (holding that plaintiff failed to state a plausible claim on behalf of potential customers where he did not adequately allege that challenged ordinance impeded county residents from acquiring firearms); *Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 497-98 (N.D.N.Y. 2020) (collecting cases and finding no Second Amendment violation even during pandemic shutdown of Dark Storm because "there appears to be no dispute that alternatives remained for [Dark Storm's customers] and others like them in New York to acquire firearms for self-defense."). Here, Dark Storm acknowledges that it continues to sell rifles to licensed purchasers, Newman Decl. ¶ 10, and statistics show that the firearms market in New

17

York is in robust health, with 447,567 background checks conducted in connection with new sales in 2022 and 63,471 in the first two months of 2023 alone. *See* FBI, *NICS Firearm Background Checks: Month/Year by State*, available at https://www.fbi.gov/file-repository/nics_firearm_checks_-_month_year_by_state.pdf. Plaintiffs Newman and Dark Storm have not put before the Court evidence that the Rifle Law "meaningfully inhibits residents from acquiring firearms," *Teixeira*, 873 F.3d at 680, and so any attempt to derivatively raise their customers' Second Amendment rights must fail.

## POINT III:  THE RIFLE LAW IS CONSTITUTIONAL AND, THEREFORE, PLAINTIFFS HAVE NO CLEAR LIKELIHOOD OF SUCCESS ON THE MERITS OF THEIR SECOND AMENDMENT CHALLENGE

Plaintiffs raise a facial challenge to the Rifle Law as it amended various portions of the Penal Law, repeatedly contending that the mere idea of a licensing requirement—as applied to semiautomatic rifles—is repugnant to the Second Amendment. *See* Pl. MOL p.3. Facial challenges, however, "are generally disfavored." *Dickerson v. Napolitano*, 604 F.3d 732, 741 (2d Cir. 2010). To prevail, Plaintiff must show that "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Plaintiffs plainly fail to meet this high bar.

### A. *Bruen* Holds That Shall-Issue Licensing Laws Like The Rifle Law Are Constitutional

Plaintiffs cannot show a clear likelihood of success on the merits because no plausible reading of *Bruen* suggests that licensing requirements are unconstitutional. *See Giambalvo*, 2023 U.S. Dist. Lexis 27304, at *12-13. While *Bruen* struck down New York's then-existing "proper cause" requirement, it also emphasized that "[t]o be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the other 43 states' 'shall-issue' licensing regimes, under which a general desire for self-defense is sufficient to obtain a permit." 142 S. Ct. at 2138

18

n.9 (quotation omitted). Instead, as this Court unambiguously held in rejecting a challenge by two of these same Plaintiffs against the State's handgun licensing laws, "some things are beyond dispute," including that "certain state [firearm] licensing regimes are constitutionally permissible." *Giambalvo*, 2023 U.S. Dist. Lexis 27304, at \*12–13; *accord Frey v. Nigrelli*, 2023 U.S. Dist. Lexis 42067, at \*34 (S.D.N.Y. Mar. 13, 2023) ("[n]othing in *Bruen* suggested that the Second Amendment protects the right to carry a firearm without a license, and concurring opinions indicate the opposite."). In reaching its conclusion, this Court quoted from Justice Kavanaugh's concurrence (joined by the Chief Justice) which recognized that the *Bruen* decision "does not prohibit States from imposing licensing requirements" on the carrying of firearms. *Frey*, 2023 U.S. Dist. Lexis 42067, at \*35.

There is no reason why *Bruen*'s licensing holding would apply any differently to rifles than to handguns, and Plaintiffs' entirely conclusory arguments to the contrary are unavailing, particularly when multiple other states require a form of license to purchase some or all semiautomatic rifles.[14] Plaintiffs have not put forward any reason why a licensing requirement to purchase a semiautomatic rifle would offend the Second Amendment when a licensing requirement to purchase a handgun does not, and several federal cases have found *Bruen*'s endorsement of licensing laws to apply outside the handgun contest. *Cf. Ore. Firearms Fed'n, Inc. v. Brown*, 2022 U.S. Dist. Lexis 219391, at \*38 (D. Ore. Dec. 6, 2022) (upholding "Permit-

