# EXHIBIT B TO HINGERTON DECLARATION




*Issued December 6, 2022*

**FREQUENTLY ASKED QUESTIONS FOR FIREARM DEALERS REGARDING RECENT CHANGES TO NEW YORK FIREARM LAWS**

**General Business Law Article 39-BB (Dealer Business Practice) Requirements**

**Q: Where are the new dealer requirements that become effective December 3, 2022 located in the law?**

A: New York General Business Law, Article 39-BB, Sections 875-a through 875-i are the new laws that dealers must comply with. In addition, the New York State Police ("NYSP") will be publishing regulations, to be codified in Title 9 of the New York Codes, Rules and Regulations ("NYCRR"), Subtitle K, Part 482, Sections 482-2.1 through 482-2.6.

**Q: What types of businesses do the Article 39-BB requirements apply to?**

A: The statutory and regulatory requirements in Sections 875-a through 875-i of the New York General Business Law and Sections 482-2.1 through 482-2.6 of Part 482, Title 9 of the NYCRR, apply to dealers in firearms and gunsmiths that are licensed pursuant to Section 400.00 of the Penal Law. For purposes of these new laws and these FAQs, a "dealer" means either a gunsmith or a dealer in firearms.

**Q: When will dealers be required to certify compliance with all the requirements of Article 39-BB?**

A: Annual compliance certifications must be submitted to the New York State Police by January 31 of each year. The initial compliance certification will not be due until January 31, 2024.

**Q: Where can I find a compliance certification form?**

A: The New York State Police will publish a compliance certification form on its website and will provide instructions for how to electronically submit these forms.

**Q: When will the training course for dealer employees be available?**

A: The New York State Police is currently developing the training materials and anticipates that these materials will be available by the 2022 calendar year.




*Issued December 6, 2022*

**Q: When must this training be completed by?**

A: Dealers must ensure that all employees complete the training by March 3, 2023. After that date, all new employees must complete the training within 30 days of beginning employment, and all employees must complete the training again annually.

**Q: Will dealer employees be permitted to continue participating in firearm, rifle, and shotgun transactions after December 3, 2022, if they have not yet completed the mandatory training course?**

A: Yes, dealer employees will be permitted to continue participating in firearm, rifle, and shotgun transactions after December 3, 2022. Dealers have until March 3, 2023, to ensure that all employees have completed the training course. After March 3, 2023, existing employees who have not yet completed the training course cannot participate in firearm, rifle, and shotgun transactions until the employee completes the training.

**Q: Do all firearms, rifles, and shotguns need to be secured in a locked fireproof safe or vault on the dealer's business premises during non-business hours?**

A: During non-business hours, all firearms, rifles, and shotguns must either be secured in a locked fireproof safe or vault on the dealer's business premises, or otherwise be secured in a locked and secure area on the dealer's business premises.

**Q: How can I determine whether a security alarm company is properly licensed to install the required security alarm system?**

A: Alarm installer licenses can be verified on the New York Department of State website at: https://appext20.dos.ny.gov/lcns_public/bus_name_search_frm.

**Q: Where are the requirements or standards for security alarm systems that dealers must implement?**

A: The requirements and standards for security alarm systems are documented in New York General Business Law Section 875-b(2) and Title 9 of NYCRR, Section 482-2.3.

**Q: When will the New York State Police begin conducting the required compliance inspections?**

A: There is no official start date identified at this time. Dealers will be given reasonable notice before any compliance inspection.




*Issued December 6, 2022*

**Semi-Automatic Rifle License**

**Q: Can a dealer transfer a semi-automatic rifle to a customer who has a pistol license but not a semi-automatic rifle license?**

A: No, a dealer can only sell a semi-automatic rifle to a customer if that customer possesses a semi-automatic rifle license. A pistol license alone is not sufficient to allow a transfer of a semi-automatic rifle.

**Q: If a dealer is holding a semi-automatic rifle for safekeeping or maintenance for a customer who originally acquired the rifle prior to 9/4/2022, is the owner required to possess a semi-automatic rifle license prior to the rifle being returned to the owner?**

A: No, if the semi-automatic rifle was originally acquired by the owner prior to 9/4/2022, then the owner is not required to have a semi-automatic rifle license for the dealer to return the rifle to the owner.

**Q: Can a dealer transfer a serialized lower receiver to an individual who does not have a semi-automatic rifle license?**

A: A serialized lower receiver is defined as a major component, not a semi-automatic rifle. Because of this, serialized lowers can be transferred to customers who do not possess a semi-automatic rifle license. A NICS check is still required prior to transfer.

**Q: Are shotguns included in the semi-automatic rifle license requirement?**

A: No, the semi-automatic license requirement does not apply to shotguns or to rifles that are bolt, lever, or pump action.

**Q: Is a semi-automatic rifle required to be listed on the semi-automatic license prior to being transferred, the same way handguns are listed on a pistol license?**

A: No, semi-automatic rifles are not required to be listed on the license.

**Muzzleloader/Black Powder Rifles/Shotguns**

**Q: Are dealers required to run a NICS check for muzzleloader/black powder sales/transfers?**

A: No, that would be a prohibited use of the NICS system, and the FBI does not allow it.




*Issued December 6, 2022*

**Ammunition**

**Q: Will dealers need to run a background check through NYSP for firearm sales?**

A: The law requires that the New York State Police be officially designated as the point of contact for processing background checks for firearm purchases. After this official designation is made at some point in the future, the availability of the firearm background check system will be announced and background checks will commence.

**Q: Will dealers need to run a background check through NYSP for ammunition sales?**

A: The law will require licensed dealers to contact the New York State Police to conduct a background check on prospective ammunition buyers, similar to the check that is conducted on gun buyers. After the New York State Police is officially designated as the point of contact for processing background checks for firearm purchases, the availability of the ammunition background check system will be announced and background checks will commence.

**Q: What records are dealers required to maintain with regards to ammunition sales?**

A: Effective 9/1/2022, dealers are required to maintain an electronic record with the following information for all ammunition transactions, including ammunition coming into the business:

- Date of transaction;
- Customer name, age, address, and occupation; and
- Ammunition manufacturer, caliber, quantity (number of rounds) and any other distinguishing number or identification mark on the ammunition (lot number).

**Other Firearms**

**Q: Can a dealer still transfer an "other" firearm?**

A: As of 7/6/2022, certain types of guns that were previously unclassified under NYS law and referred to as "other" are now classified as firearms and cannot be lawfully transferred or possessed, unless the individual is exempt under Penal Law Section 265.20. Examples of "other" include:

- Mossberg Shockwave
- Remington 870 TAC-14
- Delta Level Defense CT4-2a
- Henry Axe