

April 21, 2023

**VIA ECF**
Hon. Gary R. Brown
U.S. District Court, EDNY
100 Federal Plaza
Central Islip, New York 11722

     Re:   *McGregor v. Suffolk County, et al.*, 23 Civ. 1130 (GRB)(ARL)

Dear Judge Brown,

     I represent the plaintiffs in the above-referenced matter. I write in response to the pre-motion letter filed by NYSP Acting Superintendent Steven Nigrelli, and incorporate the Complaint by reference.

**Plaintiffs' Injury-In-Fact**

     Failure to apply for a license does not preclude Plaintiffs' challenge because they have made a "substantial showing that submitting an application would have been futile." *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) citing, *Jackson–Bey v. Hanslmaier*, 115 F.3d 1091, 1096; cf. *Bach v. Pataki*, 408 F.3d 75, 82–83 (2d Cir.2005) (holding that plaintiff's challenge to New York's gun licensing laws applicable to non-residents was justiciable despite his failure to apply for a license because he was statutorily ineligible for a license and therefore submitting an application would have been a "futile gesture") (internal quotation marks omitted). SCPD has no procedure for the application for, or issuance of, a semi-automatic rifle license and SCPD ***will not*** issue rifle licenses. Even if SCPD did issue rifle licenses, applying would be futile because the SCPD licensing process takes between 2-3 years from commencement to issuance. Plaintiffs detailed concrete plans to purchase semi-automatic rifles, describing the type of rifle, from where they intend to and/or have attempted to purchase it, and the fact that they cannot do so because NYS FFLs will not sell a semi-automatic rifle to them unless they have been issued a NYS semi-automatic rifle license.

     Plaintiffs also detailed concrete plans to engage in conduct that subjects them to arrest and incarceration through the NYSP's enforcement of Penal Law sections 265.65 and 265.66. Superintendent Nigrelli has publicly announced his "zero-tolerance" enforcement of New York State's firearm laws, as detailed in the Complaint.

     The State's view that the statute only applies to purchases or the "tak[ing] possession" of a semiautomatic rifle incident to a "transfer of ownership" (and cites to the *licensing* statute), the plain text of the statutes dictates otherwise. The plain text of criminal statutes is to be given its ordinary meaning. *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000) citing, *United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir.1994). A person is guilty of section 265.65 when he "purchases ***or takes possession of*** a semiautomatic rifle" without a license. A person is guilty of section 265.66 when he "sells, ***exchanges, gives or disposes of*** a semiautomatic rifle to another person" who does not possess a license to "purchase or ***take possession of***" a semiautomatic rifle.

The Legislative History reveals the purpose of Senate Bill 9458 (the "Bill") was to "establish a permit to ***purchase or take possession of*** semiautomatic rifles without affecting currently-owned semiautomatic rifles." No part of the statute or legislative purpose limits the application of criminal penalties to "ownership" nor is there a temporal limitation. The Bill was created to apply the same licensing requirements, penalties, and restrictions on semi-automatic rifles that exist for handguns. So, in the same way that an unlicensed individual is committing a felony for 'taking possession' of a handgun, an unlicensed individual 'taking possession' of a semiautomatic rifle is also a felony. Had the Legislature intended to limit the criminal exposure to purchases or 'transfers' of ownership, it would have so indicated – but did not. The term "taking possession" is broad and its general meaning encompasses the very conduct engaged in by Plaintiffs – "taking possession" and "giving" rifles, whether temporarily or otherwise, to unlicensed relatives and friends. Nothing in the challenged criminal statutes limits their enforcement to a "sale". To the contrary, they criminalize "merely using" semi-automatic rifles and, given the text its plain and ordinary meaning, allow enforcement against the very conduct engaged in by Plaintiffs unless and until a court enjoins the statutes, a judicial declaration reaches an opposite conclusion, and/or the Legislature passes and amendment. At the very least, by failing to define "take possession", the statute is over broad and unclear and should be stricken.

**Injury Fairly Traceable to and Redressable By Acting Superintendent Nigrelli & Credible Threat**

Plaintiffs' exposure to arrest and incarceration flows from the enforcement of the criminal statutes by NYSP and SCPD. Nigrelli and his officers have a statutory duty to prevent and detect crime and apprehend criminals. NYExec. Law § 223. Nigrelli publicly announced his "zero-tolerance" enforcement of New York State's firearm laws, as detailed in the Complaint. See also, *Antonyuk v. Bruen*, No. 122CV0734GTSCFH, 2022 WL 3999791, at *15 (N.D.N.Y. Aug. 31, 2022) (finding NYSP Superintendent a proper party for lawsuit seeking to enjoin criminal firearm laws). And the Court should be willing to presume that law enforcement will enforce the State's firearm laws, particularly because Superintendent Nigrelli has not disavowed his promise to do so. See, e.g., *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013); see also, *Pacific Capital Bank v. Connecticut*, 542 F.3d 341 (2d Cir. 2008) (holding that the plaintiff established standing to challenge a civil penalty provision despite the state's argument that it never had enforced the statute against anyone and that "it is unknown how the [s]tate will apply that section in any future enforcement action.").

**Eleventh Amendment Is Not Applicable to Suits Seeking Injunctive Relief**

It is well-settled that the Eleventh Amendment does not bar suits against state officials sued in their official capacity for injunctive relief to prevent ongoing violations of federal law. *In re Deposit Ins. Agency*, 482 F.3d 612, 617–18 (2d Cir. 2007). This limited exception to the Eleventh Amendment rests on "the premise ... that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011).

**DSI and Ed Newman Have Standing**

See, *Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 493 (N.D.N.Y. 2020) (finding Dark Storm Industries LLC, "as the ... operator of a gun store, ... has derivative standing to assert the subsidiary right to acquire arms on behalf of [its actual and] potential customers.") quoting, *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677–78 (9th Cir. 2017) ("As with purchasing ammunition and maintaining proficiency in firearms use, the core Second Amendment right to keep and bear arms for self-defense "wouldn't mean much" without the ability to acquire arms); citing, *Drummond v. Twp.*, 361 F. Supp. 3d 466, 480 (W.D. Pa.) ("Plaintiff[s] ..., as would-be operators of a commercial shooting range, have standing to sue on behalf of their potential customers."), aff'd in part, vacated in part on other grounds, remanded sub nom. *Drummond v. Twp. of Robinson*, 784 F. App'x 82 (3d Cir. 2019); cf. *Forty-Second St. Co. v. Koch*, 613 F. Supp. 1416, 1422 (S.D.N.Y. 1985) (rejecting defendants' argument that movie theater companies did not have standing to assert the rights of their customers); see also,

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (Action Target, as a supplier of firing-range facilities, is harmed by the firing-range ban and is also permitted to act as an advocate of the rights of third parties who seek access to its services); *Craig v. Boren*, 429 U.S. 190, 195 (1976) (allowing beer vendor to challenge alcohol regulation based on its patrons' equal-protection rights); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 536 (1925) (allowing private schools to assert parents' rights to direct the education of their children and citing "other cases where injunctions have issued to protect business enterprises against interference with the freedom of patrons or customers"); *Andrews v. State*, 50 Tenn. 165, 178 (1871) ("[t]he right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair.").

Thank you for the Court's consideration in this matter.

Sincerely,

*Amy L. Bellantoni*
Amy L. Bellantoni