

June 26, 2023

**VIA ECF**

Hon. Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

  Re: *McGregor v. Suffolk County, et al.*
    23 Civ. 1130 (GRB)(ARL)

Dear Judge Brown,

  I represent the plaintiffs in the above-referenced matter. I write in opposition to the motion filed today by Giffords Law Center to Prevent Gun Violence, which seeks leave to appear and file an amicus curie brief on behalf of Jaclyn Schildkraut.

  There is no good faith basis for the motion to have been filed in the first instance. The proposed amicus brief is devoid of any information relevant or material to the Court's determination of whether the State has met its burden of proving that the challenged regulations are consistent with the plain text of the Second Amendment. Due to the nature of the information contained therein, the Court's consideration of the amicus brief would be an abuse of its discretion and reliance thereon would conflict with Supreme Court precedent and the plain text of the Second Amendment.

  It is well-established that "public safety" justifications in the context of a court's consideration of regulations implicating Second Amendment rights are patently improper and have been rejected by the Supreme Court on multiple occasions.

  *NYSRPA v. Bruen* abrogated this Circuit's interest balancing, means-end scrutiny tests for Second Amendment challenges where the government's "public safety" justifications are balanced against the preexisting individual right to possess and carry firearms in case of confrontation.[1] *Bruen*, at

---

[1] "*Heller* and *McDonald* expressly rejected the application of any "judge-empowering 'interest-balancing inquiry' that 'asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests.' " *Heller*, 554 U.S. at 634, 128 S.Ct. 2783 (quoting id., at 689–690, 128 S.Ct. 2783 (BREYER, J., dissenting)); see also *McDonald*, 561 U.S. at 790–791, 130 S.Ct. 3020 (plurality opinion) (the Second Amendment does not permit—let alone require—"judges to assess the costs and benefits of firearms restrictions" under means-end scrutiny). We declined to engage in means-end scrutiny because "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634, 128 S.Ct. 2783. We then concluded: "A

2129-30. *Bruen* rejected the dissent's "painstaking" recitation of crime statistics and evidence of firearms crimes "presumably" intended to "justify granting States greater leeway in restricting firearm ownership and use. But, as Members of the Court have already explained, the right to keep and bear arms is not the only constitutional right that has controversial public safety implications." *Bruen*, 142 S.Ct. 2111, 2126 n. 3 (2022) citing, *McDonald v. Chicago*, 561 U.S. 742, 783 (2010) (plurality opinion).

*McDonald* declared the Second Amendment is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," and observed that the "right to keep and bear arms is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose restrictions on law enforcement and on the prosecution of crimes fall into the same category." *McDonald*, at 780, 783 (cleaned up) citing, *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (the exclusionary rule generates substantial social costs including setting the guilty and dangerous free); *United States v. Leon*, 468 U.S. 897, 907 (1984); *Barker v. Wingo*, 407 U.S. 514, 522 (1972) (serious consequences speedy trial violations where "a defendant who may be guilty of a serious crime will go free"); *Miranda v. Arizona*, 384 U.S. 436, 517 (1966) (Harlan, J., dissenting); *id.*, at 542, (White, J., dissenting) (returning an unknown number of cases a killer, a rapist or other criminal will be on the street to repeat his crime"); *Mapp v. Ohio*, 367 U.S. 643, 659 (1961).[2]

It was **patently improper** for counsel to file the instant motion. Because the proposed amicus brief is required to be attached to a motion seeking such leave, counsel knew that the Court would review the substance of the brief in its consideration of whether to grant leave, and intended to place the improper materials before the Court nevertheless.

The role of an amicus curiae - "friend of the court" – is to provide an "objective, neutral, dispassionate" view to assist the court in cases of general public interest. See, e.g., *United States v. Gotti*, 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991) (denying NYCLU leave to file amicus brief).

But the Jaclyn Schildkraut brief declares its purpose is to "explain the important impact that New York's licensing requirement for semiautomatic rifles could have on **preventing gun violence** by providing an opportunity to recognize **mass shooters' pre-attack leakage** and to summarize some of the evidence-based research regarding the potentially predictive nature of such leakage. This research supports licensing requirements for semiautomatic rifles as a **protective measure** to **keep New Yorkers safer**" [Br. at p. 2] (emphasis added) – public safety justifications **affirmatively rejected** by the Supreme Court.

Far from a neutral advisor, Giffords' brief is devoid of relevant or material information, and intended solely as a provocative, emotion-driven rant – the substance of which is precluded by existing controlling law. Not one page of the amicus brief is properly before this Court. Respectfully, the application for leave should be denied.

Very truly yours,

*Amy L. Bellantoni*
Amy L. Bellantoni

---

constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." *Ibid. New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129 (2022).

[2] *McDonald* also noted that the government cited "no case in which we have refrained from holding that a provision of the Bill of Rights is binding on the States on the ground that the right at issue has disputed public safety implications." *Id.*