UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
MICHAEL MCGREGOR, ZACHARY GIAMBALVO,
PAUL FELICE, MATTHEW OLIVIERI, EDWARD
NEWMAN, and DARK STORM INDUSTRIES, LLC,

                    Plaintiffs,                 23 Civ. 1130 (GRB) (ARL)

    -against-

                                          **NOTICE OF APPEAL**

SUFFOLK COUNTY, New York,
Police Commissioner RODNEY HARRISON,
in his Official Capacity, and Acting Superintendent
STEVEN NIGRELLI, in his Official Capacity,

                    Defendants.
--------------------------------------------------------------------x

PLEASE TAKE NOTICE that the plaintiffs, MICHAEL MCGREGOR, ZACHARY

GIAMBALVO, PAUL FELICE, MATTHEW OLIVIERI, EDWARD NEWMAN, and DARK

STORM INDUSTRIES, LLC, hereby appeal to the United States Court of Appeals for the Second

Circuit from the attached Mamorandum and Order dated September 7, 2023 of the Hon. Gary R.

Brown denying Plaintiffs' motion for a Preliminary Injunction, and each and every part thereof

that was and is contrary to and/or prejudiced the plaintiffs' rights, claims, and interests.

Dated: September 18, 2023
      Scarsdale, New York

                             THE BELLANTONI LAW FIRM, PLLC
                             *Attorneys for Plaintiffs*

                        _____/s/_____
                             Amy L. Bellantoni (AB3061)
                             2 Overhill Road, Suite 400
                             Scarsdale, New York 10583
                             abell@bellantoni-law.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MICHAEL MCGREGOR, ZACHARY GIAMBALVO,
PAUL FELICE, MATTHEW OLIVIERI, EDWARD
NEWMAN, and DARK STORM INDUSTRIES, LLC,

                                   Plaintiffs,


          -against-



SUFFOLK COUNTY, New York, Police Commissioner
RODNEY HARRISON, in his Official Capacity, and
Acting Superintendent STEVEN NIGRELLI, in his
Official Capacity,

                                   Defendants.
-------------------------------------------------------------X

FILED
CLERK

2:33 pm, Sep 07, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM
AND ORDER**

Civil Action
No. 23-1130 (GRB) (ARL)

**GARY R. BROWN, United States District Judge**:

In this matter filed pursuant to 42 U.S.C. § 1983, plaintiffs Michael McGregor, Zachary

Giambalvo, Paul Felice, Matthew Olivieri, Edward Newman, and Dark Storm Industries, LLC

(collectively "plaintiffs") seek, *inter alia*, a declaration that recently enacted statutory

amendments, found in New York Senate Bill 9458 (the "Rifle Bill"), are unconstitutional under

the Second and Fourteenth Amendments.  To that end, plaintiffs have filed the present application

for a preliminary and permanent injunction seeking to enjoin New York State and Suffolk County

officials from enforcing the Rifle Bill.  Though presenting novel and serious questions under state

law and the Second Amendment, plaintiffs have failed to establish irreparable harm, and thus, their

application must be DENIED.

*Procedural History*

Plaintiffs commenced this action on February 10, 2023, with the filing of a "Complaint for

Declaratory and Injunctive Relief."  Docket Entry ("DE") 1.  A week later, plaintiffs filed the

instant motion for a preliminary and permanent injunction.  DE 6.  On February 21, 2023, the Court set a briefing schedule for plaintiffs' application, and the parties filed plaintiffs' moving submission, defendants' opposition, plaintiffs' reply thereto, and all accompanying exhibits and declarations, including several amicus briefs.  The parties have agreed to await a decision on the instant motion before setting a briefing schedule for any anticipated motion to dismiss.  DE 22.

