UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
MICHAEL MCGREGOR, ZACHARY GIAMBALVO,
PAUL FELICE, MATTHEW OLIVIERI, EDWARD
NEWMAN, and DARK STORM INDUSTRIES, LLC,

                         Plaintiffs,                    23 Civ. 01130 (GRB)(ARL)

    -against-

                                                 **FIRST AMENDED COMPLAINT**

SUFFOLK COUNTY, New York,
Police Commissioner RODNEY HARRISON,
in his Official Capacity and Individually,          (Jury Trial Demanded)\
MICHAEL KOMOROWSKI, Individually,
and Acting Superintendent DOMINICK L. CHIUMENTO,
in his Official Capacity,

                         Defendants.
---------------------------------------------------------------------x

Plaintiffs, MICHAEL MCGREGOR, ZACHARY GIAMBALVO, PAUL FELICE,

MATTHEW OLIVIERI, EDWARD NEWMAN, DARK STORM INDUSTRIES, LLC, and all

similarly situated individuals, for their First Amended Complaint respectfully state:

## NATURE OF THE ACTION

1.      This is an action for, *inter alia*, declaratory and injunctive relief, presumed nominal

damages, compensatory damages, punitive damages, and statutory attorney's fees and costs, for

the harms caused to Plaintiffs proximately resulting from (i) Defendants' enforcement of Senate

Bill 9458 (the "Rifle Bill"), and (ii) the enforcement of licensing policies and procedures in Suffolk

County, all of which have caused and continue to cause the deprivation of rights protected by the

Second Amendment.

2.      New York State's enactment of Senate Bill 9458 (the "Rifle Bill") requires ordinary

people apply for and obtain a discretionary and subjective "may issue" license to purchase, take

possession of, give, exchange, sell, and/or dispose of a semiautomatic rifle, and punishes non-

compliance with arrest, felony charges, incarceration, and other criminal and civil penalties. [See, Senate Bill 9458 Annexed as Exhibit 1].

3.      The Rifle Bill prevents ordinary people from taking possession of, transferring, and purchasing semiautomatic rifles and prevents Federal Firearms Licensees (gun stores) from selling semiautomatic rifles to individuals who have passed a federal NICS[1] background check but do not hold a license to purchase or receive semiautomatic rifles.

4.      The Rifle Bill is unquestionably offensive to the text, tradition, and history of the Second Amendment and must be enjoined. Under the *Bruen* test, there is no historical tradition of requiring that the People seek and obtain permission from the government before exercising the pre-existing right to bear Arms – particularly long guns.

5.      Plaintiffs are entitled to a judicial declaration that the Rifle Bill violates the Second Amendment, applied to the states through the Fourteenth Amendment.

6.      Plaintiffs are also entitled to a permanent injunction against Suffolk County, New York, and Suffolk County Police Commissioner Rodney Harrison, Acting Superintendent of the New York State Police Dominick L. Chiumento, and all successors, and their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with such defendants, who receive actual notice thereof from implementing and enforcing the Rifle Bill.

## JURISDICTION AND VENUE

7.      Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances,

---

[1] National Instant Criminal Background Check System.

regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution.  This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, 42 U.S.C. §§ 1983 and 1988. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

8.     At all times relevant herein, Plaintiffs, MICHAEL MCGREGOR, ZACHARY GIAMBALVO, PAUL FELICE, and MATTHEW OLIVIERI (the "Individual Plaintiffs") are all natural persons and residents of those portions of Suffolk County, New York subject to the jurisdiction of the Suffolk County Police Commissioner for purposes of licenses issued under Penal Law § 400.00, *et seq.*

9.     At all times relevant herein, the "Individual Plaintiffs were required to apply in their county of residence for any license issued under Penal Law § 400.00, *et seq*.

10.     Plaintiff DARK STORM INDUSTRIES, LLC ('DSI") is a limited liability corporation formed and existing under the laws of the State of New York.

11 .     DSI lawfully engages in, *inter alia,* the manufacture and sale of semiautomatic rifles in the State of New York, and has a principal place of business in Suffolk County, New York.

12 .     EDWARD NEWMAN is the lawful owner and operator of DSI.

13     Defendant, SUFFOLK COUNTY, New York (hereinafter the "County"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

14.     Defendant, RODNEY HARRISON, (hereinafter "Commissioner Harrison" or "SCPD"), is the police commissioner of Suffolk County and is sued in his official capacity and individual capacity.

15.     As Suffolk County police commissioner, Harrison is the statutory pistol "Licensing Officer" as defined by Penal Law § 265.00(10) having jurisdiction to, among other duties, issue licenses under Penal Law § 400.00 to Suffolk County residents, including Plaintiffs, and to make and enforce the policies and procedures of the SCPD Licensing Bureau.

16.     As the police commissioner, Harrison is duty-bound to enforce all provisions of the New York State Penal Law, as are his officers.

17.     Commissioner Harrison is properly named herein as the individual responsible for ensuring that the requested preliminary and permanent injunctive relief is carried out. *Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir. 1996).

18.     Defendant, MICHAEL KOMOROWSKI, (hereinafter "Komorowski"), the lieutenant of the Suffolk County Pistol Licensing Bureau, is sued in his individual capacity.

19.     Defendant Komorowski is personally responsible for the day-to-day operations, policies, and procedures of the Licensing Bureau.

20.     Komorowski, individually and in conjunction with Harrison, created and implemented the licensing policies complained of herein.

