UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
MICHAEL MCGREGOR, ZACHARY GIAMBALVO,
PAUL FELICE, MATTHEW OLIVIERI, EDWARD
NEWMAN, and DARK STORM INDUSTRIES, LLC,

                          Plaintiffs,                23 Civ. 01130 (GRB)(ARL)

     -against-

                                       **STATEMENT OF UNDISPUTED**
SUFFOLK COUNTY, New York,            **FACTS PURSUANT TO LOCAL**
Police Commissioner RODNEY HARRISON,   **RULE 56.1**
in his Official Capacity and Individually, and
MICHAEL KOMOROWSKI, Individually,

                         Defendants.
-----------------------------------------------------------------------x

### PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

1.     In New York State, with narrow exceptions for transfers between immediate family members[1], all sales, exchanges or disposals of firearms, rifles or shotguns (i) must be conducted by a licensed manufacturer or licensed dealer and (ii) before delivering a firearm, rifle or shotgun to any person a background check through the National Instant Criminal Background Check System (NICS) must be conducted, and a "Proceed" result must be issued, before any transfer of a handgun, rifles, or shotgun can occur [New York General Business Law § 898]. This lawsuit does not challenge the NICS authorization requirement [see, Complaint at ECF Doc. 1].

2.     Prior to June 6, 2022, New York State never imposed a licensing requirement on the purchase, sale, acquisition, receipt, or transfer of any type of rifle [Bellantoni Ex. 5].

3.     On June 6, 2022, New York passed Senate Bill 9458 (the "Rifle Bill"), which took effect on September 4, 2022[2] [Bellantoni Ex. 5].

---

[1] Unless the sale, exchange or disposal is between members of an immediate family. G.B.L. § 898.
[2] https://www.governor.ny.gov/news/governor-hochul-signs-landmark-legislative-package-strengthen-gun-laws-and-protect-new-yorkers; NY State Senate Bill 2021-S9458 (nysenate.gov)

4. The Rifle Bill requires individuals to seek permission from the government before an individual can lawfully purchase, receive, acquire, and/or take ownership of semiautomatic rifles ("SARs"); conversely, the regulation forbids firearm dealers and manufacturers from selling and/or transferring a SAR to an individual who has not applied for and obtain such a license [Bellantoni Ex. 5].

5. Under § 400.00, *et seq.* the issuance of a SAR license is subject to a discretionary assessment of moral character, requires payment of a licensing fee, and waiting period, after which time permission "may" be granted by the government [Penal Law § 400.00 *et seq.*].

6. Among other restrictions, the Rifle Bill criminalizes the purchase, sale, receipt, and transfer of SARs to/from unlicensed individuals [Bellantoni Ex. 5].

7. With the enactment of the Rifle Bill, it is now a felony for anyone, including gun stores and manufacturers, to sell and/or transfer a SAR to an individual who does not hold a SAR license or whose pistol license does not have a SAR endorsement [Penal Law § 265.66].[3]

8. With the enactment of the Rifle Bill, it is now a crime for an individual to purchase and/or take ownership of a SAR without a SAR license or a SAR-endorsed pistol license [Penal Law § 265.65].[4]

9. SAR-licensed individuals who have purchased a SAR from a gun store cannot leave the store with their property; they must first seek, and obtain, permission from the licensing officer to amend their license, register the newly purchased SAR to the back of the amended license, and

---

[3] A person is guilty of criminal sale of a semiautomatic rifle when, knowing or having reason to know it is a semiautomatic rifle, he or she sells, exchanges, gives or disposes of a semiautomatic rifle to another person and such other person does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter. Criminal sale of a semiautomatic rifle is a class E felony. N.Y. Penal Law § 265.66.

[4] A person is guilty of criminal purchase of a semiautomatic rifle when he or she purchases or takes possession of a semiautomatic rifle and does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter. Criminal purchase of a semiautomatic rifle is a class A misdemeanor for the first offense and a class E felony for subsequent offenses. N.Y. Penal Law § 265.65.

receive a "purchase document" from the licensing officer [Bellantoni Ex. 7 at 61-63 Penal Law § 400.00(9)].

10.    No unlicensed person may purchase a SAR in New York [Penal Law §265.65; § 265.66].

11.    SARs are weapons in common use in the United States [Newman Dec. ¶11].[5]

12.    Individuals with existing pistol licenses who seek to purchase SARs are required to apply for an amendment to their pistol license that contains a SAR endorsement [Penal Law § 400.00, *et seq.*; see, Declaration of Emmet R. Kinzel, Technical Lieutenant, New York State Police ("Kinzel Dec.") at ¶ 2].

13.    For an existing pistol license holder to obtain a SAR endorsement, they must apply to the statutory licensing officer in their county and obtain an amendment to their license [Penal Law § 400.00(9); Kinzel Dec. at ¶ 2].

