UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MICHAEL MCGREGOR, ZACHARY GIAMBALVO,
PAUL FELICE, MATTHEW OLIVIERI, EDWARD
NEWMAN, and DARK STORM INDUSTRIES, LLC,

                             Plaintiffs,                    23 Civ. 01130 (GRB)(ARL)

     -against-

SUFFOLK COUNTY, New York,
Police Commissioner RODNEY HARRISON,
in his Official Capacity and Individually, and
MICHAEL KOMOROWSKI, Individually,

                             Defendants.
------------------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW

# IN SUPPORT OF THEIR

# MOTION FOR SUMMARY JUDGMENT

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
**2 Overhill Road, Suite 400**
**Scarsdale, New York 10583**
**abell@bellantoni-law.com**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES.................................................................................................. i

PRELIMINARY STATEMENT...................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ................................................................... 1

The Rifle Bill Violates the Second Amendment ........................................................... 1

The Purchasing Plaintiffs ............................................................................................... 3

The Selling Plaintiffs and Their Customers/Potential Customers ................................. 4

Suffolk County's Unconstitutional Licensing Policy – June 2022 through September 2023........ 5

LEGAL ARGUMENT .................................................................................................... 7

Summary Judgment Standard ........................................................................................ 7

The *Bruen* Standard For Second Amendment Challenges............................................ 7

I. PLAINTIFFS HAVE ARTICLE III STANDING.................................................... 9

     A. Plaintiffs have no burden to prove that SCPD will enforce the Rifle Bill ................ 9

     B. Giambalvo and Felice have Article III standing to challenge the Rifle Bill ........... 10

     C. Olivieri Has Article III standing to challenge the Rifle Bill ................................... 11

     D. McGregor Has Article III standing to challenge Suffolk County's Policies........... 12

     E. Newman and DSI have Article III standing to challenge the Rifle Bill and
     Suffolk County's policies............................................................................................. 12

II. THE RIFLE BILL IS INCONSISTENT WITH THE SECOND AMENDMENT ................. 14

     A. Broad discretion over common rifles ...................................................................... 14

     B. Criminal penalties for engaging in constitutionally protected conduct................... 16

III. PLAINTIFFS' CONDUCT IS "PRESUMPTIVELY PROTECTED".....................................17

    A. Possessing, acquiring, and selling weapons is protected conduct............................17

    B. Semiautomatic rifles are common weapons............................................................19

IV. THE BURDEN IMMEDIATELY SHIFTS TO DEFENDANTS...........................................20

CONCLUSION.......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v S.H. Kress & Co.*,
   398 U.S. 144, 90 S.Ct. 1598 (1970) ....................................................................... 7

*Andrews v. State*,
   50 Tenn. 165 (1871) .............................................................................................. 18

*Antonyuk v. James*,
   120 F.4th 941 (2d Cir. 2024) ..................................................................... 9, 10, 11

*Bach v. Pataki*,
   289 F.Supp.2d 217 (2003) ..................................................................................... 14

*Barrows v. Jackson*,
   346 U.S. 249 (1953) .............................................................................................. 13

*Caetano v. Massachusetts*,
   577 U.S. 411 (2016) .............................................................................................. 18

*Carey v. Population Servs., Int'l*,
   431 U.S. 678 (1977) .............................................................................................. 13

*Cayuga Nation v. Tanner*,
   824 F.3d 321 (2d Cir. 2016) .................................................................................... 9

*Craig v. Boren*,
   429 U.S. 190 (1976) ........................................................................................ 12, 13

*Dark Storm Indus. LLC v. Cuomo*,
   471 F. Supp. 3d 482 (N.D.N.Y. 2020) .................................................................. 13

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ........................................................................................ Passim

*Eisenstadt v. Baird*,
   405 U.S. 438 (1972) .............................................................................................. 13

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ................................................................................ 13

*Finley v. Nicandri*,
   272 A.D.2d 831 (3d Dept. 2000) ..................................................................... 14, 15

i

*Friedman v. City of Highland Park, Ill.*,
   577 U.S. 1039 (2015) ................................................................. 18

*Gamble v. United States*,
   587 U.S. ——, 139 S.Ct. 1960 (2019) ........................................... 9

*Griswold v. Connecticut*,
   381 U.S. 479 (1965) .................................................................. 13

*Ill. Ass'n of Firearms Retailers v. City of Chicago*,
   961 F.Supp.2d 928 (N.D. Ill. 2014) .............................................. 18

*Jackson–Bey v. Hanslmaier*,
   115 F.3d 1091 (2d Cir.1997) ....................................................... 10

*Juzumas v. Nassau Cnty., New York*,
   33 F.4th 681 (2d Cir. 2022) ........................................................ 15

*Leon v Murphy*,
   988 F.2d 303 (2d Cir.1993) .......................................................... 7

*Matter of Ioannis Kantarakias v. Kim*,
   2024 WL 1749880 (N.Y. App. Div. Apr. 24, 2024) ....................... 16

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) .............................................................. 15, 19

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ................................................................... 10

*Minervini v. Kelly*,
   22 A.D.3d 238 (1st Dept. 2005) ................................................... 15

*New York State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 (2022) .................................................................Passim

*Pacicca v. Allesandro*,
   19 A.D.3d 500 (2d Dept. 2005) ................................................... 15

*Peterson v. Kavanagh*,
   21 A.D.3d 617 (3d Dept. 2005) ................................................... 14

