UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

MICHAEL MCGREGOR, ZACHARY GIAMBALVO,
PAUL FLEICE, MATTHEW OLIVIERI, EDWARD
NEWMAN, and DARK STORM INDUSTRIES, LLC,

23 Civ. 01130 (GRB)(ARL)

Plaintiff,

-against-

SUFFOLK COUNTY, New York,
Police Commissioner RODNEY HARRISON,
in his Official Capacity and Individually, MICHAEL
KOMOROWSKI, Individually, and Acting Superintendent
STEVEN G. JAMES, in his Official Capacity,

Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

## COUNTY DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO
## RULE 56

DATED:     Hauppauge, New York
           March 19, 2025

Respectfully submitted,

Christopher J. Clayton
Suffolk County Attorney
Attorney for County Defendants
H. Lee Dennison Building
100 Veterans Memorial Highway
P. O. Box 6100
Hauppauge, New York 11788

By: Anne C. Leahey
Assistant County Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................*iii*

PRELIMINARY STATEMENT ................................................................... 1

PROCEDURAL BACKGROUND AND FACTUAL STATEMENT .......... 1

POINT I: PLAINTIFFS DO NOT POSSESS STANDING TO SUE THE
COUNTY AS THEY HAVE NOT ALLEGED AN INUJURY-IN-FACT
THAT IS TRACEBALE TO THE COUTY.................................................... 3

    Felice and Giambalvo do not have standing to challenge
    County policies ............................................................................................ 4

    Olivieri does not have standing to challenge County policies................... 4

    McGregor does not have standing to challenge County policies .............. 5

    Newman and DSI do not possess derivative standing to challenge County
    policies ....................................................................................................... 8

POINT II: PLAINTIFFS' CLAIM THAT COUNTY POLICIES PRECLUDE
THE PURCHASE AND SALE OF A SAR IS MOOT ................................ 11

POINT III: THE COMPLAINT SHOULD BE DISMISSED AS THE
UNDISPUTED FACTS ESTABLISH THAT THE COUNTY
DEFENDANTS DID NOT VIOLATE PLAINTIFFS' SECOND
AMENDMENT RIGHTS ............................................................................ 12

    The Second Amendment right to bear arms for offensive or
    defensive action in a case of conflict with another person coexists
    with local licensing regulations ............................................................... 13

    The County Defendants have established that their implementation
    of the Rifle Bill did not violate the Second Amendment by
    impeding Plaintiffs' right to bear arms for self-defense.......................... 14

i

The Monell claims against the County and Commissioner Harrison
in his official capacity should be dismissed since the record
establishes, as a matter of law, that PLB policies did not violate
Plaintiffs' Second Amendment rights....................................................... 17

Plaintiffs' claims against Commissioner Harrison and Lt. Komorowski
in their individual capacities should be dismissed.................................... 17

POINT IV: PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF
AGAINST THE COUNTY SHOULD BE DISMISSED.............................. 19

CONCLUSION............................................................................................. 20

WORD COUNT............................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Agosto v. New York City Dep't of Educ.,*
982 F.3d 86 (2d Cir. 2020) ................................................................................................................ 17

*Antonyuk v James,*
120 F.4th 941 (2d Cir. 2024) ............................................................................................................ 13

*Askins v Doe,*
727 F3d 248 (2d Cir 2013) ............................................................................................................... 17

*Back v. Hastings On Hudson Union Free Sch. Dist.,*
365 F.3d 107 (2d Cir. 2004) ............................................................................................................. 18

*Black v Coughlin,*
76 F.3d 72 (2d Cir. 1996) ................................................................................................................. 19

*District of Columbia v. Heller,*
554 U.S. 570 (2008) ......................................................................................................................... 13

*Duane Reade, Inc., v. St. Paul Fire and Marine Ins. Co.,*
411 F.3d 384 (2d Cir 2005) .............................................................................................................. 20

*Gazzola v. Hochul,*
645 F.Supp.3d 37 (NDNY 2022) ................................................................................................ 10, 11

*Gazzola v. Hochul,*
88 F.4th 186 (2d Cir. 2023) ............................................................................................................ 8, 9

*Giambalvo v. Suffolk Cnty., New York,*
656 F. Supp. 3d 374 (EDNY 2023) ................................................................................................ 2, 5

*Grullon v. City of New Haven,*
720 F.3d 133 (2d Cir. 2013) ............................................................................................................. 19

*Harding v Gould,*
2024 US Dist LEXIS 141944 (SDNY Aug. 9, 2024, No. 22 CV 6285 [VB]) ....................................... 17

*Jackson–Bey v. Hanslmaier,*
115 F.3d 1091, 1096 (2d Cir.1997) ................................................................................................ 5, 8

*Juzumas v. Nassau County, New York,*
33 F.4th 681 (2d Cir. 2022) ............................................................................................................... 3

*Knight v City of NY,*
2024 US Dist LEXIS 8820 (SDNY Jan. 17, 2024, No. 22-CV-3215 [VEC][VF]) ................................ 11

*McDonald v. City of Chicago,*
561 U.S. 742 (2010) ......................................................................................................................... 13

*McGregor v. Suffolk Cnty., New York,*
  690 F. Supp. 3d 147 (EDNY 2023) .......................................................................................................5

*Mills v New York City,*
  2024 US Dist LEXIS 220617 (SDNY Dec. 4, 2024, No. 23-cv-07460 [JSR]) .................................. 10,13

