UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MICHAEL MCGREGOR, ZACHARY GIAMBALVO,
PAUL FELICE, MATTHEW OLIVIERI, EDWARD
NEWMAN, and DARK STORM INDUSTRIES, LLC,

                Plaintiffs,                23 Civ. 01130 (GRB)(ARL)

                -against-

SUFFOLK COUNTY, New York,
Police Commissioner RODNEY HARRISON,
in his Official Capacity and Individually, MICHAEL
KOMOROWSKI, Individually,

                Defendants,

LETITIA JAMES, in her official capacity as Attorney
General of the State of New York,

                Intervenor.
------------------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW
# IN OPPOSITION TO THE MOTION FOR
# SUMMARY JUDGMENT BY THE SUFFOLK COUNTY DEFENDANTS

**THE BELLANTONI LAW FIRM, PLLC**
*Attorneys for Plaintiffs*
**2 Overhill Road, Suite 400
Scarsdale, New York 10583**

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................ 1

LEGAL ARGUMENT ........................................................................................................... 2

I. GIAMBALVO HAS ARTICLE III STANDING TO SEEK PROSPECTIVE INJUNCTIVE RELIEF AGAINST SUFFOLK COUNTY'S ENFORCEMENT OF THE RIFLE BILL ............. 2

II. MCGREGOR HAS ARTICLE III STANDING TO SEEK RETROSPECTIVE RELIEF ........ 3

III. NEWMAN AND DSI HAVE DERIVATIVE STANDING ......................................... 5

    A. Derivative Standing - 'Stand-in-Shoes' Claims Are Recognized in this Circuit ............... 5

    B. There is No 'Measuring' of the 'Restriction' or 'Burden' Under the *Bruen* Test .............. 5

    C. Pistol Licensees Within the PLB Jurisdiction Were Legally Prohibited from Acquiring SARs, and Newman/DSI Were Legally Prohibited from Selling to PLB Licensees for Over a Year ................................................................................................................................. 6

    D. The Commercial Regulation of Arms Does Not Divest Newman/DSI of Standing ......... 6

    E. Newman and DSI Have Derivative Standing to Seek Prospective Injunctive Relief ....... 6

    F. Newman and DSI Have Actual Standing to Seek Prospective Injunctive Relief ............. 7

    G. Newman and DSI Have Standing to Seek Retrospective Relief ....................................... 7

IV. THE COUNTY'S MOOTNESS ARGUMENT DOES NOT APPLY TO PAST HARM ......... 8

V. THE COUNTY DEFENDANTS PRODUCED NO HISTORICAL EVIDENCE, REQUIRING DENIAL OF THEIR MOTION FOR SUMMARY JUDGMENT ................................................. 9

VI. THE STATISTICS ARE MISLEADING AND DO NOT SATISFY THE *BRUEN* TEST ...... 9

VII. PLAINTIFFS' *MONELL* CLAIM IS VIABLE ................................................................. 10

VIII. LT. KOMOROWSKI WAS PERSONALLY INVOLVED IN ENFORCING THE NON-ENDORSEMENT POLICY ........................................................................................... 11

IX. THE COUNTY'S DOUBLESPEAK SHOULD NOT SWAY THIS COURT ........................ 12

CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andrews v. State*,
  50 Tenn. 165 (1871) .................................................................................................... 7

*Antonyuk v. James*,
  120 F.4th 941 (2d Cir. 2024) .................................................................................... 2, 3

*Brown v. ATF*,
  704 F.Supp.3d 687 (N.D. W. Va. 2023) ...................................................................... 7

*D.C. v. Heller*,
  554 U.S. 570 (2008) ................................................................................................. 5, 6

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ....................................................................................... 7

*Gazzola v. Hochul*,
  88 F.4th 186 (2d Cir. 2023), 2024 WL 3014531 (U.S. June 17, 2024) ........................ 5

*Maryland Shall Issue, Inc. v. Moore*,
  116 F.4th 211 (4th Cir. 2024) ...................................................................................... 7