---

[14] *See, e.g.,* Conn. Gen. Stat. § 29.37p *et seq.* (discussing the requirements for a "long gun eligibility certificate"); Ill. Comp. Stat. ch. 430 § 65/2(a)(1) ("No person may acquire or possess any firearm . . . within this state" without a FOID card from the state police); Haw. Rev. Stat. §§134-1, 134-2(a) (permit required to purchase any "firearm" which includes "pistols, revolvers, rifles, shotguns . . ."); Mass. Gen. Laws. Ann. § 131E(a) ("rifles, shotguns and feeding devices therefor may be so purchased only upon presentment of: a valid firearm identification card . . . a valid license to carry firearms . . . or valid proof of exempt status."); N.J. Stat. Ann. § 2C:58-3(b)(1) ("A person shall not . . . receive, purchase or otherwise acquire . . . a rifle or shotgun . . . unless the purchaser . . . possesses a valid firearms purchaser identification card . . ."); *see also* Wash. Rev. Code § 9.41.090(2)(b) ("no dealer may deliver a semiautomatic assault rifle to the purchaser thereof until . . . [t]he dealer is notified in writing" by local or state government "that the purchaser is eligible to possess a firearm.").

19

to-Purchase Provision" that applied to sales of all firearms because it was "based on objective standards and is therefore presumptively constitutional under the holding of *Bruen*."); *United States v. Saleem*, 2023 U.S. Dist. Lexis 34566, at *29 n.9 (W.D.N.C. Mar. 2, 2023) (finding based on licensing language in *Bruen*'s footnote nine that registration requirements of the National Firearms Act, which include *inter alia* short-barreled shotguns and short-barreled rifles, "are of the type that the Supreme Court in *Bruen* determined were permissible"). This point is particularly compelling as concerns Plaintiffs Giambalvo and McGregor, who have acknowledged in related litigation "that the State *may* maintain objective permitting standards," effectively conceding that the mere idea of requiring a license to purchase or own a firearm is constitutionally permissible. *Giambalvo*, 2023 U.S. Dist. Lexis 27304, at *13 (emphasis added).  As a result, even if the Court were to excuse Plaintiffs' complete lack of standing and look to the substantive issues in the Complaint, Plaintiffs' facial challenge fails under the holding of *Bruen* itself, further foreclosing any entitlement to injunctive relief.

**B.  The Rifle Law Is Supported By American Legal History And Tradition**

Although the Court can and should deny this motion based solely upon *Bruen*'s finding that licensing regimes are constitutionally permissible, the Rifle Law is manifestly constitutional even if the Court is inclined to examine it under the second *Bruen* prong.  To pass muster at this stage, the State must identify one or more historical laws that are "relevantly similar" to the law being challenged. *Bruen*, 142 S. Ct. at 2132.  "Such 'analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.'" *Frey,* 2023 U.S Dist. Lexis 42067, at *13 (quoting *Bruen*, 142 S. Ct. at 2133). And in "cases implicating unprecedented societal concerns or dramatic technological changes" – such as the lethality of modern semiautomatic rifles, which

had no parallel in the 18th or 19th Centuries – *Bruen* calls for "a more nuanced approach," in recognition of the fact that "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." 142 S. Ct. at 2132.

The Rifle Law comfortably passes this part of the *Bruen* test, as licensing has always been a widespread regulatory tool used throughout America. *See Frey*, 2023 U.S. Dist. Lexis 42067, at \*36-\*39. In *Frey*, the Honorable Nelson Román recently found "an abundance of examples" in the course of upholding the State statute providing for separate licensure in New York City, citing dozens of historical licensing laws from New York State and around the nation. *See id.* In the context of this case, the accompanying expert declaration from Professor Robert Spitzer provides a detailed discussion of America's long history of gun licensing, including in the context of long guns, with supporting citations.

As Professor Spitzer recounts, the primary focus of the states was initially on handguns because they were the weapons that posed a threat to public safety during the 1700s through early 1900s. Spitzer Decl., ¶ 40. Once long guns appeared in civil society and started to pose a criminal and public safety problem, however, states were quick to enact prohibitions and licensing requirements, with long guns such as the Tommy gun, the BAR, and sawed-off shotgun (i.e., long guns modified after purchase) being restricted in at least 32 states, and semi-automatic long guns being restricted in up to 11 states, during the 1920s and early 1930s. Id. at ¶ 41.