*Brief Factual Background*

*The Rifle Bill*

On June 6, 2022, New York State enacted the Rifle Bill as "part of a comprehensive ten-bill legislative package that was aimed at closing critical gun law loopholes exposed in the tragic shootings in Buffalo and Uvalde."  DE 21 at 8 (citations omitted).  In essence, the Rifle Bill raises the minimum age to purchase semiautomatic rifles to twenty-one years old and requires a license for such purchases after September 4, 2022.  N.Y. PENAL LAW § 400.00(1), (2).  Notably, individuals who lawfully owned a semiautomatic rifle prior to September 4th are not required to obtain a license for continued ownership, even if under the age of twenty-one.  *See id.*; DE 21-2 at 6.  Nor does the Rifle Bill require a license for purchasing other types of rifles, such as lever-action, pump-action, or bolt-action rifles.  *See generally* N.Y. PENAL LAW § 400.00.

The Rifle Bill also contains several enforcement provisions.  Specifically, New York Penal Law § 265.65 and § 265.66 criminalize the transfer of ownership of a semiautomatic rifle to an individual who does not possess the necessary license.  Critically, however, the Rifle Bill does not criminalize the mere possession of a semiautomatic rifle where no such transfer of ownership has occurred.  *See* N.Y. PENAL LAW §§ 265.65–.66, 400.00(2); DE 21 at 10 (confirming that violations only arise when transfer of *ownership* occurs, not mere possession); DE 21-2 at 6 ("A Semi-Automatic Rifle License is required to *purchase or take ownership* of a semi-automatic rifle on or

2

after September 4, 2022.") (emphasis added).  In other words, the Rifle Bill does not criminalize instances of temporary possession, such as using another individual's semiautomatic rifle at a gun range despite lacking a semiautomatic rifle license.  *See* DE 21 at 18 ("The statute, therefore, simply does not prohibit one from temporarily using a semiautomatic rifle that remains legally owned by another person, and no Plaintiff has alleged that their use or possession of another person's rifle at the gun range constitutes a change in legal ownership of that weapon.").

To obtain a semiautomatic rifle license, New York residents must apply directly to their local licensing officer, who shall either issue a new distinct license or add a license endorsement to an individual's existing firearm license, generally a pistol license.  *See* N.Y. PENAL LAW § 400.00(3); DE 21-2 at 6.  In practice, the administrative shortcut of adding a rifle endorsement to a pistol license has led to some confusion.[1]  Thus, an individual must obtain a *semiautomatic rifle license* to acquire a semiautomatic rifle.

*Suffolk County's Semiautomatic Rifle License Procedure*

In issuing licenses pursuant to the Rifle Bill, Western Suffolk County[2] utilizes its preexisting pistol licensing scheme.  As such, for a Suffolk County resident to lawfully purchase

---

[1] For example, the New York State Police F.A.Q. provides as follows:

**Q: Can a dealer transfer a semi-automatic rifle to a customer who has a pistol license but not a semi-automatic rifle license?**

A: No, a dealer can only sell a semi-automatic rifle to a customer if that customer possesses a semi-automatic rifle license.  A pistol license alone is not sufficient to allow a transfer of a semi-automatic rifle.

DE 21-3 at 4; *see also* N.Y. PENAL LAW § 400.00(2) (distinguishing semiautomatic rifle and handgun as separate "[t]ypes of licenses").  However, plaintiffs contend that Suffolk County considers pistol licenses alone "good enough to purchase rifles."  *See* DE 6-5 ¶ 16.

[2] Suffolk County has two separate licensing jurisdictions, and applicants are directed to either the Suffolk County Police Commissioner or the Suffolk County Sheriff depending on the town in which they reside.  DE 32-3 at 3.  The instant action involves the rifle licensing procedures of the Suffolk County Police Commissioner, covering the five western towns of Babylon, Islip, Huntington, Smithtown, and Brookhaven.  *See id.*  As such, the discussion herein shall have no bearing on the propriety of any licensing procedures of the Suffolk County Sheriff, covering Eastern Suffolk County.

a semiautomatic rifle, they must first apply for and obtain a pistol license from the Suffolk County Pistol License Bureau ("PLB"). DE 20-1 ¶ 4. Generally, the Suffolk County pistol license process takes anywhere between two and three years. DE 1 ¶ 73. Once an individual obtains a pistol license, they may then purchase a semiautomatic rifle using that license. DE 20-1 ¶ 4. But before taking possession of the rifle, the individual must deliver their receipt, a photograph of the rifle, and its serial number to the PLB, as well as pay a fee. *Id.* The PLB will then amend the individual's pistol license to add an endorsement for the purchased rifle and issue a purchase order, allowing the individual to take possession of the firearm. *Id.* This procedure represents the sole path to obtaining a semiautomatic rifle. *See id.* ¶ 5.