21.     Defendant DOMINICK L. CHIUMENTO is the Acting Superintendent of the New York State Police (NYSP) whose principal place of business is in Albany, New York. Superintendent Chiumento is sued in his official capacity only.

22.     As the Acting Superintendent of the New York State Police, Chiumento is duty-bound to enforce all provisions of the New York State Penal Law, as are his troopers and investigators.

23.     Acting Superintendent Chiumento is properly named herein as the individual responsible for ensuring that the requested preliminary and permanent injunctive relief is carried out. *Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir. 1996).

## LEGAL FRAMEWORK

### I. The Second Amendment

24.     The Second Amendment to the United States Constitution provides: "A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." The Second Amendment is fully applicable to the states through the Fourteenth Amendment.  See, *McDonald v. Chicago*, 561 U.S. 742 (2010).

25.     The rights protected by the Second Amendment – the right to possess and carry weapons - are "pre-existing" and "individual rights". They are not "granted" by the government.

> "Putting all of these textual elements together, we find that they **guarantee the individual right to possess and carry weapons in case of confrontation**. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the **Second Amendment, like the First and Fourth Amendments, codified a pre-existing right**. The **very text** of the Second Amendment **implicitly recognizes the pre-existence of the right and declares only that it "shall not be infringed**." As we said in *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L.Ed. 588 (1876), "[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The second amendment declares that it shall not be infringed ....

*District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis added).

26.     Plaintiffs' right to possess and carry weapons for self-defense is presumptively guaranteed. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126, 2135 (2022) ("In keeping with *Heller*, we <u>hold</u> that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."); see also, *Caetano v.*

*Massachusetts,* 577 U.S. __ (2016) (weapons in common use for self-defense are protected within the scope of the Second Amendment).

27.     Under the *Bruen* test:

> "When the regulated conduct falls within the plain text of the Second Amendment, the Constitution ***presumptively protects*** that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.
>
> Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, at 2126 (emphasis added).

28.     Semiautomatic rifles are weapons in common use for self-defense in this country and, as such, are protected within the scope of the Second Amendment, which protects those weapons "typically possessed by law-abiding citizens for lawful purposes." *D.C. v. Heller*, 544 U.S. 570, 625 (2008); *Caetano v. Massachusetts*, 577 U.S. 411, 412 (2016) (stun guns); *Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) (Thomas, J. on denial of cert) ("The overwhelming majority of citizens who own and use such rifles do so for lawful purposes, including self-defense and target shooting. Under our precedents, that is all that is needed for citizens to have a right under the Second Amendment to keep such weapons.") (cleaned up) citing, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767-768 (2010); *Heller*, at 628–629.

29.     Plaintiffs' conduct – purchasing, taking possession of, giving, exchanging, and selling  semiautomatic rifles – is conduct that falls within the plain text of the Second Amendment, and is   presumptively protected thereunder.

30.     Defendants alone have the burden of justifying the provisions of Senate Bill 9458 by demonstrating the regulations are consistent with this Nation's historical traditions of firearm regulation.

31.     Rifle Bill (Senate Bill 9458) inarguably conflicts with this Nation's historical traditions of firearm regulation. Requiring a license to purchase, take possession of give, sell, and/or exchange a rifle is *wildly inconsistent* with this Nation's historical tradition of firearm regulation; long guns have been freely owned, made, purchased, possessed, exchanged, and carried since the mid-1600s.[2] Also repugnant to the Second Amendment is any requirement that the People seek permission from the government to purchase or sell a rifle, or require the public to register the purchase of one's rifle with the government.

32.     Had it been our Nation's history and tradition to require the People to seek and obtain permission from the government before exercising the preexisting right to possess and carry Arms, the very text of the Second Amendment prohibiting any level of *infringement* would have been in vain. Of course, there is no such historical tradition.

33.     Worse yet, subjective licensing schemes that imbue discretion in a government official – like New York's licensing scheme - violate the Second and Fourteenth Amendments.

> "If there be any fixed stars in our constitutional constellation, it is that no official high or petty, shall dictate whether we can exercise our fundamental constitutional rights."

Reply Brief for Petitioners, *New York State Rifle & Pistol Assn. v. Bruen*, 2021 WL 943564 citing, *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943).

### Every Purchase - Rifle, Shotgun, or Handgun – Requires a NICS Check in New York State

34.     Under New York State law, every sale, purchase, and disposal of a handgun, rifle, or shotgun[3] requires the purchaser to first undergo a background check through the National Instant Criminal Background Check System (NICS). NYS General Business Law § 898.

---

[2] https://www.guns.com/news/2017/07/01/guns-of-the-greatest-revolution-ever
[3] Except those conducted "between members of an immediate family", meaning "spouses, domestic partners, children and step-children." NYS GBL § 898.

35.     Under federal law, every FFL must conduct a NICS check before selling or transferring a handgun, rifle or shotgun to an individual.

36.     Under federal law, every individual seeking to purchase a handgun, rifle or shotgun from an FFL must undergo a NICS background check.

**The Rifle Bill - Senate Bill 9458**

37.     Prior to September 4, 2022, ordinary New Yorkers were free to walk into a federally licensed gun store, complete the mandatory ATF 4473 form, subject themselves to a brief background check through the National Instant Criminal Background Check System (NICS) and purchase a semiautomatic rifle.

38.     No government permission was required.

39.     Ordinary New Yorkers with no prohibitors to the possession or purchase of firearms were free to engage in target shooting with family and friends at the gun range or on hunting trips, where it is common to try out, use, share, give, exchange, and take possession of, even if temporarily, each other's rifles - conduct that is part of this Nation's long-held traditions.