14.    A non-endorsed pistol license is legally insufficient for the lawful transfer/purchase/sale of a SAR [Penal Law § 400.00(2); Bellantoni at Ex. 2; Newman at ¶19; Kinzel Dec. at ¶ 3].

15.    A non-endorsed pistol license does not confer authority to transfer/purchase/sell a SAR [Penal Law §§ 265.65, 265.66, 400.00(2); Bellantoni at Ex. 2; Newman at ¶19; Kinsel Dec. at ¶¶ 2-3].

16.    Penal Law § 400.00(2) and New York State Police guidance confirm that a non-endorsed pistol license do not confer authorization to transfer and/or purchase SARs [Kinzel Dec. at ¶¶ 2-3; Newman ¶28].

---

[5]  https://www.nssf.org/articles/commonly-owned-nssf-announces-over-24-million-msrs-in-circulation/

17.    Under "Resources for Gun Dealers," the NYSP provides the following guidance regarding Semi-Automatic Rifle Licenses:

> Can a dealer transfer a semi-automatic rifle to a customer who has a pistol license but not a semi-automatic rifle license?
>
> No, a dealer can only sell a semi-automatic rifle to a customer if that customer possesses a semi-automatic rifle license. A pistol license alone is ***not sufficient*** to allow a transfer of a semi-automatic rifle.
> (emphasis added)

[Bellantoni Ex. 2; Kinzel Dec. at ¶¶1-3; Newman ¶28].

18.    The Rifle Bill places semiautomatic rifles under the same subjective and discretionary licensing scheme that handguns have been subjected to since the Sullivan Law was enacted in 1911 [Penal Law § 400.00, *et seq.*].

***Suffolk County Policies Regarding SAR Licensing***

19.    From the passage of the Rifle Bill in June 2022 through September 29, 2023, the Suffolk County Police Department ("SCPD") Licensing Bureau ("PLB") would not endorse existing pistol licenses to authorize the licensee to purchase and/or take possession of SARs [Bellantoni Ex. 7 (Komorowski Transcript) at 35:3-9].

20.    Lt. Michael Komorowski has been the Commanding Officer of the PLB for more than six years [Bellantoni Ex. 7 at 10-11].

21.    It is the statutory duty and responsibility of the Commissioner of the Suffolk County Police Department, and Komorowski as his designee and Commanding Officer of the PLB, to issue licenses enumerated in the licensing statute § 400.00(2). This includes a license to purchase/take ownership of semiautomatic rifles. [Penal Law 265.00(10); Penal Law §400.00(2); Declaration of Michael McGregor ¶ 23].

22.     Between June 2022 and September 2023, Komorowski enforced a PLB policy that no pistol licenses would be amended to reflect a SAR endorsement and no SAR-only license would be issued [Bellantoni Ex. 3; Bellantoni Ex. 7 at 55-56; McGregor ¶¶15-19 and Ex. 4, 5; Newman ¶24].

23.     If an individual wanted to obtain a SAR license or amend their pistol license to reflect a SAR endorsement, the PLB policy was that a pistol license was "good enough" and no endorsement would be provided [Bellantoni Ex. 7 at 33-34].

24.     For over 6 years, the PLB had the ability to print information onto the back of a pistol license to reflect, for example, a licensee's employer information, which was a common occurrence [Bellantoni Ex. 7 at 38-39].

25.     Between June 2022 and September 2023, Komorowski and the PLB had the ability to add text to the back of a pistol license in the "Comments" section to place a SAR endorsement [Bellantoni Ex. 7 at 38-39].

26.     For six (6)+ years that Komorowski has been assigned to the PLB, the PLB has had the ability to ability type in or have the computer generate information onto the back of a pistol license in the section entitled, "Comments" Komorowski at 25-27].

27.     For several years prior to the enactment of the Rifle Bill, the PLB has printed, for instance, a licensee's employer information in the "Comments" section of the back of pistol blicenses [Komorowski at 25-27].

28.     OMITTED.

29.     But from the passage of the Rifle Bill on June 6, 2022 through September 21, 2023, Komorowski and the PLB refused to amend existing pistol licenses to reflect the SAR endorsement

authorizing the purchase of SARs [Bellantoni Ex. 3; Bellantoni Ex. 7 at 55-56; McGregor ¶¶15-19 and Ex. 4, 5].

30.     It was not September 21, 2023 that Komorowski and the PLB allowed pistol license holders to have their licenses endorsed by adding the words "SEMI-AUTO RIFLE" to the back of the pistol license [Bellantoni ¶¶4, 6, Ex. 1, Ex. 3].

31.     According to Komorowski, it would be futile for an individual who applied for a pistol license and was denied, including Plaintiffs Giambalvo and Felice, to then apply for a SAR license because the requirements for issuance of both licenses are the same under Penal Law § 400.00 [Bellantoni Ex. 7 at 64-66; Penal Law §400.00(1)].