*Renna v. Bonta*,
   667 F. Supp. 3d 1048 (S.D. Cal. 2023) ........................................ 18

*Singleton v. Wulff*,
    428 U.S. 106, 96 S. Ct. 2868 (1976) ....................................................... 13

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ....................................................................................... 10

*Sullivan v. Little Hunting Park*,
    396 U.S. 229 (1969) ....................................................................................... 13

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ....................................................................................... 10

*Teixeira v. Cty. of Alameda*,
    873 F.3d 670 (9th Cir. 2017) ................................................................... 13, 18

*United States v. Decastro*,
    682 F.3d 160 (2d Cir. 2012) ......................................................................... 10

*United States v. Rahimi*,
    602 U.S. 680 (2024) ................................................................................... 8, 19

*Vitagliano v. Cnty. of Westchester, New York*,
    144 S. Ct. 486 (2023) ...................................................................................... 9

*W. Virginia State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943) ....................................................................................... 20

*Warth v. Seldin*,
    422 U.S. 490 (1975) ....................................................................................... 13

*Waskiewicz v. New York City Police Dep't*,
    211 A.D.2d 603 (1st Dept. 1995) .................................................................. 16

**Statutes**

N.Y. General Business Law § 898 ........................................................................ 16

**Rules**

Fed.R.Civ.P. 56(a) .................................................................................................. 7

**Other Authorities**

N.Y. Senate Bill 9458 .......................................................................................... 1, 2

*New York State Rifle & Pistol Assn. v. Bruen*,
  2021 WL 943564 (Reply Brief for Petitioners) .......................................................................... 20

How the British Gun Control Program Precipitated the American Revolution,
  6 Charleston L. Rev. 283 (2012) ............................................................................................ 16

Standing to Assert Constitutional *Jus Tertii*,
  88 Harv.L.Rev. 423 (1974) .................................................................................................... 13

# PRELIMINARY STATEMENT

Plaintiffs Michael McGregor, Zachary Giambalvo, Paul Felice, Matthew Olivieri, Edward Newman, and Dark Storm Industries LLC ("DSI") (collectively "Plaintiffs") submit the within Memorandum of Law, Local Rule 56.1 Statement of Undisputed Facts, and accompanying Declarations and exhibits in support of their motion for summary judgment.

Plaintiffs seek, *inter alia*, (i) declaratory and injunctive relief permanently enjoining the enforcement of Senate Bill 9458 ("the Rifle Bill") as facially unconstitutional in violation of the Second Amendment and as applied to Plaintiffs Giambalvo, Felice, Olivieri, Newman and DSI; and (ii) monetary damages from defendants Suffolk County and Michael Komorowski for enforcing a policy wherein no SAR endorsement of existing pistol licenses was allowed (and no SAR-only licenses could be obtained), which violated the Second Amendment rights of Michael McGregor, Ed Newman and DSI, and the customers on whose behalf Newman/DSI bring this action.

## STATEMENT OF UNDISPUTED FACTS[1]

### *The Rifle Bill Violates the Second Amendment*

Semiautomatic rifles ("SAR") are weapons in common use [SOF[2] ¶¶11, 91, 113].[3]  In the United States, tens of millions of SARs have been sold and are owned by ordinary Americans[4] [SOF ¶11]. Aside from handguns, SARs are the most popular self-defense weapon sold and owned in the nation [SOF ¶11]. Until the enactment of Senate Bill 9458 (the "Rifle Bill") in June 2022, New York State never required a license to acquire, sell, or transfer common rifles [SOF ¶2]. Senate Bill 9458 took effect on September 4, 2022, immediately criminalizing constitutionally

---

[1] Plaintiffs' Complete Local 56.1 Statement of Undisputed Facts, submitted simultaneously with this motion for summary judgment, is incorporated fully by reference herein.
[2] References to Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts are cited herein as "SOF."
[3] https://www.nssf.org/articles/commonly-owned-nssf-announces-over-24-million-msrs-in-circulation/
[4] https://www.nssf.org/articles/commonly-owned-nssf-announces-over-24-million-msrs-in-circulation/

protected conduct - the purchase, sale, receipt, and transfer of SARs to/by individuals who have not sought or obtained permission from the government to acquire and purchase SARs and, *inter alia*, for licensed individuals, requiring permission from the government before being able to take possession of their newly purchased property [SOF ¶¶ 3-9].[5]

The Rifle Bill created Penal Law § 265.66 making it a felony for anyone, including gun stores and manufacturers, to sell and/or transfer a SAR to an individual who does not hold a SAR license or a SAR-endorsed pistol license [SOF ¶ 7], and § 265.65, under which it is a crime for individuals who have not been issued a SAR license (or whose pistol license does not have a SAR endorsement) to purchase and/or receive a SAR [SOF ¶8]. Under the Rifle Bill, a SAR-licensed individual who purchases a SAR at the gun store cannot leave the store with his property; rather, the property must remain at the gun store while the licensee travels to the licensing officer with proof of purchase, amends their license to add the SAR, waits for and obtains the amended license with the new SAR registered on the back of the license, obtains a "purchase document" from the licensing officer, and travels back to the gun store with the "purchase document." Only then may the purchaser leave the store with (take possession of) his property [SOF ¶¶9, 35-36; Penal Law § 400.00(9); Bellantoni Ex. 5]. But, again, no purchase of a SAR can take place *in the first instance* in the absence of a SAR-endorsed pistol license or a SAR-only license [SOF ¶37].