*Monell v. Dept. of Social Services of City of New York,*
  436 U.S. 658, 98 S.Ct. 2018 (1978) ...............................................................................................2, 17

*NY State Rifle & Pistol Assn. v Bruen,*
  597 US 1 (2022) ........................................................................................................................... 13

*Patterson v Coughlin,*
  761 F2d 886 (2d Cir 1985) .............................................................................................................. 13

*Spokeo, Inc. v. Robins,*
  578 U.S. 330, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) ......................................................................4

*Vives v. City of New York,*
  524 F.3d 346 (2d Cir. 2008) .............................................................................................................3

**Statutes**

28 U.S.C. § 2403 ...............................................................................................................................3

42 U.S.C. § 1983 ....................................................................................................... 1, 3, 17, 18,19

N.Y. Penal Law § 400.00 ...........................................................................1, 4, 10, 14, 16, 18

Penal Law § 265.65 ................................................................................................................. 4, 20

**Other**

Fed. R. Civ. P. 56 ............................................................................................................................ 13

Federal Rule of Civil Procedure 24 ................................................................................................3

U.S. Const, amend. II ................................................................................................................ 13

## PRELIMINARY STATEMENT

Defendants County of Suffolk, Suffolk County Police Commissioner Rodney Harrison (in his official and individual capacity), and Suffolk County Police Lieutenant Michael Komorowski (in his individual capacity) (collectively "the County Defendants"), respectfully submit this memorandum of law in support of their motion for summary judgment.

### Procedural Background and Factual Statement

On December 1, 2023, Plaintiffs filed an Amended Complaint ("Complaint"), DE 47, pursuant to 42 U.S.C. § 1983, against the County Defendants and against Dominick L. Chiumento, the Acting Superintendent of the New York State Police ("the State Defendant")[1] for alleged harms "resulting from (i) Defendants' enforcement of Senate Bill 9458 (the 'Rifle Bill'), and (ii) the enforcement of licensing policies and procedures in Suffolk County." DE 47, p.1.

The Rifle Bill was enacted on June 6, 2022 and went into effect on September 4, 2022. It provides that "[a] license for a semiautomatic rifle, other than an assault weapon or disguised gun, shall be issued to purchase or take possession of such a semiautomatic rifle." N.Y. Penal Law § 400.00 (2). The Rifle Bill sets forth eligibility requirements for a license for a semi-automatic rifle ("SAR") which are exactly the same for a license "to carry or possess a pistol or revolver or to purchase or take possession of a semiautomatic rifle." Penal Law § 400.00 (3).

In Count I of the Amended Complaint, Plaintiffs alleged that "defendants are liable to plaintiffs for violations of their preexisting and guaranteed individual rights as protected by the Second Amendment." DE 47, ¶ 169. In Count II, Plaintiffs alleged that the County "is liable to the

---

[1] Acting Superintendent Chiumento was later terminated as a defendant, replaced by successors in office to the superintendent position, *i.e.* Acting Superintendent Steven Nigrelli on 2/20/24 and Superintendent Steven G James on 10/30/24.

plaintiff under <u>Monell v. Dept. of Social Services of City of New York</u>, 436 U.S. 658, 98 S.Ct. 2018 (1978) for the violations of Plaintiffs' constitutional rights." DE 47, ¶ 169.

The Amended Complaint's primary challenge was not to County policy, but to the constitutionality of the state law which amended New York's penal code to include a licensing requirement for the purchase and possession of a SAR. DE 47, ¶¶ 37 – 63. As far as claims against the County, the Amended Complaint challenged two policies of the Suffolk County Pistol Licensing Bureau ("PLB"): (1) it alleged that "from June 6, 2022 through September 2023, and at the direction of Harrison and Komorowski, the SCPD Pistol License Bureau refused to amend existing handgun licenses to reflect the Rifle endorsement," DE 47, ¶ 75; (2) it alleged that PLB's "process for obtaining a handgun license takes between 2-3 years,."" DE 47, ¶ 90, [2] with the result that "Plaintiffs and all other similarly situated people in Suffolk County are *de facto* banned from purchasing, selling, taking possession of, selling, giving, exchanging, and disposing of semiautomatic rifles," DE 47, ¶ 92.

In the Amended Complaint, Plaintiffs sought the following relief: a declaration that the Rifle Bill is unconstitutional; a declaration that County policies for the licensure of SARs are unconstitutional; an injunction enjoining state and county officials "from enforcing any provision of Senate Bill 9458"; nominal damages for violating Plaintiff's Second Amendment rights; compensatory damages for violating Plaintiffs' Second Amendment rights; an award of economic damages to Newman and DSI; punitive damages against Defendants Harrison and Komorowski; and costs, disbursements, and attorney's fees. DE 47, Wherefore Clause

---

[2] This Court denied Plaintiffs motion for injunctive relief against the County for alleged delays in processing pistol licenses in the related case of <u>Giambalvo v. Suffolk Cnty., New York</u>, 656 F. Supp. 3d 374 (EDNY 2023*), app dism'd* 2023 U.S. App. LEXIS 35775 (2d Cir .October 10, 2023).