*McDonald v. City of Chicago, Ill.*,
  561 U.S. 742 (2010) ..................................................................................................... 5

*New York State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022) ................................................................................................ 5, 6, 9

*Reese v. ATF*,
  127 F.4th 583 (5th Cir. 2025) ...................................................................................... 7

*Renna v. Bonta*,
  667 F.Supp.3d 1048 (S.D. Cal. 2023) .......................................................................... 7

*Sedita v. United States*,
  2025 WL 387962 (D.D.C. Feb. 4, 2025) ...................................................................... 7

*Soule v. Connecticut Ass'n of Sch., Inc.*,
  90 F.4th 34 (2d Cir. 2023) ........................................................................................... 8

*Sweesy v. Sun Life Assurance Co. of Canada (USA)*,
  643 F. App'x 785 (10th Cir. 2016) .............................................................................. 5

*Teixeira v. Cnty. of Alameda*,
  873 F.3d 670 (9th Cir. 2017) ............................................................................................. 7

*Torcivia v. Suffolk Cnty., New York*,
  409 F. Supp. 3d 19 (E.D.N.Y. 2019) ............................................................................... 10

*United States v. Hicks*,
  649 F.Supp.3d 357 (W.D. Tex. 2023) ............................................................................... 7

*United States v. McNulty*,
  684 F.Supp.3d 14 (D. Mass. 2023) ................................................................................... 7

*United States v. Rahimi*,
  602 U.S. 680 (2024) .......................................................................................................... 6

*Uzuegbunam v. Preczewski*,
  592 U.S. 279 (2021) .......................................................................................................... 8

*Wray v. City of New York*,
  490 F.3d 189 (2d Cir. 2007) ............................................................................................ 10

## PRELIMINARY STATEMENT

Plaintiffs Michael McGregor, Zachary Giambalvo, Edward Newman, and Dark Storm Industries LLC ("DSI") (collectively "Plaintiffs")[1] submit the following Memorandum of Law in opposition to the Motion for Summary Judgment filed by Suffolk County, New York, Kevin Catalina[2], and Michael Komorowski (the "County"), and accompanying Local Rule 56.1 Counterstatement, and the Declaration of Amy L. Bellantoni with attached exhibits.

McGregor, Newman, and DSI have standing to seek retrospective relief for violations of their Second Amendment rights caused by the challenged Suffolk County policies wherein the Pistol Licensing Bureau (PLB) would not issue licenses, as required by Penal Law § 400.00(2), authorizing the purchase of semiautomatic rifles ("SARs") or endorse existing pistol licenses to reflect SAR authorization.

Giambalvo has standing to seek prospective relief against the enforcement of the Rifle Bill[3] because he has submitted to the state's licensing scheme, the discretionary eligibility factors for which are the same for pistols and SARs. Giambalvo's application was denied despite the fact that he is not 'firearms-disqualified' and already possesses SARs that were purchased prior to the passage of the Rifle Bill from a federally licensed gun dealer FFLs after passing a NICS background check.

---

[1] Plaintiffs Paul Felice and Matthew Olivieri have moved out of New York State and, as such, no longer have standing to seek injunctive relief against the enforcement of the Rifle Bill. .
[2] Named defendant Rodney Harrison, who was sued in his official and individual capacities, was replaced by Kevin Catalina as the Suffolk County Police Commissioner. Plaintiffs withdraw their individual capacity claims against Harrison.
[3] Plaintiff McGregor, who has since relocated to Westchester County, New York, has no standing to seek prospective relief to enjoin Suffolk County's enforcement of the Rifle Bill. However, as a New York resident, he continues to have an interest in the permanent injunction of the Rifle Bill; Rule 65 allows orders granting injunctive relief to encompass non-parties - for example, "all law enforcement agencies in New York State receiving actual notice of such order."

Newman and DSI have standing to seek prospective relief by acting as advocates of the rights of their customers and potential customers who seek access to their market or function and have been restricted by the Rifle Bill.