Before that, in the 1800s, 17 states—including New York—enacted laws requiring individuals to be licensed as a prerequisite to possessing or carrying a weapon. *Id.* at ¶ 9. For example, shortly after the ratification of the Fourteenth Amendment, Missouri enacted a measure to license the otherwise illegal practice of concealed carrying of handguns and other named

21

weapons, including "any other dangerous or deadly weapon," in St. Louis by means of "written permission of the Mayor." *Id.* at ¶ 15. As another example, under a New York City ordinance enacted in 1881, a person who carried "a pistol of any description concealed on his person" could be subject to criminal penalties unless he was issued a permit based on a finding that he was a "proper and law abiding person." *Id.* at ¶ 18. A few years later, a 1884 New York state law barred the carrying or possession of named weapons by those under 18 years old unless they possessed a license to do so. Licenses could only be granted for up to one year and were subject to revocation "at the pleasure of the mayor." *Id.* at ¶ 19. Then, in 1885, the law was extended to all cities in the state and to "any pistol or other firearms of any kind," which would have included long guns. *Id.* In 1891, New York extended permitting to Buffalo, which covered handguns and other dangerous weapons. *Id.*

Florida is another example of a state that enacted licensing laws in the 1800s. Under Florida's 1893 law, it was unlawful to carry or own a Winchester or other repeating rifle "without first taking out a license from the County Commissioner...." *Id.* at ¶ 22. The law also specified that the applicant "shall give a bond running to the Governor of the State..., conditioned on the proper and legitimate use of the gun with sureties to be approved by the County Commissioners," along with "a record of the name of the person taking out such license, the name of the maker of the firearm so licensed to be carried and the caliber and number of the same." *Id.*[15]

As Professor Spitzer further explains, from the 1700s to the 1860s, at least 13 states enacted laws to regulate, through licensing, the discharging of firearms, and these laws extended to all firearms, including both long guns and handguns. *Id.* at ¶ 30. The earliest were in Pennsylvania,

---

[15] While Plaintiffs' moving papers characterize the Florida law as a "outlier regulation," citing an article authored by David Kopel, *see* Pl. MOL, p.14 and n.24, Professor Spitzer ably refutes this claim in paragraphs 23-26 of his declaration, to which the Court is referred.

and included, among others: a 1713 Philadelphia law penalizing various city activities, including "firing a Gun without a license"; a 1721 act pertaining to the entire colony that imposed penalties on specified activities, including firing "any gun or other fire arm," without the "governor's special license"; and a 1721 Philadelphia ordinance requiring a "governor's special license" to prevent "mischief [that] may happen by shooting guns." *Id.* Other states followed Pennsylvania's lead, including, for instance, New Hampshire, which enacted a discharge permit system for Portsmouth in 1823, and New York, which enacted an 1824 law allowing Schenectady officials to grant permission for the discharge of guns. *Id.* at ¶ 31.   Between the end of the Civil War and 1900, another 20 states enacted laws regulating the discharge of firearms. *Id.*

States also enacted licensing laws governing the commercial sale of firearms, including 16 states that did so throughout the 1800s, and 9 states in the early 1900s. *Id.* at ¶ 32.  For example, in 1814, Illinois made it unlawful for whites to engage in commercial activities with Native Americans unless they obtained a license from the governor. *Id.*   Later, in 1914, a Chicago, Illinois ordinance imposed a licensing requirement both on persons seeking to sell concealable weapons and on those seeking to buy them. *Id.* As a further example, in 1854, California enacted a law requiring commercial shooting galleries in San Francisco to be licensed. *Id.*

In addition, at least 15 states required those selling or otherwise transferring weapons to record and keep information about the buyer, with that information to be maintained and subject to possible later examination. *Id.* at ¶ 34. For example, in 1885, Illinois enacted a registration requirement for weapons dealers requiring them to "keep a register of all such weapons sold or given away by them." *Id.* at ¶ 35.  With minor exceptions, this law was typical of such requirements, including those imposed in 1911 laws enacted by Colorado and New York. *Id.*