*Plaintiff McGregor*

Plaintiff Michael McGregor is a Suffolk County resident and lawful firearm owner. DE 6-5 ¶¶ 3, 5. McGregor has a Suffolk County-issued pistol license and owns several semiautomatic rifles, which appear to have been acquired before the enactment of the Rifle Bill. *See id.* ¶¶ 5, 18. After the Rifle Bill went into effect, McGregor attempted to purchase several more semiautomatic rifles from different firearms dealers but was denied each time because he did not possess a distinct semiautomatic rifle license. *Id.* ¶¶ 6-10. McGregor then contacted the PLB to inquire about the process for receiving a semiautomatic rifle license endorsement on his pistol license. *Id.* ¶ 11. The PLB informed McGregor that his pistol license was sufficient to purchase semiautomatic rifles and endorsement would be added to his license after purchase. *Id.* ¶¶ 12-13. The PLB also told McGregor that they would not issue a separate semiautomatic rifle license or amend his pistol license to reflect semiautomatic rifle authorization because they consider a pistol license alone "good enough to purchase rifles." *Id.* ¶ 16. With that information, McGregor contacted another gun shop to inquire about purchasing a semiautomatic rifle with his pistol license. *Id.* ¶ 15. The

gun store, however, denied McGregor because his pistol license made no mention of a "semiautomatic rifle license." *Id.* Thus, McGregor has been unable to purchase additional semiautomatic rifles. *See id.*

*Plaintiffs Giambalvo, Felice, and Olivieri*

Plaintiffs Zachary Giambalvo, Paul Felice, and Matthew Olivieri are Suffolk County residents seeking to purchase semiautomatic rifles. *See* DE 6-6 ¶ 14; DE 6-7 ¶ 7; DE 6-8 ¶ 8. Giambalvo and Felice presently own semiautomatic rifles, which presumptively were acquired before the enactment of the Rifle Bill, all three believe that their frequent outings at gun ranges, at which they share semiautomatic rifles between friends and family, has been rendered criminal under the Rifle Bill. *See* DE 6-6 ¶¶ 8-10, 13; DE 6-7 ¶¶ 4-6; DE 6-8 ¶¶ 5-7. These plaintiffs, however, do not possess pistol licenses and refuse to submit to Suffolk County's current semiautomatic rifle licensing scheme. *See* DE 6-6 ¶ 17 ("But even if [Suffolk County] had such a process [for semiautomatic rifle licenses], I object to having to apply for and obtain a discretionary license . . . ."); DE 6-7 ¶ 8 ("I do not have, nor do I intend to apply for, a discretionary Rifle License."); DE 6-8 ¶ 10 ("I should not have to seek and obtain a discretionary license to exercise a presumptively guaranteed right.").

*Plaintiffs Newman and Dark Storm Industries, LLC*

Plaintiff Edward Newman is the owner and operator of plaintiff Dark Storm Industries, LLC ("Dark Storm" or "DSI"), the largest manufacturer of semiautomatic rifles in New York State. DE 6-9 ¶¶ 3-5. As a result of the Rifle Bill, Dark Storm claims to be prohibited from selling any semiautomatic rifles to individuals without a semiautomatic rifle license. *Id.* ¶ 8. And Dark Storm avers that it is unable to sell semiautomatic rifles to any Suffolk County residents because Suffolk County "has no process for residents to apply for or obtain a Rifle License." *Id.* ¶ 11. In

sum, these plaintiffs complain only of economic harm arising from the contention that current and

potential customers are unable to purchase semiautomatic rifles from them.  *See id.* ¶ 17.