40.     The Rifle Bill imposes a discretionary licensing requirement and criminal penalties upon ordinary people, including felony arrest, incarceration, permanent loss of firearm rights, and other criminal and civil penalties for engaging in presumptively protected conduct. [Exhibit 1].

41.     The Rifle Bill corrals semiautomatic rifles into the same 'may issue' discretionary licensing scheme New York employs against handguns – Penal Law § 400.00 - which "vests broad discretion in licensing officers" [*Finley v. Nicandri*, 272 A.D.2d 831, 832 (3d Dept. 2000) (handguns)] to issue, suspend, and revoke the Right (the "Scheme").

42.     The Scheme employs subjective criteria wherein a government employee decides who can and cannot exercise a presumptively protected right by deciding what constitutes the

"character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others"[4], which such government employees have "broad discretion" to determine. Even then, the license "may issue" – or it may not.

43.     Section 400.00 codifies what New York courts have been applying to <u>handguns</u> for decades under the false premise that keeping and bearing firearms is a privilege (not a Right), the Second Amendment applies to the collective militia, and is not applicable to the states.[5]

44.     But until the Rifle Bill, New York never imposed a licensing requirement on long guns.

45.     With the Rifle Bill, semiautomatic rifles – as with handguns – have been demoted from a right to a privilege. *Minervini v. Kelly*, 22 A.D.3d 238, 239 (1st Dept. 2005) (handguns). New York has taken no steps to change its position on handguns since *Bruen* and has only enlarged its web of unconstitutional regulations.

46.     Section 400.00(1)(b) is a discretionary and subjective factor that authorizes denial of protected conduct based on an opinion of who has the 'right' "character", can be "trusted", what constitutes the "essential temperament", and whether the applicant has one.

47.     Subsection (b) also conflicts with the very purpose of the Second Amendment – using a firearm for self-defense, which may necessarily require its use to *specifically* "endanger others."

48.     The Scheme imbues licensing officers with "broad discretion" to suspend, revoke, and refuse to renew individuals found not to pass the 'moral character' test if, at any time, a

---

[4] Penal Law § 400.00(1)(b).
[5] *Peterson v. Kavanagh*, 21 A.D.3d 617, 617–18 (3d Dept. 2005) ("Lastly, we reject petitioner's argument that the Second Amendment confers an individual right on him to keep and bear arms. Absent evidence that possession of the pistol bears some reasonable relationship to the preservation or efficiency of a well-regulated militia, no individual right to possess it is conferred (see *Bach v. Pataki*, 289 F.Supp.2d 217, 224–226 (2003)."

licensee becomes "ineligible to obtain a license" under any of the provisions of § 400.00(1). See, Penal Law § 400.00(11), *Juzumas v. Nassau Cnty., New York*, 33 F.4th 681, 687 (2d Cir. 2022).

49.     But the "very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Bruen*, at 2129 quoting, *Heller*, 554 U.S. at 634. "We then concluded: "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." *Ibid.*

50.     The Rifle Bill subjects weapons in common use – semiautomatic rifles - to the same interest-balancing test *thrice rejected* by the Supreme Court[6] where the government's desire to 'protect the public' somehow always ends up outweighing the individual rights of the People protected by the Second Amendment. See, e.g., *Finley v. Nicandri*, 272 A.D.2d 831, 832, 708 N.Y.S.2d 190, 191 (2000) (citing the state's "substantial and legitimate interest and indeed, a grave responsibility, in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument."); *Waskiewicz v. New York City Police Dep't*, 211 A.D.2d 603, 604 (1st Dept. 1995) (license revoked based on arrest, no resulting conviction).

51.     Under the Scheme, a subjective belief that a licensee "exercise[d] [] poor judgment in the handling of a weapon is a sufficient ground for revocation" of a license. *Brookman v. Dahaher*, 234 A.D.2d 615 (3d Dept. 1996) (upholding revocation because licensee "exhibited disregard for the proper use of a handgun" by wearing his .38 caliber pistol holstered on his person

---

[6] See, *Heller*, at *McDonald,* and *Bruen*

"in plain view of adults and children in his residential neighborhood" while performing yardwork "in clear violation of the hunting and target practice restrictions on his permit.").[7]

52.     A discretionary revocation can take place at will whenever a licensee "at any time becom[es] ineligible to obtain a license"[8], even under the subjective beliefs of a licensing officer. A licensee is not entitled to a formal hearing before revocation. *Pacicca v. Allesandro*, 19 A.D.3d 500, 501 (2d Dept. 2005).

53.     And a revocation of a license issued under section 400.00 requires the ***confiscation*** of "any and **all firearms, rifles, or shotguns owned or possessed**" by the licensee. See, § 400.00(11)(c).

54.     New York's discretionary Scheme is just that: a Scheme to arbitrarily and subjectively dispossess individuals of their property and their Second Amendment right to possess, purchase, and carry two of the most popular and commonly owned weapons in America to prevent the ability of the People to be Armed for the purpose for which the Second Amendment was codified.

### *Criminal Penalties Under the Rifle Bill - Penal Law §§ 265.65 and 265.66*

55.     The Rifle Bill imposes criminal penalties for constitutionally protected conduct should an individual refuse or fail to apply for and obtain a Rifle License.