32.     The Affidavit signed by Komorowski dated March 11, 2023 falsely averred, "A person who does not currently have a pistol license and does not wish to obtain one may obtain a rifle license by going through the same application process as utilized for pistol license applications." [Bellantoni Ex. 4, ¶ 5].

33.     The PLB *still* has no ability to issue a SAR-only and can only issue (i) pistol licenses and (ii) pistol licenses with a SAR endorsement on the back [Bellantoni Ex. 7 at 59-60; 70].

### *SCPD Enforces the State's SAR Registration Requirement [Penal Law § 400.00(9)]*

34.     In New York State, to purchase/acquire a SAR, a licensed individual must undergo a NICS background check and, if a "Proceed" response is issued, the individual is authorized to proceed with the purchase [N.Y. G.B.L. § 898].

35.     An individual who has been approved by NICS and purchased - paid for - a new SAR from a gun store cannot leave the store with their newly purchased property; the purchaser must then seek and receive permission from a licensing officer (here, the PLB) to amend their license, register the newly purchased SAR on the back of the license [Bellantoni Ex. 7 at 63].

36. In Suffolk County, a SAR-licensed individual who purchased a SAR at the gun store is required to leave his property at the gun store, travel to the PLB with proof of purchase, amend their license to add the SAR, wait for and obtain the amended license with the new SAR registered on the back of the license, obtain a "purchase document" from the PLB, then travel back to the gun store with the "purchase document" - only then may the licensee leave the store with (take possession of) his property [Bellantoni Ex. 7 at 61-64].

37. No purchase of a SAR can take place in the first instance without a SAR-endorsed pistol license or a SAR-only license [Penal Law § 400.00(2); Bellantoni Ex. 5; Kinzel Dec. at ¶¶1-3].

### Plaintiff – Michael McGregor

38. At all times relevant to the instant action, Michael McGregor ("McGregor") was a resident of Suffolk County, New York and a practicing physician [McGregor Declaration at ¶3].

39. McGregor has no prohibitors to the possession, purchase, receipt, and transfer of handguns, rifles, and shotguns under federal or state law [McGregor ¶4].

40. McGregor lawfully owns firearms and possesses a valid New York State pistol license, which was issued by the PLB [McGregor ¶5].

41. In September 2022, McGregor attempted to purchase a Ruger 10/22 semiautomatic rifle from RT Smoke 'N Gun ("RT Smoke"), a federally licensed firearm dealer located in Westchester County, New York [McGregor ¶6].

42. McGregor was foreclosed from purchasing the Ruger or any other SAR from RT Smoke because he did not have a SAR license [McGregor ¶6].

43. McGregor's pistol license was not legally sufficient to authorize his purchase of a SAR [McGregor ¶7; Kinzel at ¶¶1-3; Bellantoni at Ex. 2; Penal Law §400.00(2)].

44.     On September 6, 2022, McGregor contacted two gun stores in Suffolk County to purchase the Ruger - Karp's Hardware/Long Island Ammo ("LI Ammo") in East Northport and Camp-Site Sport Shop ("Camp-Site") in Huntington Station to purchase the Ruger [McGregor ¶¶8-10].

45.     Neither gun store would sell a SAR to McGregor because he did not have a SAR license nor did his pistol license reflect a SAR endorsement [McGregor ¶¶8-10].

46.     LI Ammo confirmed that an unendorsed pistol license does not authorize the purchase of a SAR - and the NYSP concurs [McGregor ¶9; recorded conversation at Ex.1; Bellantoni Ex. 2, Ex. 5; Kinzel Dec. at ¶¶1-3; Penal Law §400.00(2)].

47.     Camp-Site confirmed that no SAR purchase can be made with an unendorsed pistol license [McGregor ¶10; recorded conversation at Ex. 2].

48.     McGregor then contacted the PLB to find out how he could amend his pistol license to reflect a SAR endorsement [McGregor at ¶11].

49.     McGregor explained to the PLB staff that FFLs will not sell him a SAR without a license authorizing the purchase of SARs [McGregor ¶11].

50.     McGregor informed PLB staff that, according to NYSP guidance, a SAR endorsement can be added to his pistol license [McGregor ¶11; Bellantoni at Ex. 2].

51.     But the PLB refused to endorse McGregor's pistol license because, under SCPD policy from June 6, 2022 until September 21, 2023, the PLB refused to endorse existing pistol licenses [McGregor ¶12, Ex. 2 and 3].

52.     The PLB staff acknowledged and disregarded the fact that the Penal Law specifically states that a "rifle license" is required to purchase a SAR [McGregor ¶¶12-13; recorded conversations at Ex. 3, Ex. 4].

53.     Under PLB policy between June 2022 and September 2023, the PLB is "recognizing" pistol licenses as sufficient authorization to purchase a SAR [McGregor Ex. 4; Bellantoni Ex. 7 at 80].