The Suffolk County Police Department (SCPD) Pistol Licensing Bureau ("PLB") is the regulatory agency over licensed gun dealers within the jurisdiction of SCPD [SOF ¶109]. Any violation of the Penal Law constitutes grounds to suspend and/or revoke the dealers' license [SOF ¶109]. If a gun store in Suffolk County allowed an unlicensed individual to even handle a gun in

---

[5] https://www.governor.ny.gov/news/governor-hochul-signs-landmark-legislative-package-strengthen-gun-laws-and-protect-new-yorkers; NY State Senate Bill 2021-S9458 (nysenate.gov)

the store, that would constitute grounds to suspend and/or revoke their dealer's license [SOF ¶ 110].

### *The Purchasing Plaintiffs*

Plaintiffs Giambalvo and Felice have owned long guns, including SARs, for years, which were purchased after undergoing and passing a federal NICS check – neither plaintiff is disqualified from possessing firearms under any state or federal statute [SOF ¶¶60-61; 74-75].

Giambalvo and Felice, respectively, attempted to take possession of specifically identified SARs in the Fall of 2022 after the passage of the Rifle Bill, but were foreclosed because they did not have a SAR license [SOF ¶   63-65; 76-78].  Because the PLB does not have a process for issuing a SAR-only license [SOF ¶33], the only way for Giambalvo and Felice to obtain a license authorizing them to acquire SARs was to apply for and be issued a pistol license, and then request the license be amended to reflect the SAR endorsement [Penal Law § 400.00(2)].

Giambalvo and Felice each applied for a pistol license from the PLB; both Plaintiffs were denied by Komorowski [SOF ¶¶66-73; 79-86]. According to Komorowski, it would be futile for Giambalvo and Felice to reapply for a SAR-only license because the same criteria used for pistol licenses is applied to applications for a SAR-only license - and their applications would be denied [SOF ¶31].   As such, Giambalvo and Felice are absolutely foreclosed from purchasing semiautomatic rifles. Giambalvo and Felice would purchase their sought-after SARs today if the Rifle Bill were enjoined [SOF ¶¶ 71, 84].

Plaintiff Matthew Olivieri is a military veteran who attempted to purchase a SAR but was prohibited because he does not possess a SAR license, and he has no pistol license upon which to add the SAR endorsement [SOF ¶¶87-98]. Olivieri objects to having to seek permission from the government *before* exercising a pre-existing right [SOF ¶93]. No gun store in New York State will

sell and/or transfer a SAR to Olivieri because he does not have a license, which would be an illegal transfer under Penal Law § 265.66 and an illegal purchase under § 265.65.

### *The Selling Plaintiffs and Their Customers/Potential Customers*

Edward Newman ("Newman") is an owner and operator of Dark Storm Industries LLC ("DSI"), located in Suffolk County, New York [SOF ¶99]. DSI is fully licensed under federal and state laws to engage in the business of, *inter alia*, the manufacture and sale of SARs [SOF ¶100], and is the largest manufacturer of SARs in New York State [SOF ¶101]. Newman's interest and the interests of DSI are not limited to economics [SOF ¶103]. By criminalizing the sale of SARs to regular people who would pass a NICS check, Penal Law § 265.66 violates Newman's right to provide arms to "the People" [SOF ¶104]. Without a source from which to acquire 'arms,' the People's Right to 'keep' arms would eventually be eliminated [SOF ¶105]. Newman and DSI also bring this action to assert those concomitant rights of their customers/potential customers (hereinafter "customers") whose interests will be diluted and/or adversely affected should this constitutional challenge fail and the Rifle Bill continue to remain in force [SOF ¶106]. As the operator of a gun store, Newman has derivative standing to assert the subsidiary right to acquire arms on behalf of his customers [SOF ¶107].

Newman and DSI have suffered an injury-in-fact by the enactment of Penal Law §§ 265.65 and 265.66 because they are foreclosed from providing SARs to individuals who are 'firearms eligible' under state and federal law and would pass a NICS background check but do not have a SAR authorizing license [SOF ¶¶104, 108, 139-142]. Newman and DSI also suffered an injury-in-fact by the PLB policy of refusing to endorse existing pistol licenses, which foreclosed existing customers and potential customers, who are also pistol licensees, from acquiring SARs from Newman and DSI – or anyone else [SOF ¶104, 111-112, 116-118, 120-123, 143-144]. As licensed

gun dealers, Newman and DSI must adhere to the statutory prohibitions (and incur direct economic injury through the constriction of their customers' market share), or violate the statute, suffer criminal penalties, and revocation of their NYS and federal firearms licenses [SOF ¶108-110; 154-155]. DSI and its staff are prohibited from selling and transferring SARs to any individual who does not hold a SAR license or endorsed pistol license, including Plaintiffs Giambalvo, Felice, and Olivieri [SOF ¶¶109-112, 116-117, 135, 140]. Selling DSI-manufactured SARs, SARs manufactured by other companies, and transferring SARs purchased by customers out-of-state and shipped to DSI – lawful activity that they have engaged in for years – is now a felony [Penal Law § 265.66; SOF ¶¶140-142]. This group includes Giambalvo and Felice, and other ordinary citizens not part of this action but seeking access to DSI's market function: the purchase/ transfer of SARs and on whose behalf Newman/DSI advocate for their constitutional rights [SOF ¶¶135; 139, 140].