On November 13, 2024, the parties filed a stipulation of dismissal as to Superinendent Steven G. James, DE 82, which was So Ordered on November 14, 2024. On December 9, 2024, the Court granted a consent motion filed by nonparty Letitia James, Attorney General of the State of New York, which sought to intervene in this action pursuant to 28 U.S.C. § 2403(b) and Federal Rule of Civil Procedure 24(a)(1) for the limited purpose of defending the constitutionality of the Rifle Bill. DE 86; DE 85, p.1. On December 12, 2024, the Court adopted the parties' proposed scheduling order for Plaintiffs' Motion and for the County Defendants and State Intervenor's cross-motions for summary judgment.

In the instant cross-motion for summary judgment, the County Defendants refrain from responding to Plaintiffs' claims regarding the facial constitutionality of the Rifle Bill as the County cannot be liable under 42 U.S.C. § 1983 for implementing state law by enforcing the mandatory provisions of the Rifle Bill.[3] Rather, the County Defendants' motion addresses Plaintiffs' allegations regarding the unconstitutionality of the County's implementation of the Rifle Bill, demonstrating herein that these allegations should be dismissed as a matter of law. Relevant facts are set forth in the County Defendants' 56.1 Statement of Material.

**POINT I: PLAINTIFFS DO NOT POSSESS STANDING TO SUE THE COUNTY DEFENDANTS AS THEY HAVE NOT ALLEGED AN INJURY-IN-FACT THAT IS TRACEABLE TO THE COUNTY.**

Plaintiffs fail to meet the basic requirements for Article III standing, which require that , a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

---

[3] Vives v. City of New York, 524 F.3d 346, 352 (2d Cir. 2008) (agreeing "with all circuits to address state laws mandating enforcement by municipal police officers that a municipality's decision to honor this obligation is not a conscious choice" with the result that "the municipality cannot be liable under Monell in this circumstance"); Juzumas v. Nassau County, New York, 33 F.4th 681, 689 (2d Cir. 2022) (holding that the mandatory language of Penal Law § 400.00(11)(c) "ends our inquiry" regarding Nassau County's § 1983 liability as plaintiff's "dispute rests with the state law, whose constitutionality he has not challenged.")

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016).

**Felice and Giambalvo do not have standing to challenge County policies.**

PLB denied Giambalvo's and Felice's applications for a pistol license because they failed to meet the eligibility requirements for a pistol license which are set forth in Penal Law § 400.00(1). Defendants' Rule 56.1 Statement of Material Facts ("SOF"), ¶ 80. Since the Rifle Bill sets forth the same eligibility requirements for a license to carry or possess a pistol as for a license to purchase or take possession of a SAR, *see* Penal Law § 400.00 (3), Felice's and Giambalvo's inability to meet the eligibility requirements for a pistol license meant that they were ineligible to meet the requirements for a SAR license, a point they concede. *See* DE 47, ¶ 138 (acknowledging that "[t]he Rifle Bill constitutes an absolute bar to Mr. Felice's exercise of conduct protected by the plain text of the Second Amendment – keeping arms – because Penal Law § 265.65 prohibits Mr. Felice from purchasing semiautomatic rifles without a rifle license'); DE 47, ¶ 129 (acknowledging that "SCPD and NYSP's enforcement of the Rifle Bill is an absolute bar to Giambalvo's protected conduct"). Since Felice's and Giambalvo's inability to acquire a SAR is traceable to the enactment of the Rifle Bill, rather than to the County's procedures for implementing the Rifle Bill, Felice and Giambalvo do not possess standing to sue the County Defendants for their implementation of the Rifle.

**Olivieri does not have standing to challenge County policies**.

Olivieri has averred that he has "no intention of obtaining a Rifle License to lawfully purchase a SAR, which is a constitutional right that requires no permission from the government to exercise." SOF ¶ 85, citing Olivieri Decl. ¶ 8. Olivieri's refusal to apply to the PLB for SAR licensure deprives him of standing to challenge the County Defendants' implementation of the

Rifle Bill. Jackson–Bey v. Hanslmaier, 115 F.3d 1091, 1096 (2d Cir.1997) ("[a]s a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy"); Giambalvo v. Suffolk Cnty., New York, *supra*, 656 F. Supp. 3d 374, 381 (EDNY Feb. 14, 2023) ("the issues raised by these plaintiffs prove inconsequential, as their failures – including their refusal to engage in mandatory firearms training – ensures that they cannot legally qualify for a carry permit under constitutionally permissible requisites").

**McGregor does not have standing to challenge County policies.**

This Court, in a previous decision herein, "assume[d] that, at a minimum, plaintiff McGregor has standing to challenge the Rifle Bill," finding that "McGregor is the only plaintiff who has complied with the local licensing system of Suffolk County, attempted to purchase a semiautomatic rifle, and was denied." McGregor v. Suffolk Cnty., New York, 690 F. Supp. 3d 147, 152 (EDNY 2023), *appeal withdrawn*, 2023 WL 10408195 (2d Cir. Oct. 10, 2023). However, the factual record does not bear out the Court's assumption, based on an analysis of the allegations in the Complaint, that McGregor complied with the County's licensing system, attempted to purchase a semiautomatic rifle, and was denied.

The Complaint alleged that "[s]hortly after the passage of the Rifle Bill, Dr. McGregor attempted to purchase a Ruger 10/22 semiautomatic rifle at RT Smoke 'N Gun ('RT Smoke'), a federally licensed firearm dealer in Mount Vernon (Westchester County), New York." DE 47, ¶ 107. Allegedly, he "was unable to purchase the Ruger or any other semiautomatic rifle from RT Smoke because he did not hold a license to purchase or take possession of semiautomatic rifles. *Id*. at ¶ 107.