## LEGAL ARGUMENT[4]

### I. GIAMBALVO HAS ARTICLE III STANDING TO SEEK PROSPECTIVE INJUNCTIVE RELIEF AGAINST SUFFOLK COUNTY'S ENFORCEMENT OF THE RIFLE BILL

The County is confusing traceability with the *type* of relief available to Giambalvo.

The County is correct that the discretionary factors for determining eligibility under Penal Law § 400.00(1) are the same for a handgun license as they are (now) for a SAR license (or an endorsement) - discretion that underpins Giambalvo's claims. Giambalvo is not seeking monetary damages against the County for the defendants' enforcement of state law.

That said, 'traceability' relates to identifying and naming the entity and/or state actor who enforces the statutes being challenged. The constitutional harm must be "fairly traceable to the challenged conduct of the defendant." *Antonyuk v. James*, 120 F.4th 941, 976 (2d Cir. 2024), *cert. denied*, No. 24-795, 2025 WL 1020368 (U.S. Apr. 7, 2025).

Giambalvo's constitutional harm is caused by the conduct of the Suffolk County police commissioner (and his designees) – those who enforce the licensing scheme. Giambalvo's harm is traceable to the police commissioner in his official capacity as the government actor who enforced the SAR licensing statute to deny Giambalvo's license. *See, Antonyuk*, 120 F.4th at 975 (the cognizable injury, being deterred from applying for a license, is traceable to the enforcement of those provisions and redressable by an injunction).

---

[4] The County does not challenge Giambalvo's standing to seek injunctive relief against the County's enforcement of the Rifle Bill. The County also fails to offer any historical justification for its enforcement of the registration requirement for SARs under Penal Law § 400.00(9), warranting summary judgment in Plaintiffs' favor as to that part of the Rifle Bill.

2

By arguing that the harm is traceable to the statute, the County ignores the fact that a plaintiff cannot name a 'statute' as a defendant. Rather, the official who enforces the statute must be named; the harm caused by statute flows through the state official (the police commissioner) and impacts the plaintiff. And "a plaintiff who challenges a rule that renders him ineligible to receive a license must first either seek a license or show that his application would be denied" [*Antonyuk*, 120 F.4th at 976]. Giambalvo has done exactly that.

## II. MCGREGOR HAS ARTICLE III STANDING TO SEEK RETROSPECTIVE RELIEF

As of September 4, 2022, the only means of lawfully purchasing a SAR is to obtain a SAR license or the endorsement of one's existing New York State pistol license.

Between September 2022 and September 2023, neither license was available to the public. So, for over a year, there was no legal means for a person residing in the PLB jurisdiction to obtain a SAR.

Suffolk argues that, because "the PLB said" a pistol license alone (unendorsed) was sufficient authorization, McGregor suffered no Second Amendment violation. Even if, during that time period, SCPD was not enforcing the criminal penalties against purchasers and sellers because the PLB considered a pistol license "good enough" to authorize SAR purchases, this 'policy' had no effect outside of PLB jurisdiction. It does not matter what "the County's policies for the purchase and licensure of SARs" were, or that Komorowski would "allow" a SAR to be added to a pistol license – the purchase of a SAR cannot take place in the first instance, so there is nothing to "add" to the license. *No* purchase of a SAR can take place under an unendorsed pistol license. Bellantoni Dec. Ex. 2; Kinzel Dec.; Penal Law §§ 265.65, 265.66, 400.00(2).

McGregor attempted to purchase a SAR from RT Smoke in Westchester County – not a Suffolk County FFL. Everywhere else in the state, where the firearms licensing authority was not

'making up its own rules' and state law controlled, a SAR could not be purchased with an unendorsed pistol license (and it cannot in Suffolk County *now*). *See,* Kinzel Dec.; Bellantoni Dec. Ex. 2; Penal Law § 400.00(2). By state law, even if RT Smoke "was aware of PLB's policies" [County Br. at 6] if they sold a SAR to McGregor before the PLB endorsed his pistol license, they would be committing a felony [*see,* Penal Law § 265.66] and subject to the revocation of their gun dealer's license by state and federal officials – and McGregor would be committing a crime. *See,* § 265.65.