23

Ultimately, as Professor Spitzer explains, a comprehensive review of historical laws and regulations reveals that, contrary to Plaintiffs' contentions that licensing requirements are "*wildly inconsistent*" with America's historical tradition of firearms regulation, Complaint, ¶ 29 (emphasis in original), in fact "licensing was an integral component" of that tradition. Spitzer Decl., ¶ 41. Indeed, "licensing and registration requirements were commonly and ubiquitously applied to guns and other dangerous weapons"—not only to their sale, as provided for in the Rifle Law, but also their use and mere ownership—and as particular kinds of firearms presented themselves as public safety problems, a majority of the states acted swiftly to regulate and protect the health and safety of their citizens. *Id.* at ¶¶ 40-41. Accordingly, even if the Court was to look at the second prong of the *Bruen* analysis, Plaintiffs' arguments would fail on their substantive merits.

## POINT IV: PLAINTIFFS HAVE NOT MADE A STRONG SHOWING OF IMMINENT AND IRREPARABLE HARM FROM THE RIFLE LAW

Notwithstanding Plaintiffs' inability to show a likelihood of success on the merits of their claims, Plaintiffs' unreasonable delay in bringing this motion separately negates any finding of imminent and irreparable harm, which "is the *sine qua non* for preliminary injunctive relief." *JBR, Inc. v. Keurig Green Mt., Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (summary order). To this end, a moving party must act diligently to enforce his rights since delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable harm." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (internal quotes and cites omitted). Here, the Rifle Law was enacted on June 6, 2022; yet Plaintiffs waited until February 17, 2023 to bring the instant application, over eight months after the statute was enacted into law and over five months after it became effective. And despite their claims of grievous harm, Plaintiffs offer no reason or explanation for their months-long failures to act.

24

Even if this extensive delay could be excused, Plaintiffs have not demonstrated any imminent irreparable harm from the Rifle Law. To show irreparable harm, the moving party must demonstrate that his "injury is neither remote nor speculative, but actual and imminent." *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999). Plaintiffs have not demonstrated that any provision of the Rifle Law will interfere with their right to bear arms; as again, they may continue using semiautomatic rifles they lawfully owned prior to the enactment of the Rifle Law, may continue to use semiautomatic rifles owned by family or friends, and may even continue to buy semiautomatic rifles after obtaining the requisite—and constitutionally permissible—license.

## POINT V: THE EQUITIES AND THE PUBLIC INTEREST FAVOR ALLOWING ENFORCEMENT OF THE RIFLE LAW

In addressing the equities, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. Here, any injury to the individual Plaintiffs from the Rifle Law is negligible, as all of the individual plaintiffs besides Olivieri already own a rifle. *See* McGregor Dec. ¶ 18; Giambalvo Dec. ¶ 8; Felice Dec. ¶ 4; *see also* Newman Dec. ¶¶ 3-5, meaning that their lack of licensure therefore, at most, is an impediment to buying more. And as to Olivieri, as explained *supra* at Point I, A, there is nothing to prevent him from continuing to share his father's semiautomatic rifle, as he did before the Rifle Law's enactment. *See* Olivieri Dec. ¶ 5. Conversely, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury,' particularly where there would be 'an ongoing and concrete harm to . . . public safety interests." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers). Without the Rifle Law, these dangerous weapons may end up in the hands of persons who should not have them, and those who may not be able to wield them responsibly. These significant public safety concerns weigh strongly against issuing an injunction.

25

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for a preliminary injunction against the

Rifle Law should be denied.

Dated: Hauppauge, New York
       April 21, 2023

LETITIA JAMES
Attorney General for the State of New York
Attorney for Superintendent Nigrelli

By: _Patricia M. Hingerton_

       Patricia M. Hingerton
       Robert E. Morelli
       Assistant Attorneys General
       300 Motor Parkway, Suite 230
       Hauppauge, New York 11788
       Patricia.Hingerton@ag.ny.gov
       Robert.Morelli@ag.ny.gov
       (631) 231-2424

26