### Discussion

*Standard for the Granting of a Preliminary Injunction*

It is axiomatic that a preliminary injunction represents an extraordinary exercise of a

court's authority and thus requires an exacting showing.  The Second Circuit recently reiterated

the standard of review for a motion for preliminary relief in the face of allegations that government

regulation impinged on constitutional rights:

> Issuance of a preliminary injunction is an "extraordinary and drastic remedy" that
> is "never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90, 128 S. Ct.
> 2207, 171 L.Ed.2d 1 (2008) (quoting 11A C. Wright, A. Miller, & M. Kane,
> *Federal Practice and Procedure* § 2948, at 129 (2d ed. 1995)).  Preliminary
> injunctive relief "should not be routinely granted."  *Hanson Tr. PLC v. SCM Corp.*,
> 774 F.2d 47, 60 (2d Cir. 1985) (quoting *Medical Soc. of State of N.Y. v. Toia*, 560
> F.2d 535, 537 (2d Cir. 1977)).  When deciding whether to issue a preliminary
> injunction, courts "should pay particular regard for the public consequences in
> employing the extraordinary remedy of injunction."  *Winter v. Nat. Res. Def.
> Council, I*nc., 555 U.S. 7, 24, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008).

> To obtain a preliminary injunction that "will affect government action taken in the
> public interest pursuant to a statute or regulatory scheme, the moving party must
> demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success
> on the merits, and (3) public interest weighing in favor of granting the injunction."
> *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020) (internal
> quotation marks omitted).  The movant must also show that the balance of equities
> supports the issuance of an injunction.  *See Yang v. Kosinski*, 960 F.3d 119, 127 (2d
> Cir. 2020).

*We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 279–80 (2d Cir. 2021) (denying preliminary

relief to plaintiffs claiming religious challenge to COVID-19 vaccine mandate); *see also*

*Giambalvo v. Suffolk Cnty., New York*, No. CV 22-4778 (GRB)(ST), 2023 WL 2050803, at *9

(E.D.N.Y. Feb. 14, 2023) (denying preliminary relief in a similar action concerning certain

recently-enacted pistol license provisions).

Additionally, plaintiffs face a heightened standard since they seek an injunction that provides them "substantially all the relief they seek in the litigation, and that cannot be meaningfully undone in the event that the enjoined party prevails at trial on the merits," as well as a "so-called 'mandatory injunction' – that is, an injunction that alters the status quo, which usually is done by commanding some positive act."  *See JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023) (*purgandum*[3]); *see also Giambalvo*, 2023 WL 2050803, at *4 (applying heightened standard to plaintiffs seeking to enjoin enforcement of laws).  This heightened standard requires the plaintiffs to make a "strong showing of irreparable harm."  *JTH Tax*, 62 F.4th at 667 (citing *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (*purgandum*)).  Furthermore, where, as here, plaintiffs are bringing a facial challenge to the Rifle Bill, they must also establish that "no set of circumstances exists under which the [Rifle Bill] would be valid."  *See United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

*Standing*

The Court will assume that, at a minimum, plaintiff McGregor has standing to challenge the Rifle Bill.  Indeed, McGregor is the only plaintiff who has complied with the local licensing system of Suffolk County, attempted to purchase a semiautomatic rifle, and was denied.  *See* DE 6-5 ¶¶ 1-4.  Though the issue of standing as to the remaining plaintiffs remains dubious,[4] the Court

---

[3] *See Farmers Property and Casualty Insur. Co.  v. Fallon, et al.*, No. 21-CV-6022 (GRB)(ARL), 2023 WL 4975977, at *3 n.6 (E.D.N.Y. Aug. 3, 2023) (discussing use of "*purgandum*" to indicate the removal of superfluous marks for the ease of reading).

[4] Plaintiffs Giambalvo, Felice, and Olivieri have failed to "demonstrate that they have complied with the requisites of [Suffolk County's rifle licensing] system" and thus, have questionable standing at this juncture.  *See Giambalvo*, 2023 WL 2050803, at *4 ("As the Second Circuit has held, a plaintiff who "failed to apply for a gun license in New York [ ] lacks standing to challenge the licensing laws of the state" (quoting *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012)).  And plaintiffs Newman and Dark Storm's standing rests on even shakier ground since they attempt to join in the application for preliminary relief based on economic loss which is "typically compensable with money damages."  *Id.* (quoting *We The Patriots USA*, 17 F.4th at 294); *see also Gazzola v. Hochul*, No. 22-CV-1134 (BKS)(DJS), 2022 WL 17485810, at *14 (N.D.N.Y. Dec. 7, 2022) (holding that individuals or businesses engaging

examines the merits based upon McGregor's standing.  *See Kwong v. Bloomberg*, 723 F.3d 160, 162 n.4 (2d Cir. 2013) (declining to address whether an organization had standing after concluding that at least one individual plaintiff had standing); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263–64 (1977) (same).