56.     A person is guilty of criminal purchase of a semiautomatic rifle when he purchases or takes possession of a semiautomatic rifle and does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this

---

[7] Prohibiting open carry would never have been regarded as a 'tradition' during the relevant historical time-period set forth in *Heller* and *Bruen*.
[8] Penal Law § 400.00(11)(a).

chapter. Criminal purchase of a semiautomatic rifle is a class A misdemeanor for the first offense and a class E felony for subsequent offenses. Penal Law § 265.65.

57.     A person is guilty of criminal sale of a semiautomatic rifle when, knowing or having reason to know it is a semiautomatic rifle, he sells, exchanges, gives or disposes of a semiautomatic rifle to another person and such other person does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter. Criminal sale of a semiautomatic rifle is a class E felony. Penal Law § 265.66.

58.     Rather than punish criminal acts, Penal Law § 265.65 and 265.66 punish innocent, constitutionally protected conduct engaged in by ordinary individuals, like Plaintiffs, in contravention to this Nation's historical traditions.

59.     The Rifle Bill also subjects semiautomatic rifles to an unconstitutional registration requirement, which requires every semiautomatic rifle to be registered on such license, requires the purchaser to seek permission by way of a "purchase document" before taking possession of the rifle from SCPD every time the owner seeks to add or subtract from their rifle collection, for which there is no historical analogue. Penal Law § 400.00(9).

***The Rifle Bill is Inconsistent with the Plain Text of the Second Amendment***

60.     The Rifle Bill is a contemporary control measure inconsistent with the plain text of the Second Amendment.

61.     And because "[where] later history contradicts what the text says, the text controls"[9] the Rifle Bill must be declared unconstitutional and stricken.

---

[9] *Bruen*, at 2137.

"But when it comes to interpreting the Constitution, not all history is created equal.

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Heller*, 554 U.S. at 634–635, 128 S.Ct. 2783. The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates or postdates either time may not illuminate the scope of the right."

*Bruen*, at 2136.

62. Under the *Bruen* test, if the regulated conduct falls under the plain text of the Second Amendment, which this does, the government has the burden of justifying its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *Bruen*, at 2126.

63. Because there is no historical tradition of government-imposed discretionary licensing and registration requirements, or the imposition of criminal penalties on ordinary people for purchasing, taking possession of, selling, transferring, giving, and/or exchanging rifles, the Rifle Bill is inconsistent with the Nation's historical traditions and must be stricken.

**SUFFOLK COUNTY LICENSING BUREAU POLICIES AND PROCEDURES**

64. The Rifle Bill was enacted on June 6, 2022 and took effect immediately. New York State's Licensing Scheme was therefore amended to identify 3 distinct licenses: (1) gunsmith/dealer in firearms; (2) license to purchase or take possession of a semiautomatic rifle; and (3) pistol/revolver. Penal Law § 400.00(2).

65. As of June 6, 2022, no purchase or sale of a semiautomatic rifle can occur without having first applied for and obtained a license specifically for semiautomatic rifles. Penal Law § 400.00(2).

66.     Soon thereafter, the <u>Sheriff's Office</u> in Suffolk County began placing rifle endorsements on existing handgun licenses by adding the word "RIFL" to the front of the handgun license.

67.     The Nassau County Police Department also promptly added similar language, as did other counties in the State.

68.     But Defendants took no action to comply with the Rifle Bill.

69.     Rather, it became the policy of the Pistol License Bureau that handgun licenses were "good enough" to allow purchase or sell a  semiautomatic rifle, notwithstanding the plain language of Penal Law 400.00(2) requiring a Rifle License. But transfer of ownership cannot occur in the first instance without a Rifle License or rifle language on an existing handgun license.

70.     At least one Plaintiff has personal knowledge of the fact that Harrison and Komorowski, collectively and/or individually, personally created and enforced such policy and practice in the Pistol License Bureau.

71.     There was no administrative confusion. Harrison and Komorowski just did not want to comply. They knew that a handgun license does not allow a licensee to legally transfer or acquire a semiautomatic rifle, nor does it allow a gun store to sell one. The Penal Law specifically requires *something* from the licensing officer stating: "semiautomatic rifle" or words/letters to that effect.

72.     Harrison and Komorowski knew or should have known that a separate Rifle License and/or the addition of language to an existing handgun license was required to be issued by SCPD for Suffolk residents to be able to engage in conduct presumptively protected by the Second Amendment – they just do not care.

73.     Harrison and Komorowski knew or should have known that NYSP guidance on the issue clearly stated that a dealer cannot transfer a semiautomatic rifle to someone who has a handgun license but not a semi-automatic rifle license.[10]

74.     But Harrison and Komorowski are maliciously and deliberately indifferent to Second Amendment rights as detailed herein and elsewhere, a manifestation of a deeply rooted culture in SCPD.

75.     From June 6, 2022 through September 2023, and at the direction of Harrison and Komorowski, the SCPD Pistol License Bureau refused to amend existing handgun licenses to reflect the Rifle endorsement.

76.     Harrison and Komorowski instructed the Pistol License Bureau staff that no handgun license would be amended or otherwise changed to reflect the rifle endorsement.

77.     Harrison and Komorowski refused allow and language to be added to existing handgun licenses identify that the licensee was authorized to transfer and receive semiautomatic rifles.[11]

78.     It was not until September 2023 -- over a year later, and as a result of the commencement of this lawsuit -- that Harrison and Komorowski finally and begrudgingly began to allow the words "SEMI-AUTO" to be placed on the back of existing handgun licenses in the section of the license entitled "Comments." See, Exhibit 2 attached hereto.