54.     SCPD enforces the requirement that every SAR purchased must be registered to SCPD and listed on the individual's pistol license [McGregor ¶12; Penal Law § 400.00(9); Bellantoni Ex. 4; Bellantoni Ex. 7 at 63-64, 80].

55.     By email dated September 21, 2023, Suffolk County announced that the PLB will (finally) endorse existing pistol licenses [Bellantoni Ex. 3]. On September 28, 2023, McGregor confirmed with the PLB by phone that they will now amend existing pistol licenses to reflect the SAR endorsement [McGregor ¶17; recorded conversation at Ex. 5].

56.     McGregor thereafter applied to the PLB to have his pistol license endorsed; the PLB amended McGregor's pistol license by adding the words "SEMI-AUTO RIFLE" to the back of his pistol license in the section entitled "Comments" [McGregor ¶17-18; Ex. 5].

57.     Komorowski and the PLB have always had the ability to amend pistol licenses to reflect the SAR endorsement [Bellantoni Ex. 7 at 38-39].

58.     Komorowski and the PLB have always had the ability to add the words "SEMI-AUTO RIFLE" to the "Comments" section on the back of a pistol license [Bellantoni Ex. 7 at 38-39].

59.     From September 4, 2022 until September 21, 2023, McGregor's right to obtain a SAR, including the Ruger 10/22 semiautomatic rifle he had been trying to purchase since September 2022, was absolutely foreclosed by Komorowski and the PLB's policies[McGregor ¶21].

*Plaintiff – Zachary Giambalvo*

60.     Zachary Giambalvo ("Giambalvo") is resident of Suffolk County, New York with no prohibitors or disqualifiers to the lawful purchase, receipt, possession, or ownership of firearms [Giambalvo ¶ 3].

61.     Giambalvo owns rifles and shotguns that he purchased from various FFLs after successfully completing a federal background check through the NICS system [Giambalvo ¶ 3].

62.     Giambalvo is a veteran of the United States military who received an Honorable Discharge [Giambalvo ¶ 3].

63.     Since Fall 2022, Giambalvo has been attempting to purchase a World War II era semi-automatic rifle from an FFL outside of New York and complete the transfer in New York State through a FFL [Giambalvo ¶ 4].

64.     Giambalvo has been completely barred from acquiring the SAR – or any other SAR - because of the Rifle Bill [Giambalvo ¶ 4].

65.     Giambalvo does not have a SAR-only license nor does he have a pistol license that can be amended to reflect a SAR endorsement [Giambalvo ¶ 4].

66.     In February 2020, Giambalvo applied to the PLB for a pistol license; he finally received a determination in February 2024 signed by Komorowski, which denied his application [Giambalvo ¶ 8; Bellantoni Ex. 8].

67.     Although Giambalvo has no firearm disqualifiers under state or federal law, New York's "may issue," subjective, and discretionary licensing scheme affords licensing officers with authority under Penal Law § 400.00 to deny pistol licenses based on their subjective opinions [Giambalvo ¶ 8].

68.　Because Komorowski denied Giambalvo's application for a pistol license, Giambalvo cannot obtain a SAR endorsement and now suffers an absolute barrier to acquiring SARs [Giambalvo ¶ 9].

69.　Giambalvo cannot obtain a SAR-only license because, according to Komorowski, reapplying for a SAR-only license would be futile because Giambalvo's application would be denied [Giambalvo ¶5; Bellantoni Ex. 7 at 64-66; Bellantoni Dec. Ex. 8].

70.　Because of the Rifle Bill, Giambalvo is not only prohibited from taking possession of the World War II era SAR he has tried to acquire since Fall 2022, he is banned from acquiring any new SARs [Giambalvo ¶ 15].

71.　Giambalvo would purchase the World War II era SAR today but for the fact that Defendants are continuing to enforce the Rifle Bill against purchasers and sellers/FFLs [Giambalvo ¶ 15].

72.　No New York FFL may legally sell a SAR to Giambalvo because he does not have a Rifle License and every FFL in Suffolk County will be subject to criminal penalties from the SCPD and the NYSP, both of whom are enforcing the provisions of the Rifle Bill; he criminal sale of a semiautomatic rifle is a class E felony under Penal Law § 265.66 [Giambalvo ¶ 16].

73.　Even if an FFL were willing to expose themselves to criminal penalties, Giambalvo could not purchase a SAR without a Rifle License because he would face criminal arrest and prosecution under Penal Law § 265.65 by SCPD and the NYSP, a misdemeanor for the first unlicensed purchase and a felony for every unlicensed purchase thereafter [Giambalvo ¶ 17].

*Plaintiff – Paul Felice*

74.     Paul Felice ("Felice") is a resident of Suffolk County, New York with no prohibitions or disqualifications to the lawful purchase, receipt, possession, or ownership of firearms [Felice at ¶3].

75.     Felice owns long guns, including semiautomatic rifles, which he purchased after passing a NICS federal background check [Felice at ¶4].