Eventually, Newman and DSI were able, to a limited extent, to resume providing SARs to a portion of the public, but there remains a category of customers they can no longer sell/transfer to because the individuals have either not applied for a SAR license, obtained a license, or refuse to seek permission to acquire or sell a common rifle [SOF ¶¶ 115-117, 135-145]. Customers have also declined to purchase SARs once learning that they will have to register the SAR and list it on the back of a license [SOF ¶153]. SCPD is enforcing the registration requirement for SARs, as they do for pistols, which requires permission and the amendment of one's license [SOF ¶¶ 34-37; Penal Law § 400.00(9)].

***Suffolk County's Unconstitutional Licensing Policy – June 2022 through September 2023***

The Commissioner of the Suffolk County Police Department is the statutory licensing officer for the residents residing SCPD jurisdiction [Penal Law § 265.00(17)]. The SCPD police commissioner and his designee, defendant Komorowski, have a statutory duty to issue the licenses

enumerated under § 400.00(2) and/or endorse existing pistol licenses [*Id.*; SOF ¶ 21]. But from the enactment of the Rifle Bill in September 2022 through September 2023, Komorowski and the PLB refused to issue SAR licenses or endorse existing pistol licenses [SOF ¶¶22-30].

It was not until September 2023 that Komorowski and the PLB began to endorse existing pistol licenses by adding the words "SEMI-AUTO RIFLE" to the back of the license upon request [SOF ¶30]. Even before the Rifle Bill was passed, Defendants had the ability to print information into the "Comments" section of an existing pistol license [SOF ¶¶24-27].

In mid-September 2023, a DSI customer went to the PLB to amend his pistol license to add a SAR endorsement - but the PLB refused; when he asked why, the PLB staff replied, "because I said so" [SOF ¶132-133]. Defendants intentionally refused to endorse existing pistol licenses, even though they were required by law and had the means of doing do, which foreclosed existing pistol licensees like McGregor and others from engaging in protected conduct – acquiring semiautomatic rifles [SOF ¶¶24-30].

Under Defendants' policy, no SAR licenses were issued nor were existing pistol licenses endorsed. Ignoring Penal Law §400.00(2) and NYSP guidance, Komorowski and the PLB took the position that an unendorsed pistol license was "good enough" to purchase/sell SARs [SOF ¶¶23, 126]. But an unendorsed pistol license is <u>legally insufficient</u> to purchase and/or sell SARs [SOF ¶¶15-17; Penal Law § 400.00(2); Kinzel Dec. at ¶¶ 1-3]. A SAR license or a SAR-endorsed pistol license is required [*Ibid*.]. The NYSP provided the following guidance to the public from July 2022 to the present:

> Can a dealer transfer a semi-automatic rifle to a customer who has a pistol license but not a semi-automatic rifle license?
>
> No, a dealer can only sell a semi-automatic rifle to a customer if that customer possesses a semi-automatic rifle license. **A pistol license alone is**

**not sufficient to allow a transfer of a semi-automatic rifle.**[6] (emphasis added). [SOF ¶¶16-17].

On September 28, 2023, McGregor was informed by the PLB that existing pistol licenses will now be amended to reflect the SAR endorsement [SOF ¶55]. But the PLB *still* has no ability to issue a SAR-only license and only issues pistol licenses that are then required to be amended to add the SAR endorsement on the back [SOF ¶33].

## LEGAL ARGUMENT

### Summary Judgment Standard

Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Adickes v S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970). Summary judgment is appropriate only where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party. *Leon v Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

### The *Bruen* Standard For Second Amendment Challenges

In Second Amendment challenges, courts are required to apply the test set forth by the Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). In keeping with *D.C. v. Heller*, 554 U.S. 570 (2008), the Supreme Court declared that when the Second Amendment's plain text covers an individual's conduct, the Constitution "presumptively protects that conduct." *Bruen*, 597 U.S. at 17.

---

[6] https://gunsafety.ny.gov/resources-gun-dealers

"To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Id.* (citation omitted).

Courts called upon to make such determinations are cautioned that "when it comes to interpreting the Constitution, not all history is created equal. Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *Bruen*, 597 U.S. at 34 (emphasis supplied) quoting *Heller*, 554 U.S. at 634–635.

While the Court's Second Amendment jurisprudence was "not meant to suggest a law trapped in amber"[7] the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692. In making that determination, "[w]hy and how the regulation burdens the right are central to this inquiry." *Id.* citing *Bruen*, 597 U.S. at 29.

Courts "must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances…Discerning and developing the law in this way is a commonplace task for any lawyer or judge." *Rahimi*, 602 U.S. at 692 (cleaned up) quoting, *Bruen*, 597 U.S. at 28.

The scope of the protection applicable to the Federal Government and states is "pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Bruen*, 597 U.S. at 37. And to the extent "later history contradicts what the text says, the text controls." *Bruen*,

---

[7] *United States v. Rahimi*, 602 U.S. 680, 691 (2024).

597 U.S. at 36-37.[8] Courts "must also guard against giving postenactment history more weight than it can rightly bear…post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen*, 597 U.S. at 36-37 (citations omitted).

# I. PLAINTIFFS HAVE ARTICLE III STANDING

To establish Article III standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Antonyuk v. James*, 120 F.4th 941, 976 (2d Cir. 2024) (citations omitted).

### A. Plaintiffs have no burden to prove that SCPD will enforce the Rifle Bill

*Antonyuk* rejected the idea that a plaintiff lacks Article III standing where they "failed to establish [that they have] been threatened with certain ... prosecution pursuant to the [challenged statutes]." *Antonyuk*, 120 F.4th at 1005-1006.