The facts do not support that that McGregor was unable purchase a SAR from RT Smoke in September of 2022 due to the County's policies for the purchase and licensure of SARs.

McGregor stated that he was unable to purchase a SAR from RT Smoke due to the enactment of the Rifle Bill (rather than due to County policies). SOF ¶ 67, McGregor Decl. ¶¶ 6-7 (averring that he was unable to buy a SAR from RT Smoke "because of the passage of the Rifle Bill" since "RT Smoke would not sell a semiautomatic rifle to an individual who merely holds a handgun license – a 'Rifle License' is required under the Penal Law"). There are no facts in the McGregor Declaration or in the record which support that RT Smoke was aware of PLB's policies and refused to allow McGregor to utilize those policies to purchase a SAR. SOF ¶¶ 68-69.

The Complaint further alleged that on September 6, 2022, McGregor contacted two gun stores in Suffolk County to enquire about purchasing a SAR but the stores refused to sell him a SAR:

- "LI Ammo advised Dr. McGregor that it will not sell a semiautomatic rifle to anyone unless the purchaser has a license to purchase and take possession of semiautomatic rifles, or if their existing handgun license specifically indicates a semiautomatic rifle endorsement. A handgun license is not sufficient." DE 47, ¶ 111.

- Allegedly, McGregor informed Camp-Site that the SCPD Licensing Bureau said "his handgun license was sufficient to purchase a semiautomatic rifle even though it does not say anything about a semiautomatic rifle endorsement," and Camp-Site "informed Dr. McGregor that he could not purchase a semiautomatic rifle with a handgun license " DE 47, ¶¶ 115-116.

The facts do not support that that McGregor was unable purchase a SAR from LI Ammo or Camp-Site on September 6, 2022 due to PLB's policies, given that as of September 4, 2022, the effective date of the Rifle Bill, PLB had instituted a licensure procedure which allowed an individual to add a SAR to an existing pistol license and thereby acquire a SAR. SOF ¶¶ 32-33.

6

Moreover, the record demonstrates that on September 6, 2022, *after* McGregor had spoken with Campsite and LI Ammo, he spoke with an official at PLB who informed him of the PLB procedures he could use to purchase a SAR. SOF ¶¶ 71-72.

The facts submitted by McGregor support only that he made telephone calls to two local vendors on September 6, 2022, two days after the effective date of the Rifle Bill, whose agents agreed with his leading question that a pistol license was insufficient for a SAR purchase. SOF ¶ 70. McGregor does not present facts showing that LI Ammo or Camp-Site, as of McGregor's conversations with them on September 6, 2022, had reliable knowledge of the procedures being utilized by PLB for the purchase and licensure of SARs and that they refused to utilize these procedures to sell him a SAR. SOF ¶ 73. Indeed, Plaintiffs' claim that LI Ammo or Camp-Site would not sell McGregor a SAR pursuant to County policies is undermined by the fact that the two vendors did not voice disagreement with County procedures at the meeting on September 15, 2022 during which PLB informed vendors of its SAR licensure procedures. SOF ¶ 50.

Further, McGregor does not present facts demonstrating that on September 6, 2022, after being informed by PLB of its procedures for implementing the Rifle Bill to permit customers to purchase SARs, he got back in touch with Campsite and LI Ammo and attempted to utilize these procedures to purchase a SAR from these vendors. SOF ¶ 74. PLB records reflect that McGregor has never attempted to comply with PLB licensure procedures by purchasing a SAR, bringing the receipt to PLB, and then attempting to have the make, manufacturer, or serial number of the SAR placed on the back of his license. SOF ¶¶ 64-65.

The evidence submitted by McGregor is insufficient to show that he attempted to comply with the County's SAR licensure procedures, while the evidence submitted by the County shows that he made no such attempt. Even more significantly, the Complaint alleged that "Dr. McGregor

has not yet purchased his rifle because he objects to registering his semiautomatic rifles with the County and/or the State." DE ¶ 121. As such, McGregor has failed to meet the requirement that "to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy" Jackson–Bey v. Hanslmaier, *supra*. Accordingly, McGregor's claim should be dismissed for lack of standing as he has failed to demonstrate an injury-in-fact that is traceable to the County Defendants.

**Newman and DSI do not possess derivative standing to challenge County policies**.

In certain circumstances, firearms vendors can have derivative standing "to pursue Second Amendment claims on behalf of their customer base." Gazzola v. Hochul, 88 F.4th 186, 194–95 (2d Cir. 2023), *cert. denied sub nom.* Gazzola, Nadine, et al. v. Hochul, Gov. of NY, et al., No. 23-995, 2024 WL 3014531 (U.S. June 17, 2024). Such standing stems from Supreme Court decisions which hold that the Second Amendment "forbids a State from banning the in-home possession of common-use weapons by law-abiding, responsible citizens." Id.at 196 (citations omitted). It follows that "[a] State cannot circumvent those holdings by banning outright the sale or transfer of common-use weapons and necessary ammunition" Id. at 196. Accordingly, "commercial regulations on firearms dealers, whose services are necessary to a citizen's effective exercise of Second Amendment rights, cannot have the effect of eliminating the ability of law-abiding, responsible citizens to acquire firearms." Id.