Double-minded, the County also argues that it cannot be held liable for enforcing state law because it has an obligation to enforce the law [County Br. at 3] but goes on to declare that it can create policies that violate state law [County Br. at 5-7]. The PLB was facilitating, conspiring, and acting in concert to violate state law by encouraging the public and licensed dealers to commit a felony: selling SARs to people who did not have an endorsed pistol license. If a pistol license alone were sufficient, the Legislature would have said so – but it did not.[5] *See,* § 400.00(2).

Whatever scheme the PLB devised to cut down on its workload – rather than have a line of licensees out the door seeking an endorsement of their pistol license – they not only violated state law, they violated the Second Amendment by erecting a barrier for *law-abiding* people to acquire SARs.

Article III jurisprudence does not require McGregor break state law, which is what he and the FFL selling him the SAR would be doing if he were to "submit to the County's policies" –

---

[5] Nor does PLB's policy shield licensees and FFLs from criminal penalties inflicted by the New York State Police or any other law enforcement agency. The NYSP position, publicized on its website and confirmed by the Declaration of Lt. Kinzel, is consistent with Penal Law §§ 265.65, 265.66, and 400.00(2): a pistol license does not authorize the sale, purchase, transfer, or receipt of a SAR. The Suffolk County defendants have no authority to circumvent state law, nor does the NYSP have authority to exempt Suffolk County from requirements imposed by the New York State Legislature. Notwithstanding that the PLB had, at all times, had the ability to endorse pistol licenses, its failure to address its perceived computer issues for over a year are not a cognizable legal defense to Plaintiffs' Second Amendment claims - particularly where the PLB had the ability to type the words "SEMI-AUTO" in the Comments section of existing pistol licenses for years before the Rifle Bill was even passed. Bellantoni Ex. 4.

policies that also did not apply to RT Smoke as a Westchester County FFL. McGregor has Article III standing to seek retrospective monetary relief against the Suffolk County defendants.

**III. NEWMAN AND DSI HAVE DERIVATIVE STANDING**

    **A. Derivative Standing - 'Stand-in-Shoes' Claims Are Recognized in this Circuit**

The Second Circuit recognizes standing for gun manufacturers seeking to bring a derivative suit on behalf of their customers and potential customers. "We have no trouble concluding that Appellants have standing to bring such a derivative claim. Vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Gazzola v. Hochul*, 88 F.4th 186, 194 (2d Cir. 2023), cert. denied, No. 23-995, 2024 WL 3014531 (U.S. June 17, 2024) (citing cases) (cleaned up). In derivative suits, the company stands in the shoes of the customers and potential customers. *Sweesy v. Sun Life Assurance Co. of Canada (USA)*, 643 F. App'x 785, 793 (10th Cir. 2016) (surveying decisions resolving derivative (i.e., stands-in-the-shoes) claims).

The County concedes that derivative standing is available to Newman and DSI [County Br. at 9].

    **B. There is No 'Measuring' of the 'Restriction' or 'Burden' Under the *Bruen* Test**

Once a plaintiff has demonstrated that the conduct being regulated falls within the text of the Second Amendment, the burden rests entirely with the government to prove that its regulations are consistent with American historical traditions. *Bruen*, 597 U.S. at 17. Full stop.