McGregor's standing, however, is limited and does not extend to challenges made to the alleged "subjective criteria" aspect of the Rifle Bill.  Though raising an interesting question of whether, as part of a "shall-issue" licensing scheme, New York can require an individual to establish that they possess the "essential character, temperament and judgement necessary to be entrusted with a weapon," as set forth in New York Penal Law § 400.00(1)(b), McGregor cannot assert that he has been harmed by this requirement as he already possess a license.  *See Robinson v. Sessions*, 260 F. Supp. 3d 264, 271 (W.D.N.Y. 2017), *aff'd*, 721 F. App'x 20 (2d Cir. 2018) (holding that plaintiffs lacked standing to challenge NICS background checks for firearm transfers when they failed to establish any injury resulting from the checks).

*Irreparable Harm*

Plaintiffs offer three bases for establishing the necessary element of irreparable harm: (1) the imminent threat of arrest and prosecution for using another individual's semiautomatic rifle at a gun range without a license under §§ 265.65 and 265.66,[5] (2) deprivation of their Second Amendment rights under the Rifle Bill's licensing requirement; and (3) deprivation of their Second Amendment rights under Suffolk County's current semiautomatic rifle licensing scheme.

As discussed above, plaintiffs must make a "strong showing of irreparable harm."  *JTH Tax*, 62 F.4th at 672.  Indeed, "[a] showing of irreparable harm is 'the single most important

---

in the commercial sale of firearms are not entitled to the "individual right secured by the Second Amendment").

[5] Though raised primarily as an argument for Article III standing, plaintiffs also appear to allege that this threat may constitute irreparable harm, and thus, for the avoidance of doubt, warrants discussion.  *See* DE 6-10 at 23-26.

prerequisite for the issuance of a preliminary injunction.'" *Id.* (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)).  To satisfy their burden, "[p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted)).  As the Second Circuit explained,

> Though impairment of [constitutional] rights can undoubtedly constitute irreparable injury, see *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976) (plurality opinion), we think it often will be more appropriate to determine irreparable injury by considering what adverse factual consequences the plaintiff apprehends if an injunction is not issued, and then considering whether the infliction of those consequences is likely to violate any of the plaintiff's rights.

*Time Warner Cable of New York City v. Bloomberg L.P.*, 118 F.3d 917, 924 (2d Cir. 1997).

Upon considering the adverse consequences the plaintiffs may suffer if an injunction is not issued and whether those consequences create a constitutional injury warranting an injunction, the Court finds that plaintiffs have failed make a showing of irreparable harm.[6]

*Arrest and Prosecution under §§ 265.65 and 265.66*

Plaintiffs argue that they face an "imminent threat of enforcement by [the Suffolk County Police Department and New York State Police] for violating the criminal provisions of the Rifle Bill."  DE 6-10 at 25.  Specifically, plaintiffs aver that their conduct of going to a gun range and

---

[6] While plaintiffs' arguments for irreparable harm fail, their inexplicable delay in waiting over seven months after the Rifle Bill's enactment to bring suit is equally sufficient to dispose of their present application.  *See Pet Life, LLC v. Kas Pet, LLC, et al.*, No. 23-CV-4882 (GRB)(SIL) (E.D.N.Y. Sept. 1, 2023) ("If defendants' use of [plaintiff's trademark] represented the existential threat plaintiff now describes, its counsel would have been inspired to come to court sooner."); *Christmas House USA, Inc. v. Christmasland Experience LLC*, 2022 WL 17852025, at *2 (GRB) (E.D.N.Y. Dec. 22, 2022) (finding that the delay of just over a month, in a seasonal business, supported denial of preliminary injunction); *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144–45 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction").

carrying, possession, and shooting their friends' or family members' semiautomatic rifles without

a license violates New York Penal Law §§ 265.65 and 265.66.  *Id.*  This argument, however, proves

meritless.  The relevant provisions are as follows:

> A person is guilty of criminal purchase of a semiautomatic rifle when he or she purchases or takes possession of a semiautomatic rifle and does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter.