---

[10] See, *McGregor v. Suffolk Cnty., New York*, No. CV231130GRBARL, 2023 WL 6521622, at *2 n.1 (E.D.N.Y. Sept. 7, 2023) ("For example, the New York State Police F.A.Q. provides as follows: Q: Can a dealer transfer a semi-automatic rifle to a customer who has a pistol license but not a semi-automatic rifle license? A: No, a dealer can only sell a semi-automatic rifle to a customer if that customer possesses a semi-automatic rifle license. A pistol license alone is not sufficient to allow a transfer of a semi-automatic rifle. DE 21-3 at 4; see also N.Y. Penal Law § 400.00(2) (distinguishing semiautomatic rifle and handgun as separate "[t]ypes of licenses"). However, plaintiffs contend that Suffolk County considers pistol licenses alone "good enough to purchase rifles." See DE 6-5 ¶ 16.

[11] To this date, SCPD still has no process for an unlicensed person who does not want a handgun license to apply for and obtain a Rifle License.

79. Incredulously, during the time period between June 6, 2022 and September 2023, SCPD *always had the capability* to add the words "SEMI-AUTO" to the back of existing handgun licenses.

80. SCPD has been adding language to the back of existing handgun licenses related to, *inter alia*, "employment carry" licenses for years.

81. But when it came to complying with the Rifle Bill, Harrison and Komorowski refused to perform a simple and ministerial duty – typing words onto an existing handgun license.

82. Harrison and Komorowski intentionally refused to place the rifle endorsement on existing handgun licenses.

83. Harrison and Komorowski intentionally and maliciously violated, and were deliberately indifferent to, the Second Amendment rights of Plaintiffs and other handgun licensees who sought the rifle endorsement.

84. Komorowski knowingly misrepresented to Mr. Newman that handgun licenses were sufficient and that no new language or license was required (see, *infra*).

85. That same false information was conveyed to Dr. McGregor when he inquired of the Pistol License Bureau staff (see, *infra*)– preventing his exercise of conduct protected by the plain text of the Second Amendment.

86. Possession of a valid New York State handgun license is not a defense to arrest and prosecution for an offense under Penal Law §§ 265.65 and 265.66, nor does it authorize the transfer or receipt of a semiautomatic rifle.

87. Under the Rifle Bill, federally licensed firearms dealers (gun shops) like Edward Newman and Dark Storm Industries cannot lawfully sell or transfer semiautomatic rifles to anyone

who does not hold a Rifle License issued pursuant to Penal Law § 400.00(2), even to those individuals who have passed a NICS background check.

88.     DSI and Mr. Newman have been prevented and continue to be prevented from selling semiautomatic rifles to customers and potential customers residing in the jurisdiction of SCPD who do not have a handgun license.

89.     SCPD will not issue Rifle Licenses and will only issue handgun licenses; under SCPD policy, any individual seeking to lawfully purchase, receive, or transfer a semiautomatic rifle must apply for a **handgun license**.

90.     The SCPD Licensing Bureau process for obtaining a handgun license takes between **2-3 years**.

91.     Meaning that, even if a handgun license satisfied the requirements under the Rifle Bill, which it does not, an unlicensed individual – like Plaintiff Matthew Olivieri – is prohibited from possessing, receiving, purchasing, selling, giving, or taking possession of semiautomatic rifles until he applies for and obtains a handgun license, which the SCPD takes **2-3 years** to issue.

92.     Under the Rifle Bill, Plaintiffs and all other similarly situated people in Suffolk County are *de facto* banned from purchasing, selling, taking possession of, selling, giving, exchanging, and disposing of semiautomatic rifles.[12]

93.     This Nation has no historical tradition requiring a license or imposing criminal sanctions against ordinary individuals who exercise the presumptively protected right to possess, purchase, give, exchange, receive, sell, and/or carry long guns.

---

[12] Again, possession of a handgun license is not a defense to arrest and prosecution for an offense under Penal Law §§ 265.65 and 265.66; a separate Rifle License is required. See, Penal Law § 400.00(2).

94. Nor is requiring the People to 'register' their firearms, or seek permission from the government before lawfully adding to or removing from one's firearms collection, part of any historical traditions in America.

95. As a direct result of Defendants' enforcement of the Rifle Bill, Plaintiffs are divested of the right to engage in conduct presumptively protected by the Second and Fourteenth Amendments.

96. As a direct result of SCPD's Rifle Policy, Plaintiffs are divested of the right to engage in conduct presumptively protected by the Second and Fourteenth Amendments.

### *Plaintiffs*

97. Each of the individually named Plaintiffs is eligible to possess, purchase, receive, and transfer firearms under state and federal law.

98. No Plaintiff has ever unlawfully used or threatened the use of a firearm.

99. Plaintiffs should not have to seek permission by way of a discretionary license to purchase, take possession of, sell, give, exchange, and/or dispose of semiautomatic rifles.

100. Plaintiffs should not have to register their semiautomatic rifles with the government.

101. DSI and Newman should not be prevented from selling, transferring, purchasing, or giving semiautomatic to their customers and prospective customers who, through a NICS check, are confirmed legally eligible to receive, purchase, and possess firearms.

102. Plaintiffs' regulated conduct falls within the plain text of the Second Amendment and is presumptively protected.

103. Defendants alone have the burden of proving the challenged regulations are consistent with this Nation's historical traditions of firearm regulation.