76.     In Fall 2022, Felice attempted to purchase a Black Rain Ordnance semiautomatic rifle from an out-of-state federal firearms licensee (FFL), which would be sent from the FFL to Dark Storm Industries and thereafter transferred to Felice after a NICS background check [Felice at ¶5].

77.     Felice is barred from purchasing the Black Ordnance – and any other SAR – because he does not have a SAR license, nor does he have a pistol license that can be amended to reflect the SAR endorsement [Felice at ¶6].

78.     As Felice already owned long guns, he has passed federal NICS background checks in the past and is not a "prohibited person" under state or federal law [Felice at ¶10].

79.     Felice applied to the PLB for a pistol license, which was denied by Komorowski in January 2024 [Felice at ¶9; Bellantoni Ex. 8].

80.     Notwithstanding that Felice has no disqualifiers to firearm possession, his pistol license application was denied by Komorowski under New York State's "may issue" subjective and discretionary licensing scheme on January 10, 2024 [Felice at ¶11].

81.     Because Komorowski denied his application for a pistol license, Felice cannot obtain a SAR endorsement and or a SAR license, and is completely barred from acquiring SARs [Felice ¶ 12].

82.     Felice cannot obtain a SAR license because the PLB denied his application for a pistol license; according to Komorowski, reapplying for a SAR-only license would be futile because Felice's application would be denied [Bellantoni Ex. 7 at 64-66; Bellantoni Ex. 8].

83.     Because of the Rifle Bill, Felice is not only prohibited from purchasing the Black Rain Ordnance he tried to purchase since Fall 2022, but he is foreclosed from acquiring any SAR [Felice ¶ 15].

84.     Felice would purchase the Black Rain Ordnance today but for the fact that Defendants are enforcing the Rifle Bill [Felice ¶ 15].

85.     No New York FFL may legally sell a SAR to Felice because he does not have a license and every FFL in Suffolk County will be subject to criminal penalties from the SCPD and NYSP, as the criminal sale of a semiautomatic rifle is a class E felony under Penal Law § 265.66 [Felice ¶ 16].

86.     Even if an FFL were willing to expose themselves to criminal penalties, Felice could not purchase a SAR without a license because he would face criminal arrest and prosecution under Penal Law § 265.65 by SCPD and the NYSP, a misdemeanor for the first unlicensed purchase and a felony for every unlicensed purchase thereafter [Felice ¶ 17].

***Plaintiff – Matthew Olivieri***

87.     Matthew Olivieri is a Marine Corps. veteran with no prohibitions or disqualifications to the lawful purchase, receipt, possession, or ownership of firearms. [Olivieri ¶3].

88.     While in the Marine Corps., Olivieri was assigned to the Infantry; he has extensive experience with semiautomatic rifles [Olivieri ¶3].

89.     In and around the Fall of 2022, Olivieri made plans to purchase a New York-compliant AR-15 platform semiautomatic rifle from Dark Storm Industries in Suffolk County, which he intended to use for self-defense and target shooting [Olivieri ¶4].

90.     Olivieri still intends to purchase a SAR, however, because of the passage of the Rifle Bill, he has been unable to acquire a SAR from any New York FFL [Olivieri ¶5].

91.     The Rifle Bill constitutes an absolute bar to Olivieri's right and ability to purchase a SAR – a weapon in common use for self-defense and other lawful purposes [Olivieri ¶6].

92.     New York State arbitrarily treats SARs differently than every other long gun, none of which require a license to possess and/or purchase [Olivieri ¶7].

93.     Olivieri has no intention of obtaining a Rifle License to lawfully purchase a SAR, which is a constitutional right that requires no permission from the government to exercise [Olivieri ¶8].

94.     As a result of the Rifle Bill, Olivieri is prohibited from purchasing his intended SAR from Dark Storm or any other New York State FFL [Olivieri ¶9].

95.     No New York FFL is legally able to sell a SAR to Olivieri because he does not have a Rifle License and every FFL will be subject to criminal penalties under Penal Law §265.66. The criminal sale of a semiautomatic rifle is a class E felony under Penal Law § 265.66 [Olivieri ¶10].

96.     Even if an FFL were willing to expose themselves to criminal penalties, Olivieri could not purchase a SAR without a Rifle License because he would face criminal arrest and prosecution under Penal Law § 265.65, which is a misdemeanor for the first unlicensed purchase and a felony for every purchase thereafter [Olivieri ¶11].

97.     Purchasing weapons in common use, like SARs, is constitutionally protected activity that does not require the government's permission or a license to exercise [Olivieri ¶12].

98.     Olivieri seeks to have the Rifle Bill declared unconstitutional and to have Defendants permanently enjoined from enforcing the Rifle Bill, including Penal Law §§ 265.65 and 265.66, because the regulations prevent ordinary people like him from exercising conduct that is presumptively protected by the Second Amendment [Olivieri ¶13].