"Courts have not placed the burden on the plaintiff to show an intent by the government to enforce the law against it but rather presumed such intent in the absence of a disavowal by the government." *Antonyuk*, 120 F.4th at 1005 (cleaned up) citing *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 138 (2d Cir.), cert. denied sub nom. *Vitagliano v. Cnty. of Westchester, New York*, 144 S. Ct. 486 (2023) ("[W]here a statute specifically proscribes conduct, the law of standing does not place the burden on the plaintiff to show an intent by the government to enforce the law against it"). "Courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund.'" *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d

---

[8] "Liquidating indeterminacies in written laws is far removed from expanding or altering them." *Id.* quoting *Gamble v. United States*, 587 U.S. ——, ——, 139 S.Ct. 1960, 1987 (2019) (THOMAS, J., concurring); see also Letter from J. Madison to N. Trist (Dec. 1831), in 9 Writings of James Madison 477 (G. Hunt ed. 1910).

Cir. 2016); see also, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law) citing, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–129 (2007).

Defendants have not renounced an intent to enforce the Rifle Bill, nor has the New York State Police, which is the enforcement arm of the plethora of gun regulations enacted by Governor Hochul since 2022, including the Rifle Bill and enhanced routine inspections of New York State gun dealers to ensure compliance with such regulations.[9]

**B. Giambalvo and Felice have Article III standing to challenge the Rifle Bill**

As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy. *Antonyuk*, 120 F.4th at 979 (2d Cir. 2024) (discussing that, even with an injury-in-fact, the failure to apply for a license affects traceability) citing *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) and *Jackson–Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir.1997).

The statutory requirements for the issuance of a pistol license and/or a semiautomatic rifle license are the same [Penal Law § 400.00].[10] Giambalvo and Felice applied for pistol licenses which, if issued, could have been endorsed by the PLB to allow them to purchase SARs. But their pistol license applications were denied by Komorowski [SOF ¶¶66, 79]. Komorowski confirmed

---

[9] Gov. Hochul's June 6, 2022 "landmark legislative package" of firearm regulations, which includes the Rifle Bill, also requires State Police to conduct inspections of gun dealers every three years. Governor Hochul Signs Landmark Legislative Package to Strengthen Gun Laws and Protect New Yorkers | Governor Kathy Hochul (last visited 1/27/2025).
[10] The issuance of a concealed carry handgun license requires additional hurdles. See, Penal Law § 400.00(1)(o).

that it would be futile for Giambalvo and/or Felice to reapply for a pistol license and/or apply for a SAR-only license because they would both be denied [SOF ¶¶69, 82].

Giambalvo and Felice have also demonstrated "an intention to engage in a course of conduct arguably affected with a constitutional interest" and "that the intended conduct is proscribed by the challenged law." *Antonyuk*, 120 F.4th at 1007. Giambalvo and Felice have actually attempted to purchase specifically identified SARs since Fall 2022. Giambalvo and Felice has been trying to complete their online purchase of a World War II SAR (Giambalvo) and Black Rain Ordnance (Felice) to be transferred to them through an FFL (DSI) in Suffolk County. No such transfer can take place because they cannot obtain a license [SOF ¶¶62-63; 76-77]. The permanent injunction of the Rifle Bill will provide Giambalvo and Felice with the relief they seek – taking possession of the semiautomatic rifles. Based on the above, Giambalvo and Felice have suffered an injury-in-fact traceable to Defendants that would be redressed by the permanent injunction of Penal Law §§ 265.65 and 265.66.

### C.  Olivieri Has Article III standing to challenge the Rifle Bill

Plaintiff Olivieri did not apply for permission to acquire the same type of common rifle that he has owned for years already, as it is contrary to the very existence of the Second Amendment to require the People to seek permission *before* exercising a right codified by  the plain text. Olivieri should not be required to submit to the very regulations that he is challenging in order to have standing. Foreclosing conduct protected by the Second Amendment until an individual seeks permission under a discretionary licensing scheme is unconstitutional; the

application process greatly exceeds a non-nominal amount of time (in Suffolk County, between 1½ -3 years; under State law a six-month deadline[11]). [SOF ¶122; Bellantoni Dec. Ex. 8].[12]

### D. McGregor Has Article III standing to challenge Suffolk County's Policies

Michael McGregor has Article III standing to challenge PLB policies and seek retrospective monetary damages for the violations of his Second Amendment rights. As an existing pistol license holder, McGregor made several attempts to purchase a specific SAR, yet his conduct was precluded by the Rifle Bill because a pistol license does not authorize a person to purchase a SAR [Kinzel Dec. ¶¶ 1-3; Penal Law § 400.00(2)]. When he contacted the PLB to obtain a SAR license and/or amend his pistol license to include the SAR endorsement, McGregor was rejected. It was not until this lawsuit was filed and litigation proceeded that the PLB eventually acquiesced and agreed to endorse existing pistol licenses. From September 4, 2022 until September 21, 2023, the PLB policy enforced by Komorowski created an absolute barrier to McGregor's ability to engage in conduct presumptively protected by the Second Amendment – acquiring a common rifle.

Had Komorowski and the PLB simply endorsed McGregor's pistol license – a feat they, at all times, had the ability to accomplish – there would have been no barrier to his ability to purchase that specific SAR and others.

### E. Newman and DSI have Article III standing to challenge the Rifle Bill and Suffolk County's policies

The Supreme Court has held that "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Craig v. Boren*, 429 U.S. 190, 195 (1976)

---

[11] Penal Law § 400.00.