In this case, Newman and DSI complaint is that customers and potential customers who do not possess a pistol license cannot acquire a SAR due to delays in PLB's pistol-licensing procedures:

> [a]s a direct result of SCPD's licensing policies and procedures, and the enforcement of the Rifle Bill by SCPD and NYSP (as detailed below), Mr. Newman and DSI are prohibited from engaging in their normal and customary business; and their customers and potential customers who do not hold a New York State handgun

license and therefore cannot obtain a rifle endorsement from SCPD for 2-3 years, are unable to purchase, transfer, and receive semiautomatic rifles. Defendants' enforcement of Penal Law §§ 265.65 and 265.66 subjects Mr. Newman, DSI, their customers, and potential customers to arrest, felony conviction, incarceration, and fines.

DE 47, ¶ 154.

Newman and DSI do not allege facts supporting that their customer base were actually damaged by the alleged pistol-licensing delays. Rather, Newman and DSI allege that their firearms business has "suffered actual economic loss as a result of Defendants' enforcement of the Rifle Bill." DE 47, ¶ 155.

In order to have standing to assert a derivative claim, DSI and Newman had to show that Suffolk County's policy was "so restrictive that it threatens a citizen's right to acquire firearms." Gazzola v. Hochul, 88 F.4th 186. Newman and DSI's claims are insufficient to demonstrate derivative standing as the record fails to support that due to alleged delays in PLB's pistol-licensing procedures, "New York citizens [were] meaningfully constrained – or, for that matter, constrained at all – in acquiring firearms and ammunition." Id. at 197.

First, the undisputed record does not support that, under PLB policies, it took an individual who did not possess a pistol license, two to three years to obtain a SAR license. During the six years that Lt. Komorowski oversaw the PLB, pistol-licensing delays longer than seven to eight months took place only twice: (1) during COVID when PLB was unable to conduct interviews for over six months; and (2) for a few months during the cyber-attack on Suffolk County, when the time to process interviews for applicants was prolonged. SOF ¶ 21. Other than in these two instances, any licensing process that took longer than eight months resulted from inexcusable lapses on the part of the applicant for which PLB was not responsible. SOF ¶ 22. *See* Mills v New York City, 2024 US Dist LEXIS 220617, at *24 (SDNY Dec. 4, 2024, No. 23-cv-07460-JSR)

9

("nothing in the text of the Second Amendment suggests that plaintiffs have a right to immediately obtain firearms 'on demand' as opposed to having to wait a short period of time.")

Second, there is no evidence that any individuals who were eligible to purchase SARs were prevented from doing so by delayed licensing procedures. Plaintiffs Felice and Giambalvo, the only two individuals identified by Plaintiffs as suffering delays in acquiring a pistol license, were not  barred from acquiring a pistol license due to delays in PLB's licensing procedures but rather due to but their inability to meet the requirements for a pistol license which are set forth in Penal Law § 400.00(1). SOF ¶  80.

Accordingly, the undisputed facts demonstrated that Newman and DSI do no possess derivative standing to sue on behalf of their client base.

Moreover, even though Newman and DSI claim that they are bringing a derivative suit on behalf of their customers, they are actually suing on their own behalf. The relief sought by Newman and DSI against the County consists of "economic damages against Suffolk County, New York, Defendant Harrison and Defendant Komorowski." DE 47, Wherefore Clause, p. 29. Clearly, Newman and DSI are seeking monetary damages for their business losses, not redress for their customer base.

It is established that "individuals or businesses engaging in the commercial sale of firearms are not entitled to the "individual right secured by the Second Amendment." Gazzola v. Hochul, 645 F.Supp.3d 37, 64 (NDNY 2022), aff'd, 88 F.4th 186 (2d Cir. 2023); id. at 65 ("Plaintiffs have not cited any authority supporting a Second Amendment right for an individual or a business organization to engage in the commercial sale of firearms.") "The plain text of the Second Amendment protects an individual's right to 'possess and carry weapons in case of confrontation,' and that right 'does not imply a further right to sell and transfer firearms.'" Knight v City of NY,

2024 US Dist LEXIS 8820, at *17 (SDNY Jan. 17, 2024, No. 22-CV-3215 [VEC][VF]).

Accordingly, while in certain circumstances a firearms dealer may possess derivative standing to assert the rights of its customers, Newman and DSI have not met the criteria for derivative standing and do not possess standing on their own behalf to seek damages under the Second Amendment for their economic losses. Their complaint should be dismissed for lack of standing.

## POINT II: PLAINTIFFS' CLAIM THAT COUNTY POLICIES PRECLUDE THE PURCHASE AND SALE OF A SAR IS MOOT.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Dark Storm Indus. LLC v. Hochul, No. 20-2725-CV, 2021 WL 4538640, at *1 (2d Cir. Oct. 5, 2021), quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (some internal quotation marks omitted). "The voluntary cessation of allegedly illegal activities will usually render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Id., quoting Mhany Mgmt., Inc. v. County of Nassau, 819 F.3d 581, 603 (2d Cir. 2016) (citation omitted).