The *Bruen* test does not require Second Amendment plaintiffs to overcome some unknown 'measurement' or 'degree' of constitutional violation to have standing [*see,* County Br. at 9]. Such an analysis hauls plaintiffs back to the pre-*Bruen* "balancing tests" rejected by the Supreme Court in multiple cases. *See*, *D.C. v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago, Ill.*, 561

U.S. 742, 785 (2010) ("In *Heller*, however, we expressly rejected the argument that the scope of the Second Amendment right should be determined by judicial interest balancing"); *Bruen*, 597 U.S. at 16-17; and *United States v. Rahimi,* 602 U.S. 680, 712 (2024) (discussing how courts "reviewed firearm regulations under a two-step test that quickly "devolved" into an interest-balancing inquiry, where courts would weigh a law's burden on the right against the benefits the law offered" before *Bruen* rejected such analyses).

### C. Pistol Licensees Within the PLB Jurisdiction Were Legally Prohibited from Acquiring SARs, and Newman/DSI Were Legally Prohibited from Selling to PLB Licensees for Over a Year

As discussed above, it is undisputed that the PLB did not endorse any existing pistol license issue any licenses between September 2022 and September 2023 – despite having the ability to. All existing licensees under the jurisdiction of the PLB were legally prohibited from purchasing SARs and DSI/Newman were legally prohibited from selling SARs to existing PLB pistol licensees. *See,* Penal Law §§ 265.65, 265.66, 400.00(2).

### D. The Commercial Regulation of Arms Does Not Divest Newman/DSI of Standing

The County's discussion of "commercial regulation of firearms" has nothing to do with the County's policies [County Br. at 10]. Defendants were not "regulating the commercial sale" of SARs when they foreclosed the residents in their jurisdiction from obtaining a license authorizing the purchase and/or sale of SARs for over a year.

### E. Newman and DSI Have Derivative Standing to Seek Prospective Injunctive Relief

Newman and DSI have derivative standing to seek the permanent injunction of the enforcement of the Rifle Bill by the Suffolk County defendants. The regulated conduct – their customers' and potential customers' right to acquire arms – falls within the scope of conduct protected by the right to "keep and bear" arms.

6

**F. Newman and DSI Have Actual Standing to Seek Prospective Injunctive Relief**

Newman and DSI have standing to seek injunctive relief because the right to sell arms is inextricably intertwined with the right of the People to acquire arms. The People would not have any 'arms' to keep or bear if the acquisition thereof was not also within the Amendment's protections. "Indeed, the commonsense conclusion that "th[e] right of keeping arms" "necessarily involves the right to purchase and use them" has been a feature of judicial opinions from 1871, *Andrews v. State*, 50 Tenn. 165, 178 (1871), to the present, e.g., *Reese v. ATF*, 127 F.4th 583, 589-90 (5th Cir. 2025). See, Brief For Amicus Curiae National Shooting Sports Foundation, Inc. In Support Of Appellants in *Mills v. New York City*, 2d. Cir. Case No. 24-3308 at p. 11 (pending).[6] And rightly so, as "[t]he baleful implications of limiting the right at the outset by means of narrowing regulations not implied in the text are obvious; step by step, other limitations on sales could easily displace the right altogether."" *Id.* at 590."

**G. Newman and DSI Have Standing to Seek Retrospective Relief**

In that same vein, Newman and DSI have standing to seek monetary damages for the PLB policies that foreclosed their customers' and potential customers' ability to purchase – and DSI/Newman's ability to sell – SARs to licensees who were unable to obtain an endorsement for over a year, and customers and potential customers who, like Giambalvo, have no disqualifiers to firearm possession and would pass (and have passed) NICS background checks but were denied a

---

[6] Citing, *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211, 230 (4th Cir. 2024) (en banc) (Rushing, J., concurring) ("Maryland's law regulates acquiring a handgun, and the Second Amendment's text encompasses that conduct."); *Teixeira v. Cnty. of Alameda,* 873 F.3d 670, 677 (9th Cir. 2017) (en banc) ("[T]he core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms[.]" (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)); *see also*, *Sedita v. United States*, 2025 WL 387962, at *8 (D.D.C. Feb. 4, 2025); *Brown v. ATF*, 704 F.Supp.3d 687, 700 (N.D. W. Va. 2023); *United States v. McNulty*, 684 F.Supp.3d 14, 20 (D. Mass. 2023); *Renna v. Bonta*, 667 F.Supp.3d 1048, 1065 (S.D. Cal. 2023); *United States v. Hicks*, 649 F.Supp.3d 357, 359 (W.D. Tex. 2023).

pistol license (and, therefore cannot have it endorsed) by the PLB based on the subjective and discretionary licensing scheme under which SARs are now governed.