N.Y. PENAL LAW § 265.65.

> A person is guilty of criminal sale of a semiautomatic rifle when, knowing or having reason to know it is a semiautomatic rifle, he or she sells, exchanges, gives or disposes of a semiautomatic rifle to another person and such other person does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter.

*Id.* § 265.66.

While plaintiffs spotlight the statute's reference to taking "possession," their reading stops

there, critically overlooking key language found just several words later.[7]  Namely, both sections

expressly limit when taking possession of a semiautomatic rifle becomes criminal, referring to

situations "as provided in subdivision two of section 400.00 of this chapter."  *Id.* §§ 265.65–.66.

Indeed, § 400.00(2) limits the need of a license for situations only when "to purchase or take

possession of such a semiautomatic rifle *when such transfer of ownership occurs*."  Thus, the

relevant provisions unequivocally state that a license is only required when a person is transferring

ownership of a semiautomatic rifle; the mere use of another person's semiautomatic rifle at a gun

range does not violate the law.[8]  Furthermore, defendant Superintendent Nigrelli takes the same

---

[7] Plaintiffs cannot create their own injury based on a cherry-picked interpretation of the law.  *See Cherry-pick*, Oxford English Dictionary (July 2023), https://www.oed.com/dictionary/cherry-pick_v?tab=meaning_and_use#11892064 ("To choose selectively (the most beneficial or profitable items, opportunities, etc.) from what is available."); *Food & Drug Admin. v. Am. Coll. of Obstetricians & Gynecologists*, 141 S. Ct. 578, 584 (2021) (Sotomayor, J., dissenting from the grant of application for stay) ("Reading the [plaintiff's] cherry-picked data is no more informative than reading tea leaves.").
[8] Curiously, plaintiffs, in arguing a separate point, appear to concede that "[n]o part of sections 265.65 and 265.66 criminalizes the mere possession of a semiautomatic rifle."  DE 32 at 9.

10

position, agreeing that the Rifle Bill "simply does not prohibit one from temporarily using a semiautomatic rifle that remains legally owned by another person." DE 21 at 18; *see also* DE 21-2 at 6 ("A Semi-Automatic Rifle License is required to purchase or take ownership of a semi-automatic rifle on or after September 4, 2022.").

Therefore, plaintiffs' concern of violating these sections when engaging in entirely lawful conduct is erroneous, and their application must be denied on this issue.

*Licensing of Semiautomatic Rifles under the Rifle Bill*

McGregor argues that he suffers a concrete and actual invasion of his rights under the Second Amendment by being required to obtain a license to purchase a semiautomatic rifle. However, it can be hardly be the case that McGregor—an individual who already owns semiautomatic rifles and has the freedom to purchase pistols ("the quintessential self-defense weapon"[9]), shotguns, lever-action rifles, pump-action rifles, bolt-action rifles, and all *other* types of lawful firearms—has been deprived of his Second Amendment right to keep and bear arms when simply required to obtain a license for *future* semiautomatic rifle purchases. In other words, McGregor has sufficient arms available to him that are suitable and commonly used for protection in the home or for hunting, allowing him to continue to exercise his fundamental rights under the Second Amendment. *See Heller v. D.C.*, 670 F.3d 1244, 1262 (D.C. Cir. 2011) ("*Heller II*") ("Nor does the ban on certain semi-automatic rifles prevent a person from keeping a suitable and commonly used weapon for protection in the home or for hunting . . . ."). To be sure, it is difficult to imagine a scenario where the *absolute prohibition* of a limited subset of arms fails to create a sufficient constitutional injury but the mere *licensing requirement* of another limited subset of arms does. *Cf. New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 260 (2d Cir.

---

[9] *D.C. v. Heller*, 554 U.S. 570, 629 (2008).