104.    The challenged regulations are inconsistent with this Nation's historical traditions of firearm regulation.

***Michael McGregor***

105.    Michael McGregor is a resident of Suffolk County and a practicing physician. Dr. McGregor has no prohibitors to the possession of firearms.

106.    Dr. McGregor possesses a valid New York State handgun license, which was issued by Suffolk County.

107.    Shortly after the passage of the Rifle Bill, Dr. McGregor attempted to purchase a Ruger 10/22 semiautomatic rifle at RT Smoke 'N Gun ("RT Smoke"), a federally licensed firearm dealer in Mount Vernon (Westchester County), New York.

108.    Dr. McGregor was unable to purchase the Ruger or any other semiautomatic rifle from RT Smoke because he did not hold a license to purchase or take possession of semiautomatic rifles.

109.    Consistent with the Penal Law, RT Smoke would not sell Dr. McGregor a semiautomatic rifle because he did not have a Rifle License and his handgun license did not contain a rifle endorsement.

110.    Dr. McGregor contracted Karp's Hardware/Long Island Ammo in East Northport, New York (Suffolk County) to inquire about purchasing a semiautomatic rifle.

111.    Like RT Smoke, LI Ammo advised Dr. McGregor that it will not sell a semiautomatic rifle to anyone unless the purchaser has a license to purchase and take possession of semiautomatic rifles, or if their existing  handgun license specifically indicates a semiautomatic rifle endorsement. A handgun license is not sufficient.

112.    Dr. McGregor contacted the SCPD Licensing Bureau about the process for obtaining a semiautomatic Rifle License so that he could apply. He informed the Licensing Bureau that FFLs will not sell him a semiautomatic rifle without a specific license for same. Dr. McGregor also informed Licensing Bureau that NYSP guidance indicates that the semiautomatic rifle endorsement should be available by amending one's NYS handgun license.

113.    The SCPD Licensing Bureau informed Dr. McGregor that they recognize his handgun license as being sufficient, and that no separate rifle license or endorsement was necessary to purchase a semiautomatic rifle.

114.    The Licensing Bureau also informed Dr. McGregor that SCPD will require every semiautomatic rifle purchased to be registered on/added to the handgun license.

115.    The Licensing Bureau acknowledged that licensing officers "upstate" are not registering semiautomatic rifles on the license; Dr. McGregor informed that "even Westchester is not doing that", to which SCPD replied, "but we are. If you buy a semiautomatic rifle, you bring…in the receipt just like you would any handgun and we'll put it on your license."

116.    Dr. McGregor contacted Camp-Site Sport Shop in Huntington Station, New York (Suffolk County) to inquire about purchasing a semiautomatic rifle. Dr. McGregor informed Camp-Site that the SCPD Licensing Bureau said his handgun license was sufficient to purchase a semiautomatic rifle even though it does not say anything about a semiautomatic rifle endorsement.

117.    As with LI Ammo and RT Smoke, Camp-Site informed Dr. McGregor that he could not purchase a semiautomatic rifle with a handgun license.

118.    NYSP guidance indicates that the semiautomatic Rifle License can be issued by virtue of simply amending an existing handgun license to reflect the rifle endorsement.

119.     The SCPD Licensing Bureau informed Dr. McGregor that they will not issue Rifle Licenses or amend handgun licenses to reflect semiautomatic rifle authorization because SCPD considers the handgun license "good enough to purchase rifles" despite the plain language of the Penal Law.

120.     Finally, as a result of instituting this lawsuit, Harrison and Komorowski began adding the rifle language to handgun licenses, and on October 11, 2023 Dr. McGregor was able to obtain the endorsement of his existing handgun license from the SCPD Pistol License Bureau.

121.     Dr. McGregor has not yet purchased his rifle because he objects to registering his semiautomatic rifles with the County and/or the State.

### *Zachary Giambalvo*

122.     Zachary Giambalvo ("Mr. Giambalvo"), is a resident of Suffolk County with no prohibitors to the possession of firearms.

123.     Mr. Giambalvo attempted to purchase a World War II era semi-automatic rifle from an FFL outside of New York and complete the transfer in New York through DSI, but is completely barred from doing so because of Defendants' enforcement of the Rifle Bill.

124.     Mr. Giambalvo cannot obtain a Rifle License from SCPD because there is no process to obtain one.

125.     Mr. Giambalvo applied for a handgun license in 2022 and was informed by the Licensing Bureau that "there is an approximately a 2 year wait before you will hear from an investigator for the in person interview." In August 2022, Giambalvo was informed by "Suzanne" at the SCPD Licensing Bureau, "it's going to take about a year and a half to 2 years to get called for the interview" – a conversation digitally recorded by Giambalvo. [A95; A100].

126.     Mr. Giambalvo is still waiting for his handgun license to be issued.

127.     Now that Harrison and Komorowski have begun adding the rifle language to handgun licenses, SCPD's delay in issuing Mr. Giambalvo's handgun license continues to prevent him from engaging in protected conduct, to wit, purchasing weapons in common use to possess them for self-defense.

128.     It violates Giambalvo's right to possess arms to have to wait for permission to engage in protected activity -- conduct that was entirely legal until arbitrarily criminalized on June 6, 2022.

129.     SCPD and NYSP's enforcement of the Rifle Bill is an absolute bar to Giambalvo's protected conduct.

130.     If DSI/Newman sell the semiautomatic rifle to Giambalvo, they will be subject to criminal and civil penalties, and vice versa.