***Plaintiff – Edward Newman and Dark Storm Industries LLC***

99.     Edward Newman ("Newman") is an owner and operator of Dark Storm Industries LLC ("DSI"), a limited liability company formed and existing under the laws of the State of New York. DSI has a principal place of business in Suffolk County, New York [Newman ¶3].

100.    DSI is fully licensed under federal and state laws to engage in the business of, among other services, the manufacture and sale of semiautomatic rifles [Newman ¶4].

101.    At all times relevant to this litigation, DSI has been the largest manufacturer of semiautomatic rifles in New York State [Newman ¶5].

102.    Inherent in the plain text of the Second Amendment is the right to keep (possess) Arms, which encompasses all weapons in common use for self-defense. Inextricably intertwined with the right to possess arms is the ability to purchase weapons – which is tied to the right to provide /sell / transfer ownership of those weapons [Newman ¶6].

103.    Newman's interest and the interests of DSI concerning the Rifle Bill are not simply "economic" [Newman ¶7].

104.    By criminalizing the sale of SARs to individuals who have no disqualifiers to possessing firearms – regular people who would pass a federal background check through the

NICS system and/or the New York State Police NICS check - Penal Law § 265.66 violates Newman's right to provide arms to "the People" [Newman ¶7]

105.    Without individuals and companies to provide/sell/transfer 'arms' to the People, the Right to 'keep' arms will eventually be eliminated [Newman ¶7].

106.    Newman and DSI also bring this action to assert those concomitant rights of their customers and potential customers whose interests will be diluted and/or adversely affected should this constitutional challenge fail and the Rifle Bill continue to remain in force [Newman ¶8].

107.    As the operator of a gun store, Newman has derivative standing to assert the subsidiary right to acquire arms on behalf of my customers and potential customers [Newman ¶8].

108.    Penal Law §§ 265.65 and 265.66 have plainly inflicted an "injury in fact" upon Newman and DSI sufficient to create an adverse impact; they are either obligated to adhere to the statutory prohibitions, thereby incurring a direct economic injury through the constriction of their customers' and potential customers' market share, or disobey the statutory command and suffer criminal penalties, the certain revocation of our New York State firearms dealer's license, and the probable loss of their federal firearms license as well [Newman ¶9].

109.    The PLB is the regulatory agency over licensed gun dealers within the jurisdiction of SCPD. Any violation of the Penal Law constitutes grounds to suspend and/or revoke the dealers' license [Bellantoni Ex. 7 at 27-31].

110.    If a gun store allowed an unlicensed individual to even handle a firearm in the store, that would constitute grounds to suspend and/or revoke their dealer's license [Bellantoni Ex. 7 at 31].

111.    Promptly after the "Rifle Bill was enacted, DSI was prohibited from selling and/or transferring any SARs to the general public because of the enforcement of the Rifle Bill by SCPD and NYSP [Newman ¶10].

112.    DSI customers and potential customers were unable to purchase, receive, and transfer SARs [Newman ¶10].

113.    Semiautomatic rifles are weapons in common use for self-defense. In the United States, tens of millions of SARs have been sold and are owned[6] [Newman ¶11].

114.    Aside from handguns, SARs are the most popular self-defense weapon sold and owned in the United States [Newman ¶12].

115.    Until the enactment of the Rifle Bill, New York State had never before required a license to acquire, sell, or transfer rifles [Newman ¶13; Bellantoni Ex. 6].

116.    The Rifle Bill prohibits DSI and its staff from selling and transferring SARs to any individual who does not hold a SAR license issued under Penal Law § 400.00(2) [Newman ¶14].

117.    Included in that group of individuals are one or more of the plaintiffs in this action, including Zachary Giambalvo, Paul Felice, Matthew Olivieri, and other ordinary citizens who are not part of this action but also seek access to DSI's market function: the purchase and transfer of semiautomatic rifles and on  whose behalf DSI advocates for their constitutional right to purchase, sell, and receive semiautomatic rifles [Newman ¶15; Felice ¶81].

118.    Eventually, DSI was able – to a limited extent – to resume its sale of SARs, but there is a category of customers and potential customers to whom we can no longer sell or transfer SARs because they have not applied for and/or obtained a SAR license; they were either denied or

---

[6] https://www.nssf.org/articles/commonly-owned-nssf-announces-over-24-million-msrs-in-circulation/

refuse to seek the government's permission to obtain a common rifle for self-defense [Newman ¶16].

119.    Customers and potential customers have also declined to purchase a SAR once learning that the SAR will be required to be registered and listed on the back of their pistol license, as required by Penal Law § 400.00(9). SCPD is enforcing the registration requirement for SARs as they do for pistols [Newman ¶17; Komorowski at 61-62].

120.    For several months, SAR sales and transfers to Suffolk County residents were prohibited because SCPD did not issue SAR-only licenses and refused to endorse existing pistol licenses to reflect the SAR endorsement [Newman ¶18, Ex. 1].