[12] *Giambalvo et al v. Suffolk County*, 2:22-cv-04778-[GRB-ST] (E.D.N.Y.) at ECF Doc. 27-8, Ex. 1 (PLB email advising plaintiff Giambalvo, "there is approximately a 2 year wait before you will hear from an investigator for the in person interview"; ECF Doc. 27-10 (PLB advising plaintiff Shane Mashkow in July 2022, after laughing, that he "should get an appointment [with an investigator] sometime in February 2024").

(finding vendor was "entitled to assert those concomitant rights of third parties that would be 'diluted or adversely affected' should her constitutional challenge fail and the statutes remain in force") citing, *Griswold v. Connecticut*, 381 U.S. 479, 481 (1965); Note, Standing to Assert Constitutional Jus Tertii, 88 Harv.L.Rev. 423, 432 (1974); accord, *Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 493 (N.D.N.Y. 2020) quoting, *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017) (relying on *Craig v. Boren*, supra).

. "Otherwise, the threatened imposition of governmental sanctions might deter appellant Whitener and other similarly situated vendors from [engaging in the prohibited conduct] thereby ensuring that 'enforcement of the challenged restriction against the (vendor) would result indirectly in the violation of third parties' rights.'" *Id.* citing, *Warth v. Seldin*, 422 U.S. 490, 510 (1975); *Eisenstadt v. Baird*, 405 U.S. 438 (1972); *Sullivan v. Little Hunting Park*, 396 U.S. 229, 237 (1969).

"This Court repeatedly has recognized that such injuries establish the threshold requirements of a "case or controversy" mandated by Art. III." *Craig*, 429 U.S. at 194-95 citing, *Singleton v. Wulff*, 428 U.S. 106, 111, 96 S. Ct. 2868, 2873 (1976) (doctors who receive payments for their abortion services are "classically adverse" to government as payer); *Sullivan v. Little Hunting Park*, 396 U.S. 229, 237 (1969); *Barrows v. Jackson*, 346 U.S. 249, 255-56 (1953).

Edward Newman, as the owner and operator of a New York licensed gun store, and DSI have derivative standing to assert the subsidiary right to acquire arms on behalf of their customers and potential customers. See also, *Carey v. Population Servs., Int'l*, 431 U.S. 678, 683 (1977); *Ezell v. City of Chicago*, 651 F.3d 684, 693, 696 (7th Cir. 2011) ("*Ezell I*") (supplier of firing-range facilities had standing to challenge Chicago ordinance banning firing ranges on behalf of potential customers).

Newman/DSI's ability to sell/transfer SARs and the ability of their customers and potential customers to purchase SARs, was foreclosed by the criminal penalties under Penal Law § 265.66 and civil penalties, including the revocation of their dealer's license. Newman and DSI have standing to seek permanent injunctive relief because they still have customers who have applied for and have been denied a license and whose reapplication is futile – Giambalvo and Felice – and customers and potential who either cannot or will not apply for a discretionary license to exercise a *pre-existing* enumerated right.

Newman/DSI also have standing to challenge Suffolk County's policy because, had the PLB endorsed existing pistol licenses, their licensed customers would have applied for and obtained a SAR endorsement; but Komorowski and the PLB shut down any avenue for that to take place and foreclosed licensed individuals from acquiring SARs for over a year, and foreclosed Newman and DSI from providing SARs to such individuals.

## II. THE RIFLE BILL IS INCONSISTENT WITH THE SECOND AMENDMENT

### A. Broad discretion over common rifles

The Rifle Bill imposes criminal and civil penalties on ordinary people for engaging in presumptively protected conduct. [SOF ¶¶ 4-10]. The Rifle Bill subjugates semiautomatic rifles to the same 'may issue' discretionary licensing scheme New York has unconstitutionally enforced on handguns since 1911, "vest[ing] broad discretion in licensing officers" [*Finley v. Nicandri*, 272 A.D.2d 831, 832 (3d Dept. 2000) (handguns)] to issue, suspend, revoke, and refuse to renew the ability to exercise the Right (the "Scheme")[13] if, at any time, a licensee becomes "ineligible to

---

[13] The same idea was expressed in *Peterson v. Kavanagh*, 21 A.D.3d 617, 617–18 (3d Dept. 2005) "reject[ing] petitioner's argument that the Second Amendment confers an individual right on him to keep and bear arms. Absent evidence that possession of the pistol bears some reasonable relationship to the preservation or efficiency of a well-regulated militia, no individual right to possess it is conferred" (citing *Bach v. Pataki*, 289 F.Supp.2d 217, 224–226 (2003) was put to rest by the Supreme Court in *Heller*, 554 U.S. at 570.

obtain a license" for any reason. See, *Juzumas v. Nassau Cnty., New York*, 33 F.4th 681, 687 (2d Cir. 2022); Penal Law § 400.00(11). A licensee is not entitled to a formal hearing before revocation. *Pacicca v. Allesandro*, 19 A.D.3d 500, 501 (2d Dept. 2005).

Under Penal Law § 400.00(1)(b), subjective criteria are utilized to decide who can and cannot exercise presumptively protected rights by deciding what constitutes the "character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others." Even then, the license "may issue" – or it may not. By the Rifle Bill, semiautomatic rifles have been demoted from a right to a privilege – in the same manner that handguns are treated in New York State. See e.g., *Minervini v. Kelly*, 22 A.D.3d 238, 239 (1st Dept. 2005) (handguns).