In this case, the Complaint's primary claims against the County are: (1) "from June 6, 2022 through September 2023, and at the direction of Harrison and Komorowski, the SCPD Pistol License Bureau refused to amend existing handgun licenses to reflect the Rifle endorsement," DE 47, ¶ 75; and (2) PLB's "process for obtaining a handgun license takes between 2-3 years."" DE 47, ¶ 90

With respect to the claim that the County refused to endorse a pistol license to reflect a SAR endorsement, as of September 2023 the County began endorsing pistol licenses for SARs. SOF ¶ 53. Indeed, McGregor pleaded that his pistol license was endorsed for a SAR on October

11, 2023. DE 47, ¶ 120; see also SOF ¶ 75. Accordingly, Plaintiffs' claim that the County refused to issue endorsed pistol licenses is moot.

With respect to the claim that it takes two to three years for an individual who does not possess a pistol license to obtain a SAR license, the delay allegedly occasioned by PLB's pistol licensing procedures no longer exists. PLB's pistol licensing procedures require an applicant for a pistol license to complete PLB's questionnaire and to undergo PLB's investigative process prior to being given the state application for a pistol, a process that takes two to three months. SOF ¶¶ 7-10 . As of October 21 or 22, 2024, an applicant who does not possess a pistol license may apply for a SAR license by submitting the state form PPB-3 to the PLB without going through PLB's pistol licensing procedures. SOF ¶ 60. Accordingly, Plaintiffs' claims that an unlicensed individual must go through the alleged lengthy process of applying for a pistol license to acquire a SAR and that there is no separate process for obtaining a SAR license are now moot. *See* Plaintiffs' claims at DE 47, ¶ 124 (Giambalvo); ¶ 137 (Felice); DE 47, ¶ 144 (Olivieri); ¶ 153 (Newman and DSI).

## POINT III: THE COMPLAINT SHOULD BE DISMISSED AS THE UNDISPUTED FACTS ESTABLISH THAT THE COUNTY DEFENDANTS DID NOT VIOLATE PLAINTIFFS' SECOND AMENDMENT RIGHTS.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). Here, the County Defendants should be awarded summary judgment as the undisputed record establishes that the County Defendants' procedures for implementing the Rifle Bill did not violate Plaintiffs' Second Amendment rights  Patterson v Coughlin, 761 F2d 886, 890 (2d Cir

1985) ("Recovery under 42 U.S.C. § 1983 (1982) is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or federal statutory right….")

**The Second Amendment right to bear arms for offensive or defensive action in a case of conflict with another person coexists with local licensing regulations.**

The Second Amendment "codified a pre-existing right" that includes an "individual right to possess and cany weapons in case of confrontation." District of Columbia v. Heller, 554 U.S. 570, 592 (2008); U.S. Const, amend. II ("[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.") This right applies to the states through the Due Process Clause of the Fourteenth Amendment. McDonald v. City of Chicago, 561 U.S. 742, 766-67 (2010).

"[T]he right embodied in the Second Amendment is not 'a right to keep and carry any weapons whatsoever in any manner whatsoever and for whatever purpose.'" Antonyuk v James, 120 F.4th 941, 966 (2d Cir. 2024). "Individual self-defense is 'the central component' of the Second Amendment right." NY State Rifle & Pistol Assn. v Bruen, 597 US 1, 29 (2022), quoting Heller, 554 U.S. at 599. The right to "bear arm" means the right to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." Heller, at 584.

"The Second Amendment has been recognized to coexist with ubiquitous local and state licensing regulations." Mills v New York City, 2024 US Dist LEXIS 220617, at *21 (SDNY Dec. 4, 2024, No. 23-cv-07460 [JSR]), citing Antonyuk, 120 F.4th at 994. The Second Circuit has held that "despite some delay occasioned by 'shall-issue' permit processes, this type of licensing law is presumptively constitutional because it operates merely to ensure that individuals seeking to exercise their Second Amendment rights are ''law-abiding' persons." Antonyuk at 985, n.2.

13

(quoting <u>Maryland Shall Issue, Inc. v. Moore</u>, 116 F.4th 211, 2024 WL 3908548, at *1 [4th Cir. 2024]).

**The County Defendants have established that their implementation of the Rifle Bill did not violate the Second Amendment by impeding Plaintiffs' right to bear arms for self-defense.**

The undisputed record demonstrates that, notwithstanding PLB's inability to print separate licenses for SARs due to its outmoded computer system, the County Defendants implemented a policy which made SARs available to law-abiding citizens as of September 4, 2022, the date on which the Rifle Bill became effective.   SOF ¶¶ 32-33.

When the Rifle Bill was passed on June 6, 2022, PLB lacked the capacity to print a separate license for a SAR since PLB's computer could only print a license that had the words "Pistol License" reflected on the top left-hand portion of the front of the license. SOF ¶¶  24, 27. The computer company PLB had been using no longer existed, and PLB's efforts to upgrade its system with a computer that could print a separate SAR license were unsuccessful.  SOF ¶¶ 25-26.

After the passage of the Rifle Bill, the County considered that the statute's eligibility requirements for a SAR license are exactly the same as the eligibility requirements for a pistol license, SOF ¶ 31; Penal Law § 400.00(1) and (3). Given that SAR and pistol licenses have identical eligibility requirements and given that PLB could not print a separate SAR license, the PLB, with the approval of Suffolk County Police Commissioner Harrison, arrived at the position that the eligibility, application, and procedural requirements for  purchasing and taking possession of a SAR would be the same as the requirements for purchasing and taking possession of a pistol. SOF ¶¶ 31-32.