**IV. THE COUNTY'S MOOTNESS ARGUMENT DOES NOT APPLY TO PAST HARM**

The County argues that, because the PLB eventually ceased its non-endorsement policy, McGregor and Newman/DSI's Second Amendment claims are now moot [County Br. at 11-12]. The cessation of a challenged policy, however, does not moot claims seeking damages for a completed constitutional violation. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 284 (2021) (a plaintiff who sues over a completed injury and establishes the first two elements of standing (injury and traceability) can establish the third by requesting only nominal damages). If the court is able to fashion relief – even an amount of nominal damages- a past injury may be redressed. *Uzuegbunam*, 592 U.S. at 282–83.

Plaintiffs' claims for monetary damages caused by the individual County Defendants for enforcing a policy that foreclosed a legal route to obtain authorization to purchase and acquire SARs, violated the Second Amendment rights of plaintiffs McGregor, Newman and DSI, and the customers on whose behalf Newman/DSI bring this action.

While the County's cessation of its policy has rendered Plaintiffs' request for prospective relief – the permanent injunction of the Policy – moot, it does not affect Plaintiffs' claims for retrospective monetary damages for the past constitutional harms caused by the policy. See, *Soule v. Connecticut Ass'n of Sch., Inc.*, 90 F.4th 34, 47 (2d Cir. 2023) ("Because Plaintiffs' claim is based on a completed violation of a legal right, nominal damages provide at least some necessary redress…So too would compensatory damages, if available, which are definitionally intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.") (cleaned up) (citation omitted).

## V. THE COUNTY DEFENDANTS PRODUCED NO HISTORICAL EVIDENCE, REQUIRING DENIAL OF THEIR MOTION FOR SUMMARY JUDGMENT

The County was required to identify an historical analogue for its 'non-endorsement policy,' which it failed to do. Statistics and excuses do not satisfy the *Bruen* test. The failure of the County Defendants to meet their burden under *Bruen* requires the denial of their motion for summary judgment. *Bruen*, 597 U.S. at 17 ("Only if a firearm regulation is consistent with the Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command").

## VI. THE STATISTICS ARE MISLEADING AND DO NOT SATISFY THE *BRUEN* TEST

The County's claim that, because a total of 362 SARs were purchased during the time-period in question [County Br. at 16] there was no Second Amendment violation, is immaterial to Plaintiffs' claims. The County's endorsement of illegal activity and circumvention of state law between September 2022 and September 2023 does not absolve them of liability for the constitutional harm to McGregor, DSI, and Newman.

The September 2022 meeting between Suffolk County Police officials and the Suffolk County gun dealers informing of the PLB's policy foreclosed the people within the PLB jurisdiction from purchasing SARs from an FFL outside of Suffolk County – because all FFLs throughout the state were bound by state law not to transfer a SAR in the absence of an endorsed pistol license.

The County's policy [*wink-wink*] *ensured* the FFLs within the PLB jurisdiction that no PLB pistol licensee could legally acquire a SAR from any FFL outside of Suffolk County, including McGregor. So, the County's acknowledgment that, once PLB began to endorse pistol licenses "fewer SARs were purchased and transferred within PLB's jurisdiction after PLB began endorsing" is no surprise. PLB licensees now had ***legal*** authority to purchase SARs, and could

now do so outside of Suffolk County, including McGregor's ability to purchase a SAR from RT Smoke in Westchester County.