2015) (upholding state law prohibition of "assault rifles"); *Nat'l Ass'n for Gun Rts. v. Lamont*, No. CV 3:22-1118 (JBA), 2023 WL 4975979, at \*33 (D. Conn. Aug. 3, 2023) (same); *Heller II*, 670 F.3d at 1262 (same).

Therefore, while McGregor's Second Amendment rights may be implicated under the Rifle Bill, the consequences McGregor may suffer absent an injunction does not create a constitutional injury warranting the extraordinary and drastic remedy sought.  As such, plaintiffs' application must be denied.

### *Suffolk County's Current Semiautomatic Rifle Licensing Scheme*

McGregor contends that Suffolk County's current semiautomatic rifle licensing scheme is no licensing scheme at all.[10]  In sum and substance, McGregor argues that (1) Suffolk County does not have a distinct licensing scheme for semiautomatic rifles and merely utilizes their preexisting pistol licensing procedure, which regulates an entirely different class of firearm historically subjected to far more stringent regulations than rifles, and subjects applicants to unduly burdensome wait periods; (2) even if an individual obtains a pistol license, Suffolk County refuses to add a semiautomatic rifle endorsement on the license, which is necessary for the purchase of a semiautomatic rifle; (3) even if firearms dealers accept an individual's pistol license alone, as advised by Suffolk County, purchasers will be subject to criminal prosecution because Suffolk County will not add an semiautomatic rifle endorsement until *after* the rifle is already purchased,

---

[10] In this matter involving dozens of filings, consisting of hundreds of pages of documents, and even several amicus briefs, the Court notes the paltry filings on behalf of defendants Suffolk County and Commissioner Harrison. Specifically, in defending the legality and constitutionality of its current rifle licensing scheme, these defendants have contributed an astonishingly sparse nine-sentence declaration accompanying a two-page letter.  *See* DE 20; DE 20-1. And some of the arguments raised therein possibly border on the disingenuous.  *Compare* DE 20 at 1-2 ("A rifle can easily, quickly, and inexpensively be added to an existing pistol license."), *with* DE 1 at 14 (plaintiffs alleging that individuals must wait up to three years to obtain a pistol license in Suffolk County), *and Giambalvo*, 2023 WL 2050803, at \*1 (plaintiffs challenging Suffolk County's alleged exorbitant delays in issuing pistol licenses).  To be sure, "[s]hould this litigative morass continue, this lurking disingenuity will be fair game for exploration."  *See Pet Life, LLC v. Kas Pet, LLC, et al.*, No. 23-CV-4882 (GRB)(SIL) (E.D.N.Y. Sept. 1, 2023).  Counsel is cautioned that such bare submissions are inconsistent with the spirit and letter of the rules of this Court.

thereby requiring individuals to purchase semiautomatic rifles without a semiautomatic rifle license; and (4) Suffolk County utilizes improper subjective criteria in its "shall-issue" licensing application process.

But while these arguments raise some concern,[11] since McGregor has failed to make a strong showing of irreparable harm based on the licensing requirement itself, he cannot establish such harm based on Suffolk County's implementation thereof.  As such, plaintiffs' motion for injunctive relief fails.

### *Conclusion*

Based on the foregoing, plaintiffs have failed to meet the exacting standard for the issuance of a preliminary injunction and their application is DENIED.  But before the filing of any anticipated dispositive motion, counsel for plaintiffs, Suffolk County, and New York State are DIRECTED to meet and confer with each other and their clients regarding the issues raised herein, including the propriety of Suffolk County's implementation of the Rifle Bill.  Counsel shall submit a joint status report within ten days of this Order.

**SO ORDERED.**

Dated: September 7, 2023
     Central Islip, New York

              /s/ Gary R. Brown
              Gary R. Brown
              United States District Judge

---

[11] Notably, defendant Superintendent Nigrelli has declined to take a position on the legality of Suffolk County's current rifle licensing scheme.  DE 21 at 8 n.1 ("The Superintendent has no knowledge of, or control over, Suffolk County's Procedures, and takes no position as to whether or not those procedures comply with state and/or federal law."); *but see* DE 21-3 at 4 (New York State Police stating that "[a] pistol license alone is not sufficient to allow a transfer of a semi-automatic rifle.").