***Paul Felice***

131.     Paul Felice ("Mr. Felice"), is a resident of Suffolk County with no prohibitors to the possession of firearms.

132.     Mr. Felice lawfully owns long guns, including semi-automatic rifles, at least one of which he purchased from Dark Storm Industries.

133.     In 2022, Mr. Felice attempted to purchase a semi-automatic rifle, a Black Rain Ordnance, which would be transferred to him by Dark Storm Industries after a NICS background check.

134.     Mr. Felice did not have a Rifle License and was, therefore, prohibited from acquiring a semiautomatic rifle because of Defendants' enforcement of criminal penalties for violators of the Rifle Bill.

135. Mr. Felice applied for a handgun license from SCPD on September 5, <u>2022</u> – and he is still waiting for his license to be issued.

136. Mr. Felice was not even called in for an interview with an investigator until September 5, 2023. There is no factual or legal bar to the immediate issuance of a license to Mr. Felice.

137. SCPD's exorbitant licensing delays are preventing Mr. Felice from possessing handguns *and* from purchasing semiautomatic rifles.

138. The Rifle Bill constitutes an absolute bar to Mr. Felice's exercise of conduct protected by the plain text of the Second Amendment – keeping arms – because Penal Law § 265.65 prohibits Mr. Felice from purchasing semiautomatic rifles without a rifle license.

139. If Defendants did not enforce the Rifle Bill, Mr. Felice and Mr. Giambalvo would have been able to acquire semiautomatic rifles from June 6, 2022 to the present and into the future.

***Matthew Olivieri***

140. At all times relevant hereto, Matthew Olivieri ("Mr. Olivieri"), was a resident of Suffolk County. Mr. Olivieri has no prohibitors to the possession of firearms.

141. Mr. Olivieri is a Marine Corps veteran who was assigned to the Infantry and has extensive experience with semiautomatic rifles.

142. In and around Fall 2023, Mr. Olivieri attempted to purchase a New York-compliant AR-15 semiautomatic rifle from Dark Storm but cannot because he does not have a Rifle License.

143. Mr. Olivieri does not hold a New York State handgun license, nor did he apply for one.

144. Mr. Olivieri could not obtain a Rifle License from SCPD because SCPD has no process for an individual to obtain one.

145.     Mr. Olivieri had no intention to apply for a handgun license just to be able to purchase semiautomatic rifles.

146.     In any event, applying for a handgun license from the SCPD takes an average of 2-3 years under SCPD policies – such an application would be futile to Mr. Olivieri's preexisting right to possess semiautomatic rifles *when he so chooses*.

### *Ed Newman and Dark Storm Industries*

147.     Edward Newman ("Mr. Newman") is the owner of Dark Storm Industries (DSI) located in Suffolk County, New York.

148.     Since 2013, DSI has held a federal firearms license as a manufacturer.

145.     DSI's business model encompasses the sale of firearms, ammunition, and related self-defense and sport target shooting products. DSI sells handguns (including revolvers and semi-automatic pistols), rifles (including semi-automatic rifles), and shotguns. DSI is the largest manufacturer of semiautomatic rifles in the State of New York.

149.     After the passage of the Rifle Bill, DSI and Mr. Newman were barred from selling and transferring semiautomatic rifles to its customers and potential customers who did not possess a license that authorized the transfer of semiautomatic rifles pursuant to Penal Law § 400.00(2), whether a "Rifle License" or an existing handgun license with a rifle endorsement.

150.     DSI and Mr. Newman continue to be barred from selling and transferring semiautomatic rifles to its customers and potential customers who do not possess a "Rifle License" or an existing handgun license with a rifle endorsement and, therefore, cannot acquire a semiautomatic rifle for between 2-3 years.

151. Mr. Newman and DSI's conduct is protected by the Second Amendment and there is no historical analogue for enforcing criminal penalties against manufacturers and/or sellers who simply seek to make arms available to other individuals to receive and/or purchase.

152. Such class of individuals includes one or more of the plaintiffs in this action and other ordinary citizens who are not part of this action but also seek access to DSI's market function, to wit, the purchase of semiautomatic rifles and on whose behalf DSI advocates for their constitutional right to purchase, sell, and receive semiautomatic rifles.

153. As a direct result of SCPD's enforcement of the Rifle Bill, Mr. Newman and DSI are prohibited from engaging in its normal and customary business; and its customers and potential customers who do not hold a New York State handgun license and therefore cannot obtain a rifle endorsement from SCPD for 2-3 years, are unable to purchase, transfer, and receive semi-automatic rifles because of the threat of criminal penalties under Penal Law §§ 265.65 and 265.66 to Mr. Newman, DSI, customers, and potential customers, including arrest, incarceration, and fines.

154. As a direct result of SCPD's licensing policies and procedures, and the enforcement of the Rifle Bill by SCPD and NYSP (as detailed below), Mr. Newman and DSI are prohibited from engaging in their normal and customary business; and their customers and potential customers who do not hold a New York State handgun license and therefore cannot obtain a rifle endorsement from SCPD for 2-3 years, are unable to purchase, transfer, and receive semi-automatic rifles. Defendants' enforcement of Penal Law §§ 265.65 and 265.66 subjects Mr. Newman, DSI, their customers, and potential customers to arrest, felony conviction, incarceration, and fines.

155.     Mr. Newman and DSI have also suffered actual economic loss as a result of Defendants' enforcement of the Rifle Bill.

156.     DSI and Mr. Newman face a credible and imminent risk of arrest, incarceration, and other criminal penalties by SCPD and the New York State Police for engaging in presumptively protected conduct, to wit, transferring semiautomatic rifles – weapons in common use – to non-prohibited people who do not possess a Rifle License or handgun license with the rifle endorsement.