121.    An unendorsed pistol license is legally insufficient for the lawful transfer of a SAR; pistol licenses require a SAR-specific endorsement to take possession of, receive, transfer, and/or purchase a SAR [Newman ¶19; Kinzel Dec. at ¶¶ 1-3; Bellantoni Ex. 2; Penal Law § 400.00(2)].

122.    Under SCPD policy, for an unlicensed individual to lawfully take possession of or purchase a SAR, the individual must apply for a pistol license, a process that takes between 1½ -3 years, and then request that the SAR endorsement be placed on the license [Newman ¶20].

123.    Because SCPD foreclosed endorsing existing pistol licenses for approximately one year, Newman and DSI were unable to sell or transfer any SARs for their Suffolk County customers and potential customers during such time [Newman ¶21].

124.    Prior to the enactment of the Rifle Bill, the back of pistol licenses issued by the PLB depicted a section entitled, "Comments" where the PLB would enter text pertaining to a licensee's "employment carry" license [Newman ¶22].

125.    At all times relevant to this action, Komorowski and the PLB had the means to type the words "SEMI-AUTO RIFLE" on the back of an individual's pistol license [Newman ¶23].

126.     After the enactment of the Rifle Bill, Komorowski enforced a policy whereby the PLB refused to endorse existing pistol licenses to allow individuals to take possession of / transfer SARs. It was their opinion, which translated into a Licensing Bureau policy, that a pistol license was "good enough," which it was not [Newman ¶24; Bellantoni Ex. 2; Kinzel Dec. at ¶¶1-3].

127.     At or around this same time, Nassau County and the Suffolk County Sheriff's Office had established a process by which the licensing bureaus placed a written SAR endorsement on the face of the pistol licenses they issued. SCPD still refused to place a SAR endorsement on existing pistol licenses [Newman ¶¶25, 29; Ex. 1].

128.     SCPD's policy, enforced by Komorowski, prohibited DSI customers and potential customers who held valid NYS pistol licenses issued by the PLB from purchasing/taking possession of SARs they tried to purchase/take possession of at the DSI store [Newman ¶26].

129.     From September 2022 through September 2023, Komorowski and the PLB falsely informed the public that an unendorsed pistol license was sufficient authorization to purchase/acquire a SAR [Newman ¶27; Bellantoni Ex. 7 at 33-34, 80; McGregor at ¶¶11-13 and recorded conversations at Ex. 3, Ex. 4; Kinzel at ¶¶1-3; Bellantoni at Ex. 2; Penal Law § 400.00(2)].

130.     Unlicensed Suffolk County residents who sought to purchase a SAR were required to apply for a pistol license, a process that takes between 1½ -3 years, and then request that the SAR endorsement be placed on the license [Newman ¶20; Felice Ex. 1].

131.     SCPD will arrest anyone who transfers/sells a SAR to an individual who does not have a SAR license. Newman and DSI are prohibited from transferring any SARs to Suffolk County customers and potential customers because of NYSP's enforcement of the Rifle Bill, notwithstanding the policy created by Harrison and Komorowski [Newman ¶29].

132.     In mid-September 2023, one of Newman/DSI's customers went to the SCPD Licensing Bureau to ask that his existing pistol license be amended to reflect the SAR endorsement [Newman ¶32, Ex. 2, Ex. 3, Ex. 4].

133.     At first, the Licensing Bureau staff refused to add the endorsement language; when asked why the staff responded, "because I said so." Once the customer began video recording the officer, the customer was escorted outside of the Licensing Bureau office to stand in the lobby – and ignored. After a few minutes, the customer asked for the supervisor and eventually the PLB agreed to endorse his license [Newman ¶33; Ex. 2, Ex. 3, Ex. 4].

134.     Possession of a New York State pistol license is not a defense to arrest and prosecution for an offense under Penal Law §§ 265.65 and/or 265.66 [Newman ¶34; Kinzel Dec. ¶¶1-3].

135.     DSI continues to have customers and potential customers who come into the store to purchase SARs, but cannot make the purchase because they do not have a rifle license or a SAR endorsed pistol license. Newman/DSI would consummate the sale/transfer of SARs to the individuals but for the fear of enforcement by SCPD and NYSP of the criminal penalties imposed by the Rifle Bill [Newman ¶35].

136.     DSI has experienced an economic loss of over $2 million and direct profit loss of over $500,000. The overall impact on the business of losing that profit has been significant as it has impacted DSI's cash flow and ability to continue to profit in other areas of sales [Newman ¶36].

137.     The Rifle Bill, and Defendants' enforcement thereof, is a violation of the plain text of the Second Amendment, which guarantees the right to "keep and bear Arms" and "shall not be

infringed." As such, the Rifle Bill should be preliminarily and permanently enjoined [Newman ¶37].