But the Supreme Court made clear that the "very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Bruen*, 597 U.S. at 23 quoting, *Heller*, 554 U.S. at 634. "A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all." *Ibid.*

The Rifle Bill traps an entire class of commonly used rifles in a licensing scheme built on interest-balancing - *thrice rejected* by the Supreme Court[14] - where the government's desire to 'protect the public' always ends up outweighing Second Amendment rights. See, e.g., *Finley v. Nicandri*, 272 A.D.2d 831, 832, 708 N.Y.S.2d 190, 191 (2000) (citing state's substantial, legitimate interest and grave responsibility, to ensure the safety of the general public from individuals who, by their conduct, have shown themselves to be "lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument."); *Waskiewicz v. New York*

---

[14] See, *Heller*, 554 U.S. at 634–35; *McDonald,* 561 U.S. at 785–86; and *Bruen*, at 2131.

*City Police Dep't*, 211 A.D.2d 603, 604 (1ˢᵗ Dept. 1995) (license revoked based on arrest, no resulting conviction).[15]

Notwithstanding *Bruen,* New York's licensing regime, which now includes semiautomatic rifles, continues to be a "may issue" scheme that vests "broad discretion" in the licensing officers – a fact recently reiterated by the Appellate Division, Second Department in *Matter of Ioannis Kantarakias v. Kim,* No. 2023-04632, 2024 WL 1749880, at *1 (N.Y. App. Div. Apr. 24, 2024) (affirming denial of pistol license to non-prohibited petitioner because pistol licensing officers have "**broad discretion in ruling on permit applications and may deny an application for any good cause**") (citing a number of pre-*Bruen* state court cases and applying a 'rational basis' standard) (emphasis added). The majority of states - twenty-nine (29) at last count – are permitless jurisdictions that remain loyal to the Constitution.[16] The freedom to exercise the rights protected by the Second Amendment should not be dependent on one's zip code.

### B. Criminal penalties for engaging in constitutionally protected conduct

The Rifle Bill imposes criminal penalties for constitutionally protected conduct. A person is guilty of criminal purchase of a semiautomatic rifle when he purchases or takes possession of a semiautomatic rifle and does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter. Criminal

---

[15] New York already has a system in place to ensure that "prohibited persons" cannot purchase any type of firearm New York. General Business Law § 898 requires that every sale, purchase, and disposal of handguns, rifles and shotguns be conducted through a Federal Firearms Licensee (FFL); no transaction can proceed unless a NICS background check is performed and the FFL receives a "Proceed" response. , The Rifle Bill interjects subjective and "broad" discretion by government officials to prevent non-disqualified, ordinary citizens from acquiring a common weapon. Such "broad attempts to disarm the people… or to render them defenseless, are anathema to the Second Amendment; such disarmament is what the British tried to impose, and what the Americans fought a war to ensure could never again happen in America." David B. Kopel, How the British Gun Control Program Precipitated the American Revolution, 6 Charleston L. Rev. 283, 285 (2012).

[16] https://worldpopulationreview.com/state-rankings/constitutional-carry-states

purchase of a semiautomatic rifle is a class A misdemeanor for the first offense and a class E felony for subsequent offenses. Penal Law § 265.65.

A person is guilty of criminal sale of a semiautomatic rifle when, knowing or having reason to know it is a semiautomatic rifle, he sells, exchanges, gives or disposes of a semiautomatic rifle to another person and such other person does not possess a license to purchase or take possession of a semiautomatic rifle as provided in subdivision two of section 400.00 of this chapter. Criminal sale of a semiautomatic rifle is a class E felony. Penal Law § 265.66.

The Rifle Bill also requires licensees to (i) obtain permission before purchasing, selling or transferring a SAR[17] (ii) register every SAR, and (iii) amend their license to list all acquired or transferred SARs. Penal Law § 400.00(9). The Second Amendment guarantees the *natural right* to possess and carry weapons for self-defense. *Heller*, 554 U.S. at 592. Imposing criminal penalties for the exercise of enumerated rights is repugnant to the Constitution.

## III. PLAINTIFFS' CONDUCT IS "PRESUMPTIVELY PROTECTED"

Under the *Bruen* test, conduct that falls within the plain text of the Second Amendment is presumptively protected by the Constitution. *Bruen*, 597 U.S. at 17.

### A. Possessing, acquiring, and selling weapons is protected conduct

Plaintiffs' conduct – possessing arms in common use - is presumptively protected by the plain text of the Second Amendment. *Heller*, 554 U.S. at 592 (the plain text "guarantee[s] the individual right to possess and carry weapons in case of confrontation); *Caetano v. Massachusetts*,

---

[17] "***If granted***, a record of the amendment describing the weapons involved shall be filed by the licensing officer in the executive department, division of state police, Albany." Like children, licensees must seek and obtain permission.

77 U.S. 411, 411 (2016) (per curiam) (stun guns) (the Second Amendment protects all weapons in common use).[18, 19, 20] This right encompasses the ability to acquire weapons as well.

Likewise, the right to keep arms encompasses the right to sell them to 'the People.' *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017) (The right to keep arms, necessarily involves the right to purchase them); *Renna v. Bonta*, 667 F. Supp. 3d 1048, 1061 (S.D. Cal. 2023). As with purchasing ammunition and maintaining proficiency in firearms use, the core Second Amendment right to keep and bear arms for self-defense "wouldn't mean much" without the ability to acquire arms. *Teixeira*, 873 F.3d at 677–78 (citations omitted).