Under the policy developed by PLB, a SAR would be transferred to the buyer once PLB, upon the presentation of a receipt from the buyer for the purchase of the SAR, notated the back of the buyer's pistol license with the make, manufacturer, and serial number of the SAR; and once

14

the buyer presented a PLB-issued purchase order to the seller. SOF ¶¶32-33. Since the PLB procedure for pistol licensure and SAR licensure were exactly the same, PLB's decision to utilize pistol-licensing procedures for the acquisition of a SAR did not place any additional burden on the consumer.

Pursuant to the policy developed by PLB during the summer of 2022, the only difference between pistol licensure and SAR licensure was technical: a pistol licensee possessed a pistol license which listed registered pistols; a SAR licensee possessed a pistol license which listed registered SARs. For both types of licensure, the same PLB process and time-line made firearms available to law abiding citizens for the purpose of being ready "for offensive or defensive action in a case of conflict with another person." Heller, at 584.

Significantly, firearms dealers did not raise any objections when PLB implemented its SAR licensure procedures on September 15, 2022, the date on which PLB convened a meeting attended by all firearms dealers within its jurisdiction which were directly affected by the Rifle Bill. SOF ¶¶ 42-45. At the meeting, Lt. Komorowski advised that because PLB's computer system did not permit PLB to amend the face of an existing pistol license to indicate a SAR license or to issue a separate SAR license, PLB policy would allow firearms sellers to effect a sale, but not a delivery or transfer, of a SAR to a prospective buyer who presented a valid pistol license; the delivery and transfer would occur only after PLB had amended the pistol license to reflect the SAR's make, manufacturer and serial number. SOF ¶ 47. None of the firearms dealers present at the meeting objected to this policy. SOF ¶ 48.

The Complaint alleged that Plaintiffs' Second Amendment rights were violated by the County Defendants' alleged refusal from June 6, 2022 through September 2023 "to amend existing

handgun licenses to reflect the Rifle endorsement." DE 47, ¶ 7.[4] However, the record refutes Plaintiffs' claim that PLB's delay in endorsing pistol licenses for SARs prevented the sale and transfer of SARs. SOF ¶ 54. During the 12-month between September 6, 2022 and September 1, 2023 (before PLB began endorsing pistol licenses for SARs), a total of 362 SARs were lawfully purchased. SOF ¶ 55. During the 10-month period between September 6, 2023 and June 20, 2024 (a period during which PLB endorsed the back of pistol licenses for a SAR), a total of 282 SARs were lawfully purchased. Id. Thus, fewer SARs were purchased and transferred within PLB's jurisdiction after PLB began endorsing pistol licenses for SARs, SOF ¶ 56, a fact which demonstrates that PLB's utilization of unendorsed pistol licenses for SAR purchases did not interfere with any law-abiding citizen's right to acquire and bear arms.

The Complaint also alleged that Plaintiffs' Second Amendment rights were violated because PLB's "process for obtaining a handgun license takes between 2-3 years." DE 47, ¶ 90. However, Plaintiffs have not identified even one individual, who met the statutory requirements for SAR licensure, who was prevented from obtaining a SAR by delays in PLB licensing procedures.

Based on the foregoing, PLB's utilization of pistol licenses to facilitate SAR licensure after September 4, 2022 and its utilization of unendorsed pistol licenses prior to September of 2023, did not constitute a violation of Plaintiffs' Second Amendment rights, given that these PLB procedures did not impede consumers' ability to purchase SARs. Harding v Gould, 2024 US Dist LEXIS 141944, at *19 (SDNY Aug. 9, 2024, No. 22 CV 6285 [VB]) ("because plaintiff has not alleged

---

[4] In approximately the third week of September 2023, PLB began to issue licenses which set forth the notation for a SAR on the back of an existing pistol license. SOF ¶ 53. Such licenses were newly generated by PLB's computer system and replaced the applicant's previously-issued pistol license. SOF ¶ 53.

that defendants prevented her 'from acquiring another weapon,' they 'did not impede plaintiffs right to bear arms.'") Accordingly, Defendants have demonstrated as a matter of law that a constitutional violation did not take place.

**The <u>Monell</u> claims against the County and Commissioner Harrison in his official capacity should be dismissed since the record establishes, as a matter of law, that PLB policies did not violate Plaintiffs' Second Amendment rights.**

Local governing bodies can be sued directly under 42 USC § 1983 for monetary relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell v Dept. of Social Servs</u>., 436 U.S. 658, 690 (1978). "The elements of a Monell claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." <u>Agosto v. New York City Dep't of Educ.</u>, 982 F.3d 86, 97–98 (2d Cir. 2020). Establishing the liability of a municipality under 42 USC § Section 1983 "requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." <u>Askins v Doe</u>, 727 F3d 248, 253 (2d Cir 2013), citing <u>Monell</u>, 436 U.S. at 690-91. A municipality "cannot be liable under Monell where Plaintiff cannot establish a violation of his constitutional rights" <u>Id</u>. (quoting the district court's decision).

In this case, Plaintiffs cannot establish that PLB's procedures for the implementation of the Rifle Bill after September 4, 2022 violated their constitutional rights under the Second Amendment, inasmuch as PLB's utilization of its pistol licensing policies for the purchase of SARs did not interfere with the ability of citizens to bear arms.

**Plaintiffs' claims against Commissioner Harrison and Lt. Komorowski in their individual capacities should be dismissed.**

"In order to establish individual liability under § 1983, a plaintiff must show…that the defendant caused the plaintiff to be deprived of a federal right." Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004). In this case, Lt. Komorowski and Commissioner Harrison are not individually liable inasmuch as they did not deprive Plaintiffs of their Second Amendment rights.