The County's statistics also fail to identify whether the SAR purchases between September 2022 and 2023 involved sale to licensees outside of the PLB's jurisdiction, like Nassau, Westchester County, and the Suffolk County Sheriff's jurisdiction – all counties that were endorsing pistol licenses. Nor do the County's statistics depict the number of residents who were *foreclosed* from purchasing SARs because they complied with state law, like McGregor. The fact that the County Defendants began endorsing pistol licenses after this litigation was commenced further demonstrates their knowledge that a pistol license does not legally authorize the purchase/transfer of SARs as a matter of law – otherwise, why make the policy change.

The above notwithstanding, modern day statistics are not the historical analogue required by *Bruen*.

## VII. PLAINTIFFS' *MONELL* CLAIM IS VIABLE

The County advances a frivolous challenge to Plaintiffs' *Monell* claim that should be summarily rejected.

A municipality can be held liable for a violation under § 1983, known as *Monell* liability, where a plaintiff proves (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Torcivia v. Suffolk Cnty., New York*, 409 F. Supp. 3d 19, 28–29 (E.D.N.Y. 2019), aff'd, 17 F.4th 342 (2d Cir. 2021) citing, *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).

The record establishes the existence of an official policy or custom sufficient to establish *Monell* liability. Between June 2022 and September 2023, the PLB (including Komorowski) enforced a PLB policy whereby no pistol licenses were endorsed to reflect the ability to acquire

10

SARs and no SAR-only license were issued [Bellantoni Dec. Ex. 4 at 33-34]. It was the County's position that a license to purchase handguns authorized the purchase of semiautomatic rifles [Bellantoni Dec. Ex. 4 at 33-34]. Komorowski testified that if an individual wanted to obtain a SAR license or amend their pistol license to reflect a SAR endorsement, the PLB policy was that a pistol license was "good enough" and no endorsement would be provided [Bellantoni Dec. Ex. 4 at 33-34]. The County's customs and practices foreclosed Plaintiffs from engaging in conduct protected by the Second Amendment, causing harm to McGregor, and Newman/DSI and their customers and potential customers residing in the PLB's jurisdiction.

### VIII. LT. KOMOROWSKI WAS PERSONALLY INVOLVED IN ENFORCING THE NON-ENDORSEMENT POLICY

Defendant Komorowski, the Commanding officer for the PLB for over 6 years, was personally involved in enforcing the non-endorsement policy. The County admits that "[b]etween June 2022 and September 2023, Komorowski enforced a PLB policy that no pistol licenses would be amended to reflect a SAR endorsement and no SAR-only license would be issued" [Bellantoni Ex. 3; Bellantoni Ex. 4 at 55-56; McGregor Dec. ¶¶15-19 and Ex. 4 and 5; Newman Dec. at ¶ 24]. Komorowski was not 'removed' from the enforcement of the non-endorsement policy, he was directly in the middle of it. The County cites no facts to contest his personal involvement, only that "PLB's failure to issue SAR licenses or endorse pistol license for SARs did not interfere with Plaintiffs' ability to acquire arms" – ignoring the fact that their policy prevented Plaintiffs from acquiring SARs from FFLs inside of PLB's jurisdiction who were following state law, and from FFLs outside of PLB's jurisdiction – like the FFL in Westchester County that McGregor sought to purchase his rifle from. Whether Komorowski created the policy or not, he was directly involved in discussions and input concerning its creation, the meeting discussing the policy with the FFLs, and the enforcement of the policy through the PLB [SOF ¶¶ 42-48]. Under the facts of this case,

it was not necessary for Komorowski to directly inform the plaintiffs that their licenses would not be endorsed to be "personally involved" in the creation, enforcement, notification, and justification of the non-endorsement policy.

## IX. THE COUNTY'S DOUBLESPEAK SHOULD NOT SWAY THIS COURT

The County Defendants' mischaracterization of the law and the process for purchasing handguns and semiautomatic rifles should cause this Court to be greatly disturbed.