### NYSP Active Enforcement of Firearm Regulations

157.     Although Defendant Dominick L. Chiumento replaced former Acting Superintendent Steven Nigrelli as head of the New York State Police, Chiumento has made no statement indicating that he and his law enforcement officers will not continue to enforce New York's criminal laws, including gun laws, with the same full force and effect as his predecessor.

158.     In any event, Supt. Chiumento acts at the direction of Gov. Hochul, whose cultish disdain for Second Amendment rights show no signs of waning.

159.     At Gov Hochul's news conference on August 31, 2022, then-Acting Superintendent Nigrelli publicly thanked Governor Hochul as "someone [he] looks up to" for her "leadership on this topic…laser-like focus on *eradicating guns*, illegal guns, and gun crimes...we appreciate that at the State Police." [13] (36:10). (emphasis added).

160.     Then-Acting Superintendent Nigrelli vowed that the NYSP will enforce the State's gun laws against everyone who violates them:

> "Governor, it's an easy message. I don't have to spell it out more than this. We'll have zero tolerance. If you violate this law, you will be arrested. Simple as that.

---

[13] https://www.youtube.com/watch?v=gC1L2rrztQs

Because the New York State Troopers are ***standing ready to do our job to ensure .. all laws are enforced***." *Id.* (emphasis added).

161.    Penal Law §§ 265.65 and 265.66 will continue to be enforced by the NYSP against anyone who purchases, receives, transfers, and/or possesses a semi-automatic rifle without applying for and obtaining a Rifle License, including Plaintiffs and similarly situated individuals.

162.    Likewise, SCPD is enforcing Penal Law §§ 265.65 and 265.66 against anyone who purchases, receives, transfers, and/or possesses a semi-automatic rifle without applying for and obtaining a Rifle License, including Plaintiffs and similarly situated individuals.

163.    As a direct result of Superintendent Chiumento's continued vigorous enforcement of the Rifle Bill, Mr. Newman and DSI are prohibited from engaging in their normal and customary business; and their customers and potential customers are unable to purchase, transfer, and receive semi-automatic firearms semi-automatic rifles under threat of criminal penalties under Penal Law §§ 265.65 and 265.66 subjecting Mr. Newman, DSI, their customers, and potential customers to arrest, felony conviction, incarceration, and fines.

164.    As a direct result of Defendants' conduct, Plaintiffs have been caused to suffer, *inter alia,* the violation of presumptively protected rights as protected by the Second and Fourteenth Amendments, presumed nominal damages, compensatory damages, punitive damages, economic damages, and they have otherwise been rendered sick and sore.

165.    Plaintiffs seek a judicial declaration that Senate Bill 9458 violates the Second and Fourteenth Amendments.

166.    Plaintiffs seek a judicial declaration that the SCPD policies and procedures described herein violate the Second and Fourteenth Amendments.

167.     Plaintiffs further seek an Order permanently enjoining Commissioner Harrison and Acting Superintendent Chiumento, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with such defendants, who receive actual notice thereof from enforcing Senate Bill 9458.

## COUNT I
### U.S. CONST., AMEND. II and XIV, 42 U.S.C. § 1983

168.     Repeat and reallege paragraphs "1" through and including "167."

169.     Under the theory that defendants are liable to plaintiffs for violations of their preexisting and guaranteed individual rights as protected by the Second Amendment, and made applicable to the States through the Fourteenth Amendment, to the U.S. Constitution. 42 U.S.C. § 1983.

## COUNT II
### *MONELL* LIABILITY
### (Suffolk County)

170.     Repeats and realleges paragraphs "1" through and including "169."

171.     Under the theory that, by creating, maintaining, enforcing, following, and/or applying Suffolk County's unconstitutional policy described herein, the County of Suffolk is liable to the plaintiff under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) for the violations of Plaintiffs' constitutional rights as plead herein, 42 U.S.C. §1983. WHERFORE, a Judgment and Order is respectfully requested:

- Declaring that Senate Bill 9458 violates the Second and Fourteenth Amendments to the U.S. Constitution;

- Declaring that the policies, processes, and procedures related to the licensing of semiautomatic rifles enforced and implemented by SCPD violate the Second and Fourteenth Amendments to the U.S. Constitution;

- Granting permanent injunctive relief against Commissioner Harrison and Acting Superintendent Chiumento, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with such defendants, who receive actual notice thereof from enforcing any provision of Senate Bill 9458;

- Awarding in favor of Plaintiffs, presumed nominal damages against Defendants for the violation of their of their Second and Fourteenth Amendment rights;

- Awarding in favor of Plaintiffs, and against Suffolk County, New York, Defendant Harrison, and Defendant Komorowski, compensatory damages for the violation of their Second and Fourteenth Amendment rights;

- Awarding in favor of Ed Newman and Dark Storm Industries, LLC,, economic damages against Suffolk County, New York, Defendant Harrison and Defendant Komorowski;

- Awarding in favor of Plaintiffs, punitive damages as against Defendants Harrison and Komorowski;

- Awarding costs, disbursements, and reasonable statutory attorney's fees pursuant to 42 USC 1988; and Granting such other, further, and different relief as to this Court seems just, equitable, and proper.

Dated: December 1, 2023
Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs*

By:  *Amy L. Bellantoni*
Amy L. Bellantoni (AB3061)
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090 (t)
(888) 763-9761 (f)