***Peter Morrisey – Owner/Operator of Dark Storm Industries LLC***

138. Peter Morrisey is a lawful owner and operator of Dark Storm Industries, LLC (DSI) along with Plaintiff Ed Newman [Declaration of Peter Morrisey ¶ 3]

139. With the enactment of the Rifle Bill, Morrisey, Newman, and the entire staff of DSI were banned from engaging in constitutionally protected conduct - selling and/or transferring 'weapons in common use' to ordinary citizens; they could no longer sell any of our manufactured SARs and those stocked from other manufacturers which, in addition to violating the constitutional rights of myself, customers, and potential customers, also caused myself and DSI economic loss [Morrisey ¶ 6].

140. With the enactment of the Rifle Bill, selling their manufactured SARs, SARs manufactured by other companies and stocked in their store, and transferring SARs purchased by customers from out-of-state FFLs and shipped to DSI – lawful activity that they have engaged in for years – became a felony [Morrisey ¶ 7].

141. Customers and potential customers of Morrisey, Newman, and DSI who came into the store ready and intending to immediately purchase a SAR were banned from acquiring a 'weapon in common use' and they were banned from selling and transferring any SARs to their customers and potential customers [Morrisey ¶ 8].

142. Individuals who had purchased SARs from another company and had them shipped to DSI for a lawful transfer after a NICS criminal background check were now banned from taking possession of their firearms because of the Rifle Bill [Morrisey ¶ 9].

143. For more than several months after the enactment of the Rifle Bill, SCPD would not endorse existing pistol licenses to allow the purchase/transfer of SARs (a semi-auto rifle endorsement) [Morrisey ¶ 10].

144. Existing Suffolk County customers and potential customers could not apply for or obtain a rifle license, or obtain a SAR-endorsement on an existing pistol license, and were therefore precluded from taking possession of the SAR they planned and had intended to purchase [Morrisey ¶ 10].

145. Not only are Morrisey, Newman, and DSI prohibited from selling and transferring SARs to individuals who do not possess a rifle license (or a SAR-endorsed pistol license), customers and potential customers who do not have a rifle license (or a SAR-endorsed pistol license) are also subject to criminal penalties by SCPD and NYSP if they purchase and/or take possession of a SAR – or attempt to purchase/take possession of a SAR [Morrisey ¶ 11]; Penal Law § 265.65, 110/265.65.

146. Since the enactment of the Rifle Bill, numerous customers and potential customers have come into DSI seeking to purchase a SAR that day, but were prohibited from doing so because they did not have a license [Morrisey ¶ 12].

147. Most, if not all, expressed disdain at the idea of having to apply for and obtain a discretionary license from the government to acquire a SAR [Morrisey ¶ 12].

148. Morrisey/Newman/DSI have customers and potential customers who reside in Suffolk County that do not have a pistol license and have no intention of applying for one simply to lawfully acquire a SAR [Morrisey ¶ 13].

149. In Suffolk County, the application process for obtaining a pistol license from SCPD takes over 1½ years and can take up to 2-3 years [Morrisey ¶ 13].

150.     When the Rifle Bill took effect, DSI attempted to have the statutes preliminarily enjoined but our request was denied by the district court [Morrisey ¶ 14].

151.     Morrisey/Newman/DSI continue to have customers and potential customers come into the store with the present intention to purchase a SAR that day, and to whom we would have sold a SAR but for the enforcement of Penal Law §§265.65 and 265.66 by SCPD and NYSP [Morrisey ¶ 15].

152.     Defendants' enforcement of the Rifle Bill is negatively affecting the constitutional rights of Morrisey and Newman, their business DSI, and the Second Amendment rights of their customers' and potential customers' – the individuals in their market share [Morrisey ¶ 16].

153.     DSI has experienced an approximate 90% decrease in SAR sales since the Rifle Bill went into effect.  Customers and potential customers were either not licensed, object to seeking a rifle license, object to having to register every newly acquired rifle with the government, as required by Penal Law 400.00(9), and/or object to having to seek permission from SCPD every time they purchase a SAR [§ 400.00(9), which requires licensees seek a discretionary amendment of their license to add or delete a SAR, which "may" be granted – or not] [Morrisey ¶ 17].

154.     Moreover, as a licensed federal firearms dealer operating a gun store in New York State, DSI is also required to be licensed by New York and are subject to their rules and regulations for firearm dealers [Morrisey ¶ 18].

155.     If Morrisey/Newman/DSI violate the Rifle Bill and transfer or sell SARs to individuals who did not possess a valid rifle license (or rifle-endorsed NYS pistol license), they would not only incur the criminal penalties discussed above, their dealer's license would be

revoked [Morrisey ¶ 18].

Dated: January 27, 2025
        Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs*

By:  _Amy Bellantoni_
     Amy L. Bellantoni
     2 Overhill Road, Suite 400
     Scarsdale, New York 10583
     abell@bellantoni-law.com