As the Tennessee Supreme Court cogently observed in 1871, interpreting that state's constitution, that "[t]he right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair." *Teixeira*, 873 F.3d at 677–78 quoting, *Andrews v. State*, 50 Tenn. 165, 178 (1871); *Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F.Supp.2d 928, 930 (N.D. Ill. 2014) (emphasis in original) ("[T]he right to keep and bear arms for self-defense under the Second Amendment ... must also include the right to acquire a firearm").

The starting point of this Court's assessment of the constitutionality of the Rifle Bill is the *presumption* that Plaintiffs enjoy a pre-existing and "guaranteed individual right"[21] to purchase, acquire and/or sell semiautomatic rifles.

---

[18] Semi-automatic rifles have been commercially available in America since at least 1906. https://www.ammoland.com/2017/11/semi-auto-rifles-common-for-100-years-mass-shooters-not/#axzz8YSEYNSjL; https://thegreatmodel8.remingtonsociety.com/?page_id=8

[19] https://www3.nssf.org/share/PDF/pubs/Firearms-Retailer-Survey-Report-2021.pdf

[20] Bloomberg, Why Gunmakers Would Rather Sell AR-15s Than Handguns, FORTUNE (June 20, 2018), available at https://fortune.com/2018/06/20/why-gunmakers-would-rather-sell-ar-15s-than-handguns/

[21] See, *Heller,* 554 U.S. at 592 (finding that the plain text of the Second Amendment "guarantee[s] the individual right to possess…weapons…").

**B. Semiautomatic rifles are common weapons**

Semiautomatic rifles are weapons in common use for self-defense[22] and protected by the plain text of the Second Amendment. *Heller*, 544 U.S. at (handguns); *Caetano*, 577 U.S. at 412 (stun guns); *Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) (Thomas, J. on denial of cert) ("The overwhelming majority of citizens who own and use such rifles do so for lawful purposes, including self-defense and target shooting. Under our precedents, that is all that is needed for citizens to have a right under the Second Amendment to keep such weapons.") (cleaned up) citing, *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767-768 (2010); *Heller*, 554 U.S. at 628–629.

Tens of millions of semiautomatic rifles have been sold and are owned in the United States [SOF ¶110]. Second only to handguns, SARs are the most popular self-defense weapon sold and owned in the United States [SOF ¶111].

Plaintiffs' conduct – purchasing, taking possession of, giving, exchanging, and/or selling weapon in common use – falls within the plain text of the Second Amendment, and is presumptively protected. To defeat Plaintiffs' motion for summary judgment, Defendants must prove that the Rifle Bill is consistent with the plain text of the Second Amendment. It is not.

While Plaintiffs have no burden to disprove Defendants' burden of historical proof, rifles have been freely owned, made, purchased, possessed, exchanged, and carried since the mid-1600s.[23] And *Rahimi* reconfirmed that the Second Amendment "extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not [yet] in existence." *Rahimi*, 602 U.S. at 691 quoting, *Heller,* 554 U.S. at 582.

---

[22] https://www.nssf.org/articles/commonly-owned-nssf-announces-over-24-million-msrs-in-circulation/
[23] https://www.guns.com/news/2017/07/01/guns-of-the-greatest-revolution-ever

Had it been our Nation's history and tradition to make the possession of ordinary common weapons subject to the discretion of the government, the Second Amendment would be a nullity. There was no licensing requirement for rifles, nor was purchasing, acquiring and/or selling rifles without the government's permission a criminal act[24] - a concept *wildly inconsistent* with this Nation's historical traditions. Long guns were not licensed in the Founding Era, nor was licensing long guns a New York State 'tradition' [Bellantoni Ex. 6; SOF ¶115]. Regulations that empower a government official to subjectively interfere with the right to possess and carry weapons are repugnant to the plain text.

> "If there be any fixed stars in our constitutional constellation, it is that no official high or petty, shall dictate whether we can exercise our fundamental constitutional rights."

Reply Brief for Petitioners, *New York State Rifle & Pistol Assn. v. Bruen*, 2021 WL 943564 citing, *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943).

## IV. THE BURDEN IMMEDIATELY SHIFTS TO DEFENDANTS

Having established that Plaintiffs' conduct is presumptively protected, the burden immediately shifts to Defendants to justify its regulations. *Bruen*, 597 U.S. at 17. To defeat Plaintiffs' motion for summary judgment, Defendants must prove that the Rifle Bill is consistent with the plain text of the Second Amendment and the Nation's historical traditions. Because Plaintiffs' conduct rests snugly inside of the Second Amendment's 'unqualified command,' summary judgment in Plaintiffs' favor is warranted. See e.g., *Bruen*, 597 U.S. at 17.

## CONCLUSION

Plaintiffs' motion for summary judgment should be granted in its entirety.

---

[24] The Rifle Bill also subjects all rifle owners to – upon demand – being stopped and required to display their license to law enforcement under Penal Law § 400.00(8) simply because they are engaging in conduct protected by the Second and Fourteenth Amendments.

Dated: January 27, 2025
       Scarsdale, New York

                         THE BELLANTONI LAW FIRM, PLLC
                         *Attorneys for Plaintiffs*

By:   *Amy Bellantoni*
                         Amy L. Bellantoni
                         2 Overhill Road, Suite 400
                         Scarsdale, New York 10583
                         abell@bellantoni-law.com