Plaintiffs seek to impose individual liability on Commissioner Harrison and Lt. Komorowski on the basis that they "created and implemented the licensing policies complained of herein." DE 47, ¶ 20. The Complaint alleged that the policy, allegedly created and implemented by Harrison and Komorowski, "that handgun licenses were 'good enough' to allow purchase or sell a semiautomatic rifle" violated "the plain language of Penal Law 400.00(2)." DE 47, ¶¶ 68-70. The Complaint further alleged that "[f]rom June 6, 2022 through September 2023, and at the direction of Harrison and Komorowski, the SCPD Pistol License Bureau refused to amend existing handgun licenses to reflect the Rifle endorsement." DE 47, ¶ 75.

However, PLB's failure to issue SAR licenses or endorse pistol license for SARs did not interfere with Plaintiffs' ability to acquire arms since, during the relevant time period, PLB policies allowed law-abiding citizens to purchase SARs. SOF ¶¶ 32-33. As a result, Commissioner Harrison and Lt. Komorowski are not individually liable for causing plaintiffs to be deprived of their second amendment rights.

In addition, Plaintiffs seek to impose individual liability on Lt. Komorowski on the basis that he was "personally responsible for the day-to-day operations, policies, and procedures of the Licensing Bureau." DE 47, ¶ 19. However, a defendant "in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." Black v Coughlin, 76 F3d 72, 74 [2d Cir 1996]). "It is well settled that, in order to establish a

defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 138 (2d Cir. 2013). Here, the record establishes that Lt. Komorowski did not utilize his position as head of the PLB to personally deprive Plaintiffs of their second amendment rights.

After the enactment of the Rifle Bill, Lt. Komoroski informed his supervisors that PLB had to come up with a policy to provide licenses for SARs.  SOF ¶ 28. During the summer of 2022, he acted to protect citizens' second amendment rights by contacting a sergeant at the state's pistol licensing bureau who approved  PLB's plan to  recognize a pistol license as a SAR license. SOF ¶¶ 35-40. By the third week of August 2022, PLB was informing firearms dealers that it would be utilizing pistol purchase and possession procedures for the purchase and possession of SARs, SOF ¶ 41. On  9/15/22, he met with firearms arms dealers and explained to them PLB's policy for SAR licensure  SOF ¶¶42-50.  Later, after a PLB employee suggested that endorsement for SARs could be placed on the back of pistol licenses, Lt. Komorowski met with his supervisors who agreed to endorse the back of a pistol license for a SAR. SOF ¶¶  51-51.

The Second Circuit has "construed personal involvement…to mean direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." <u>Black v Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996). Rather than depriving Plaintiffs of their second amendment rights, the undisputed record supports that Lt. Komorowski labored to ensure that law abiding citizens had access to SARs after the passage of the Rifle Bill.

**POINT IV: PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF AGAINST THE COUNTY SHOULD BE DISMISSED.**

Plaintiffs seek a judicial declaration "that the SCPD policies and procedures described herein violate the Second and Fourteenth Amendments," DE 47, ¶ 166, urging that declaratory relief is warranted on the basis that "[p]ossession of a valid New York State handgun license is not a defense to arrest and prosecution for an offense under Penal Law §§ 265.65 and 265.66, nor does it authorize the transfer or receipt of a semiautomatic rifle," DE 47, ¶ 86. However, Plaintiffs' request for declaratory relief rests on the mistaken premise that PLB policies permit a pistol license to function as a SAR license. In fact, under PLB policies, a pistol license does not suffice for the transfer and receipt of a SAR – rather, an individual must register the SAR on the back of the pistol license. in order for a legal transfer to take place. SOF, ¶¶ 32-33. Accordingly, since PLB procedures do not subject SAR owners to the threat of immediate arrest, the legal interests of Plaintiffs are not "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Duane Reade, Inc., v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 388 (2d Cir. 2005).

## CONCLUSION

Based on the facts and legal arguments set forth herein, it is respectfully submitted that the complaint should be dismissed for lack of standing; and that, to the extent that standing is deemed to exist for any of the plaintiffs, their claims should be dismissed as a matter of law since the County has demonstrated that question of material fact exist.

Dated: Hauppauge, New York
     March 19, 2025

                    Christopher J. Clayton
                    Suffolk County Attorney
                    Attorney for County Defendants
                    100 Veterans Memorial Highway
                    P.O. Box 6100
                    Hauppauge, New York 11788
                    */s/ Anne C. Leahey*
                    Anne C. Leahey
                    Assistant County Attorney

## CERTIFICATION

PLEASE TAKE NOTICE, that pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Anne C. Leahey,  an attorney duly admitted to practice law before the courts of New York State and the Eastern District of New York, hereby certifies that the foregoing memorandum  of law consists of six thousand four hundred and seventy-six words (6,476) words, and that the affirmant further certifies that the word count complies with the limit of eight thousand seven hundred and fifty words (8,750) words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, pursuant to Local Rule 7.1(c). I relied on the word count of the word-processing system used to prepare the document, which was the "Word Count" feature of Microsoft Word.


DATED:      Hauppauge, New York
            March 19, 2025

                                        */s/ Anne C. Leahey*
                                        ANNE C. LEAHEY