The County denies that "PLB policies permit a pistol license to function as a SAR license" [County Br. at 20] and (finally) admits that "a pistol license does not suffice for the transfer and receipt of a SAR" [*Id.*] – even though Lt. Komorowski testified that a pistol license was "sufficient authorization to allow someone to take possession of a rifle or to purchase a semiautomatic rifle at the gun store" [Bellantoni Dec. Ex. 4 at 34].

The County then immediately pivots to a separate subject - the requirement that individuals "register the SAR on the back of the pistol license in order for the legal transfer to take place" [County Br. at 20]. But the County circumvents an essential step: the fact that a ***sale*** must take place before registration of the gun can occur. But ***no sale*** can take place if the purchaser does not have an endorsed pistol license or a SAR-only license. *See,* §§ 265.65, 265.66, 400.00(2); Bellantoni Dec. Ex. 2; Kinzel Dec.

The County creates a story depicting a licensee standing at the PLB window obtaining an amended license to "take possession" of his new SAR (which is still back at the gun store where it must remain until the PLB mends the license to reflect the make, model, and serial number of the added gun).

But amending a license to identify an additional gun on the back requires documentation be presented to the PLB proving that the licensee actually *owns* the gun (a bill of sale) and that identifies the make, model, and serial number of the gun [Bellantoni Dec. Ex. 4 at 21-23].

But no purchase/sale of a SAR can take place if the pistol license does not physically reflect a SAR endorsement [Penal Law § 265.65 and § 265.66; Kinzel Dec.; Bellantoni Dec. at Ex. 2]. Whether or not the PLB uses the "same registration process" for SARs that they use for pistols [County Br. at 20] makes no difference because registration occurs *after* the sale has been completed. But without a license, no *purchase* of a pistol or a SAR can take place in the first instance – so, there is no gun to be registered. Because the Rifle Bill makes it a crime to sell and/or purchase a SAR without a SAR-authorized license [Penal Law § 265.65, § 265.66; Kinzel Dec.; Bellantoni Dec. at Ex. 2], it is misleading and disingenuous for the County to discuss 'registration' processes between September 2022 and September 2023 as some type of cognizable defense to its non-endorsement policy. The county's subversion of state law does not absolve the defendants of liability for its 'non-endorsement' policy.

The County relies on Komorowski's self-serving Declaration which, for the first time in 2 years, now claims that some unknown person in the NYSP Pistol License Bureau on some unknown date told him that a pistol license alone (unendorsed) is legally sufficient for an individual to take possession of SARs.[7] Adopting Komorowski's interpretation as true would mean that the amendment to § 400.00(2) requiring a separate "license for a semiautomatic rifle…to purchase or take possession of [SARs]" was superfluous. The principles of statutory construction require a rejection of such an interpretation.

---

[7] Komorowski's Declaration in opposition to Plaintiffs' 2024 motion for summary judgment fails to mention any conversation with the NYSP, and Komorowski never before claimed that SCPD's policy was based on NYSP guidance. Second, the NYSP written guidance declares the exact opposite of the County's Policy [Kinzel Dec.; Bellantoni Dec. at Ex. 3].

And whether Komorowski spoke with someone from the NYSP or not is immaterial to the County's liability under *Monell*. As a matter of law, the County provided no legal means for endorsing their residents' pistol licenses or for issuing SAR-only licenses, which foreclosed their ability to legally purchase and acquire SARs for over one year. A judicial endorsement of the County's disregard of the rule of law would endorse the County's past contravention of state law and embolden future illegality. The County defendants have no authority to override state law. Defendants' position that a pistol license is 'good enough' is flatly wrong – and entirely unnecessary considering that the PLB had the ability to endorse pistol licenses the entire time [Bellantoni Dec. Ex. 4 at ¶¶ 25-27; 38-39].

## CONCLUSION

Suffolk County's motion for summary judgment should be denied in its entirety.

Dated: May 25, 2025
      Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs*

By: _____*Amy Bellantoni*_____
Amy L. Bellantoni
2 Overhill Road, Suite 400
Scarsdale, New York 10583
abell@bellantoni-law.com